## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE.**     **2. PLEASE TYPE OR PRINT.**     **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| Jill Bloomberg<br>            Plaintiff,<br><br>-against-<br><br>The New York City Departmet of Education and Carmen Farina,<br>            Defendants. | Southern District of New York | Paul G. Gardephe |
| | Date the Order or Judgment Appealed from was Entered on the Docket:<br>February 10, 2023 | District Court Docket No.:<br>17-cv-03136 |
| | Date the Notice of Appeal was Filed:<br>March 10, 2023 | Is this a Cross Appeal?<br>Yes    ✓ No |

| Attorney(s) for Appellant(s):<br>✓ Plaintiff<br>Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br>Jeanne Mirer, 1 Whitehall St. 16th Fl, NY, NY 10004, 212-231-2235, 212-251-319-2955, mirer@workingpeopleslaw.com<br>Ria Julien, 1 Whitehall St. 16th Fl, NY, NY 10004, 212-231-2235, 212-251-319-2955, rjulien@workingpeopleslaw.com |
|---|---|
| Attorney(s) for Appellee(s):<br>Plaintiff<br>✓ Defendant | Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:<br>Andrea O'Connor, 100 Church Street, NY, NY 10007, 212-676-2750, aoconnor@law.nyc.gov<br>Joseph Anci, 100 Church Street, NY, NY 10007, 212-356-1106, jospeh.anci@jacksonlewis.com<br>William Grey, 11 Times Sq., NY, NY, 212-969-2900, wgrey@proskauer.com |

| Has Transcript Been Prepared?<br><br>N/A | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?     Yes    ✓ No<br>If Yes, provide the following:<br>Case Name:<br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

*ADDENDUM "A"*:  COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

*ADDENDUM "B"*:  COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A:  JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| U.S. a party | Diversity | ✓ Final Decision | Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ✓ Federal question (U.S. not a party) | Other (specify): _____ | Interlocutory Decision Appealable As of Right | Other (specify): _____ |

**IMPORTANT.  COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**PART B: DISTRICT COURT DISPOSITION** (Check as many as apply)

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|

**1. Stage of Proceedings**

✓ Pre-trial
During trial
After trial

**2. Type of Judgment/Order Appealed**

Default judgment — Dismissal/other jurisdiction
Dismissal/FRCP 12(b)(1) ✓ Dismissal/merit
lack of subj. matter juris. ✓ Judgment / Decision of the Court
✓ Dismissal/FRCP 12(b)(6) Summary judgment
failure to state a claim Declaratory judgment
Dismissal/28 U.S.C. § 1915(e)(2) Jury verdict
frivolous complaint Judgment NOV
Dismissal/28 U.S.C. § 1915(e)(2) Directed verdict
other dismissal Other (specify):

**3. Relief**

Damages: Injunctions:

Sought: $ _____ Preliminary
Granted: $ _____ Permanent
Denied: $ _____ Denied

---

**PART C: NATURE OF SUIT** (Check as many as apply)

**1. Federal Statutes**

| Antitrust | Communications | Freedom of Information Act |
| Bankruptcy | Consumer Protection | Immigration |
| Banks/Banking | Copyright ▢ Patent | Labor |
| Civil Rights | Trademark | OSHA |
| Commerce, | Election | Securities |
| Energy | Soc. Security | Tax |
| Commodities | Environmental | |

Other (specify): First Amendment; Title VI

**2. Torts**

Admiralty/
Maritime
Assault /
Defamation
FELA
Products Liability
Other (Specify):

**3. Contracts**

Admiralty/
Maritime
Arbitration
Commercial
Employment
Insurance
Negotiable
Instruments
Other Specify

**4. Prisoner Petitions**

Civil Rights
Habeas Corpus
Mandamus
Parole
Vacate Sentence
Other

**5. Other**

Forfeiture/Penalty
Real Property
Treaty (specify): _____
Other (specify): _____

**6. General**

Arbitration
Attorney Disqualification
Class Action
Counsel Fees
Shareholder Derivative
Transfer

**7. Will appeal raise constitutional issue(s)?**

✓ Yes    No

Will appeal raise a matter of first impression?

✓ Yes    No

---

1. Is any matter relative to this appeal still pending below?    Yes, specify: _____    ✓ No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal?    Yes    No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal?    Yes    No

If yes, state whether "A," or "B," or both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| Name of Appellant: | | | |

---

| Date: March 24, 2023 | Signature of Counsel of Record: *Jean-mie* |
|---|---|

**NOTICE TO COUNSEL**

Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

## ADDENDUM A

This case arises from actions in early 2017 when the New York City Department of Education (NYCDOE) opened an investigation into public school principal Plaintiff Jill Bloomberg shortly after she and the parents of students in her school openly protested racially discriminatory practices by the NYCDOE's Public School Athletic League (PSAL).

Plaintiff Jill Bloomberg was a very popular Principal of a school known as Park Slope Collegiate (PSC) in the Park Slope neighborhood of Brooklyn. PSC shared a building in the John Jay campus with four other schools one of which was known as Millennium Brooklyn. PSC and all the other schools in the John Jay Building except Millennium were consolidated in their sports teams, whereas Millennium Brooklyn was paired with Millennium Manhattan for purposes of sports teams. The NYCDOE's Public School Athletic League (PSAL) controls allocations of sports teams to the public schools had allocated many more teams, and thus the opportunities for the students to engage in athletic programs to the Millennium pair of schools than to PSC and the other schools in the John Jay campus. Further the students attending Millennium Brooklyn were not permitted to play their sports with the students in PSC and the other schools in the John Jay building. The difference between the Millennium pair of schools and the PSC and the other schools was the racial make up of the student body. More than 85% of PSC and its grouped schools were minorities, Black and Latino. In contrast, Millennium Manhattan had a majority white student body and about half of the Millennium Brooklyn student body were white.

In early 2017 the parents of students at PSC and the others in the building began to protest this disparity. Plaintiff issued a letter to the PSAL and other officials in the NYCDOE's hierarchy documenting the racial disparity and segregation in the sports programs and asking that this disparity be remedied. Within a matter of weeks of this protest Plaintiff was under investigation

by the Special Commissioner for Investigations (SCI) under allegations that she was involved in recruiting students at PSC into communism. The allegations against her were false and inflammatory, and ultimately the investigation proved to have been opened based on complaints for which the complainants had no evidence.

The case filed started on April 28, 2017 in which Plaintiff requested an injunction against the opening of this investigation alleging inter alia violations of her First Amendment rights as well as Fourteenth Amendment due process rights. She also claimed she was protected under Title VI of the Civil Rights Act for protesting racial discrimination against the students in her school, which receives Federal financial assistance. She also alleged similar retaliation under the New York City Human Rights Law.

Judge Gardephe denied the motion for injunction. The investigation Plaintiff filed a First Amended Complaint and motion practice ensued. On September 24, 2019, the Court granted Defendants' motion to dismiss as to all Plaintiff's claims under the First Amendment and Due Process clause. The Court did allow Plaintiff to file a second amended Complaint as to her Title VI complaint alleging Plaintiff needed to provide more specific pleading as to the Federal Financial Assistance to the School's sports program. [Dkt. 89] The Court in this decision understood that Plaintiff was not alleging employment discrimination under her Title VI claim but was rather suffering retaliation for protesting racial discrimination against beneficiaries of Federal Financial Assistance and complaining about this retaliation. Plaintiff drafted a Second Amended Complaint and filed a motion to be able file the complaint.

On September 23, 2021 the Court denied Plaintiff's motion to amend claiming that the allegations did not show that the federal assistance was not specifically targeted to the sports programs she was complaining about. [Dkt 108] Plaintiff filed a timely motion for reconsideration

emphasizing that the Civil Rights Restoration Act of 1987 had removed any requirement to plead "program specific federal financial assistance" to support a claim for Title VI violations. On February 10, 2023, the Court granted the motion for reconsideration as to the issue whether the federal financial assistance to the sports programs in order to be covered by Title VI, but denied Plaintiff's motion to dismiss because the Court claimed Plaintiff's case was in fact an employment discrimination case, not a retaliation case, and in order to prevail on an employment discrimination case, Plaintiff had to have plead that the federal financial assistance had been given to the New York City Department of Education for the purpose of employment. [Dkt 120]. As all of the claims in Plaintiff's complaint being dismissed and the Court refusing to exercise supplemental jurisdiction over Plaintiff's New York City Human Rights Act Claim the February 10, 2023 order was a final order. This appeal followed.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG
_____

_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION and
_____

CARMEN FARINA
_____
(List the full name(s) of the defendant(s)/respondent(s).)

___17__CV__3136___ ( PGG)(     )

## NOTICE OF APPEAL

Notice is hereby given that the following parties:   JILL BLOOMBERG
_____

_____
(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the      ☐ judgment    ☒ order    entered on:   February 10, 2023
_____
(date that judgment or order was entered on docket)

that:   granted reconsideration, but denied Plaintiff's right to file a Second Amended Complaint, which was
<u>initially denied on 9/23/2021 (Dkt. 108) and affirming the dismissal of Plaintiff's Complaint</u> in its
entirety on 9/24/2019 (Dkt. 89).

(If the appeal is from an order, provide a brief description above of the decision in the order.)

March 10, 2023
_____
Dated

_____
Signature*

MIRER, JEANNE E.
_____
Name (Last, First, MI)

JULIEN MIRER & SINGLA, PLLC 1 WHITEHALL STREET, 16TH FLOOR   NEW YORK, NY  10004
_____
Address                                    City                   State                        Zip Code

212-231-2235                                           jmirer@workingpeopleslaw.com
_____
Telephone Number                                      E-mail Address (if available)

_____

* Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case. Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:17-cv-03136-PGG

| | |
|---|---|
| Bloomberg v. The New York City Department of Education et al | Date Filed: 04/28/2017 |
| Assigned to: Judge Paul G. Gardephe | Date Terminated: 09/23/2021 |
| Referred to: Magistrate Judge Sarah L Cave (Settlement) | Jury Demand: Plaintiff |
| Cause: 42:2000d Federally Assisted Programs | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Jill Bloomberg**                    represented by **Maria Lauren Chickedantz**
Mirer Mazzocchi Schalet & Julien, PLLC
150 Broadway, Suite 1200
New York, NY 10038
212-231-2235
Fax: 212-409-8338
Email: maria@chickedantzlaw.com
*TERMINATED: 05/31/2018*
*LEAD ATTORNEY*

**Ria Julien**
Mirer Mazzocchi & Julien, PLLC
1 Whitehall Street
Ste 16th Floor
New York, NY 10004
212-231-2235
Fax: 212-409-8338
Email: rjulien@workingpeopleslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeanne Ellen Mirer**
Mirer Mazzocchi & Julien, PLLC
1 Whitehall Street
Ste 16th Floor
New York, NY 10004
212-231-2235
Email: jmirer@workingpeopleslaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**The New York City Department of**          represented by **Andrea Mary O'Connor**
**Education**                                          NYC Law Department, Office of the
Corporation Counsel (NYC)
100 Church Street
New York, NY 10007

(212)676-2750
Fax: (212)788-8877
Email: aoconnor@law.nyc.gov
*ATTORNEY TO BE NOTICED*

**Joseph Anci**
New York City Law Dept.
Office of Corp. Counsel
100 Church Street
New York, NY 10007
212-356-1106
Fax: 212-356-2439
Email: Joseph.Anci@jacksonlewis.com
*ATTORNEY TO BE NOTICED*

**William Andrew Grey**
Proskauer Rose LLP
11 Times Square
New York, NY 10036
212-969-2900
Email: wgrey@proskauer.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carmen Farina**                    represented by **Andrea Mary O'Connor**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Joseph Anci**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Andrew Grey**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/28/2017 | 1 | COMPLAINT against Carmen Farina, The New York City Department of Education. (Filing Fee $ 400.00, Receipt Number 0208-13599800)Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/28/2017) |
| 04/28/2017 | 2 | CIVIL COVER SHEET filed. (Chickedantz, Maria) (Entered: 04/28/2017) |
| 04/28/2017 | | ***NOTICE TO ATTORNEY REGARDING CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Maria Lauren Chickedantz. The following case opening statistical information was erroneously selected/entered: Arbitration code e (Exempt). The following correction(s) have been made to your case entry: the Arbitration code has been deleted. (pc)** (Entered: 04/28/2017) |
| 04/28/2017 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Paul G. Gardephe. Please download and review the Individual Practices of the assigned District Judge, located at http://nysd.uscourts.gov/judges/District. Attorneys are responsible for providing courtesy copies to judges where their Individual |

Case 23-343, Document 13, 03/27/2023, 3480700, Page9 of 93

| | | |
|---|---|---|
| | | Practices require such. Please download and review the ECF Rules and Instructions, located at http://nysd.uscourts.gov/ecf_filing.php. (pc) (Entered: 04/28/2017) |
| 04/28/2017 | | Magistrate Judge Henry B. Pitman is so designated. (pc) (Entered: 04/28/2017) |
| 04/28/2017 | | Case Designated ECF. (pc) (Entered: 04/28/2017) |
| 04/28/2017 | 12 | ORDER: It is hereby ORDERED that Defendants submit, by Monday, May 1, 2017 at 10:00 a.m., an opposition to Plaintiff's motion for a temporary restraining order and preliminary injunction. It is further ORDERED that a hearing regarding Plaintiff's application will take place on Monday, May 1, 2017 at 3:00 p.m. in Courtroom 705 of the Thurgood Marshall United States Courhouse, 40 Foley Square, New York, New York. Set Deadlines/Hearing as to 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*: ( Responses due by 5/1/2017, Motion Hearing set for 5/1/2017 at 03:00 PM in Courtroom 705, 40 Centre Street, New York, NY 10007 before Judge Paul G. Gardephe.) (Signed by Judge Paul G. Gardephe on 4/28/2017) (mro) (Entered: 05/01/2017) |
| 04/29/2017 | 3 | **FILING ERROR - ELECTRONIC FILING OF NON-ECF DOCUMENT -** FIRST MOTION for Preliminary Injunction *on Order to Show Cause*. Document filed by Jill Bloomberg. Return Date set for 5/1/2017 at 10:00 AM.(Chickedantz, Maria) Modified on 5/3/2017 (db). (Entered: 04/29/2017) |
| 04/29/2017 | 4 | AFFIRMATION of Maria L. Chickedantz in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 5 | AFFIDAVIT of Louise Bauso in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 6 | AFFIDAVIT of Maysa Jarara in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 7 | AFFIDAVIT of Lisa Miller in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 8 | AFFIDAVIT of Jill Sandusky in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 9 | AFFIDAVIT of Rahsan Williams in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 10 | AFFIDAVIT of Jill Bloomberg in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit 1 - Mural, # 2 Exhibit 2 - Girls Volleyball Complaint, # 3 Exhibit 3 - Jan. 10, 2017 Discrimination Complaint, # 4 Exhibit 4 - Feb. 13, 2017 Flyer, # 5 Exhibit 5 - 3/22/17 Plaintiff' Cease & Desist Letter, # 6 Exhibit 6 - 3/27/17 DOE Response, # 7 Exhibit 7 - 3/28/17 Plaintiff's Reply, # 8 Exhibit 8 - 4/6/17 DOE Response, # 9 Exhibit 9 - Columbia University Letter in Support)(Chickedantz, Maria) (Entered: 04/29/2017) |
| 04/29/2017 | 11 | FIRST MEMORANDUM OF LAW in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*. . Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 04/29/2017) |

Case 23-343, Document 13, 03/27/2023, 3489709, Page10 of 93

| 05/01/2017 | 13 | DECLARATION of Charity Guerra in Opposition re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Carmen Farina, The New York City Department of Education. (O'Connor, Andrea) (Entered: 05/01/2017) |
|---|---|---|
| 05/01/2017 | 14 | MEMORANDUM OF LAW in Opposition re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*. . Document filed by Carmen Farina, The New York City Department of Education. (O'Connor, Andrea) (Entered: 05/01/2017) |
| 05/01/2017 | 15 | DECLARATION of Charity Guerra in Opposition re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Carmen Farina, The New York City Department of Education. (O'Connor, Andrea) (Entered: 05/01/2017) |
| 05/01/2017 | 16 | NOTICE OF APPEARANCE by Andrea Mary O'Connor on behalf of Carmen Farina, The New York City Department of Education. (O'Connor, Andrea) (Entered: 05/01/2017) |
| 05/01/2017 | 17 | DECLARATION of Charity Guerra in Opposition re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Carmen Farina, The New York City Department of Education. (O'Connor, Andrea) (Entered: 05/01/2017) |
| 05/01/2017 | 18 | LETTER addressed to Judge Paul G. Gardephe from Andrea O'Connor dated May 1, 2017 re: declaration filed in opposition to plaintiff's motion for a temporary restraining order and preliminary injunction. Document filed by Carmen Farina, The New York City Department of Education.(O'Connor, Andrea) (Entered: 05/01/2017) |
| 05/01/2017 | 19 | NOTICE OF APPEARANCE by William Andrew Grey on behalf of Carmen Farina, The New York City Department of Education. (Grey, William) (Entered: 05/01/2017) |
| 05/01/2017 |  | Minute Entry for proceedings held before Judge Paul G. Gardephe: Motion Hearing held on 5/1/2017 re: 3 FIRST MOTION for Preliminary Injunction on Order to Show Cause. filed by Jill Bloomberg. (Court Reporter Paul Speer / Thomas Murray) (mr) (Entered: 05/01/2017) |
| 05/01/2017 | 20 | NOTICE OF APPEARANCE by Joseph Anci on behalf of Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 05/01/2017) |
| 05/02/2017 | 21 | AFFIDAVIT of Jill Bloomberg in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit 1 - Len Ragozin Foundation Website, # 2 Exhibit 2 - Documentary "Profiled" Page on Len Ragozin Website, # 3 Exhibit 3 - Len Ragozin DOE Film Permit, # 4 Exhibit 4 - Len Ragozin Extended Use/Special Requests Permit, # 5 Exhibit 5 - The Nation Article re: PSAL Race Discrimination and Retaliation, # 6 Exhibit 6 - City Limits Op-Ed re: PSAL & David Garcia-Rosen, # 7 Exhibit 7 - Socialist Worker Article re: PSAL and David Garcia-Rosen)(Chickedantz, Maria) (Entered: 05/02/2017) |
| 05/02/2017 | 22 | AFFIRMATION of Maria L. Chickedantz in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*.. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 05/02/2017) |
| 05/02/2017 | 23 | SECOND MEMORANDUM OF LAW in Support re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause*. . Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 05/02/2017) |
| 05/02/2017 | 24 | LETTER MOTION for Leave to File sur-reply addressed to Judge Paul G. Gardephe from Andrea O'Connor dated May 2, 2017. Document filed by Carmen Farina, The New York City Department of Education.(O'Connor, Andrea) (Entered: 05/02/2017) |
| 05/02/2017 | 25 | ORDER granting 24 LETTER MOTION for Leave to File sur-reply addressed to Judge Paul G. Gardephe from Andrea O'Connor dated May 2, 2017. Document filed by Carmen Farina, The New York City Department of Education. The application is granted. |

| | | Defendants are directed to submit their papers by 12:00 p.m. on Wednesday, May 3, 2017. So ordered. (Signed by Judge Paul G. Gardephe on 5/2/2017) (rjm) (Entered: 05/03/2017) |
|---|---|---|
| 05/02/2017 | | Set/Reset Deadlines: Surreplies due by 5/3/2017. (rjm) (Entered: 05/03/2017) |
| 05/03/2017 | 26 | ORDER: It is hereby ORDERED that the hearing in this matter, which is currently set for Wednesday, May 3, 2017 at 5:00 p.m., will take place in Courtroom 110 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. (Status Conference set for 5/3/2017 at 05:00 PM in Courtroom 110, 40 Centre Street, New York, NY 10007 before Judge Paul G. Gardephe.) (Signed by Judge Paul G. Gardephe on 5/3/2017) (cf) (Entered: 05/03/2017) |
| 05/03/2017 | 27 | DECLARATION of Charity Guerra in Opposition re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause..* Document filed by Carmen Farina, The New York City Department of Education. (Attachments: # 1 Exhibit A)(O'Connor, Andrea) (Entered: 05/03/2017) |
| 05/03/2017 | 28 | RESPONSE in Opposition to Motion re: 3 FIRST MOTION for Preliminary Injunction *on Order to Show Cause. Defendants' Sur-reply*. Document filed by Carmen Farina, The New York City Department of Education. (Attachments: # 1 Appendix A)(O'Connor, Andrea) (Entered: 05/03/2017) |
| 05/03/2017 | | Minute Entry for proceedings held before Judge Paul G. Gardephe: Preliminary Injunction Hearing held on 5/3/2017. (Court Reporter Kristen Carannante) (mr) (Entered: 05/04/2017) |
| 05/04/2017 | 29 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/1/2017 before Judge Paul G. Gardephe. Court Reporter/Transcriber: Thomas Murray, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 5/25/2017. Redacted Transcript Deadline set for 6/5/2017. Release of Transcript Restriction set for 8/2/2017. (McGuirk, Kelly) (Entered: 05/04/2017) |
| 05/04/2017 | 30 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERECE proceeding held on 5/1/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/04/2017) |
| 05/04/2017 | 31 | ORDER denying 3 Motion for Preliminary Injunction. For the reasons stated during the May 3, 2017 hearing in this matter, Plaintiff's motion for a temporary restraining order and preliminary injunction is denied. (Signed by Judge Paul G. Gardephe on 5/4/2017) (cf) (Entered: 05/04/2017) |
| 05/10/2017 | 32 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated May 10, 2017 re: Advise the Court that Plaintiff intends to move forward with litigation.. Document filed by Jill Bloomberg.(Mirer, Jeanne) (Entered: 05/10/2017) |
| 05/12/2017 | 33 | TRANSCRIPT of Proceedings re: CONFERENCE held on 5/1/2017 before Judge Paul G. Gardephe. Court Reporter/Transcriber: Thomas Murray, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/2/2017. Redacted Transcript Deadline set for 6/12/2017. Release of Transcript Restriction set for 8/10/2017. (McGuirk, Kelly) (Entered: 05/12/2017) |

| 05/12/2017 | [34](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a CONFERENCE proceeding held on 5/1/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/12/2017) |
|---|---|---|
| 05/15/2017 | [35](#) | MEMO ENDORSEMENT on re: [32](#) Letter filed by Jill Bloomberg. ENDORSEMENT: Any Amended Complaint is to be filed by May 19, 2017. SO ORDERED. (Amended Pleadings due by 5/19/2017.) (Signed by Judge Paul G. Gardephe on 5/12/2017) (anc) (Entered: 05/15/2017) |
| 05/16/2017 | [36](#) | TRANSCRIPT of Proceedings re: argument held on 5/3/2017 before Judge Paul G. Gardephe. Court Reporter/Transcriber: Kristen Carannante, (212) 805-0300. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 6/6/2017. Redacted Transcript Deadline set for 6/16/2017. Release of Transcript Restriction set for 8/14/2017. (McGuirk, Kelly) (Entered: 05/16/2017) |
| 05/16/2017 | [37](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT Notice is hereby given that an official transcript of a argument proceeding held on 5/3/17 has been filed by the court reporter/transcriber in the above-captioned matter. The parties have seven (7) calendar days to file with the court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript may be made remotely electronically available to the public without redaction after 90 calendar days...(McGuirk, Kelly) (Entered: 05/16/2017) |
| 05/19/2017 | [38](#) | **FILING ERROR - DEFICIENT PLEADING - FILED AGAINST PARTY ERROR** FIRST AMENDED COMPLAINT amending [1](#) Complaint against Jill Bloomberg with JURY DEMAND.Document filed by Jill Bloomberg. Related document: [1](#) Complaint filed by Jill Bloomberg.(Chickedantz, Maria) Modified on 5/22/2017 (pc). (Entered: 05/19/2017) |
| 05/22/2017 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Maria Lauren Chickedantz to RE-FILE Document No. [38](#) Amended Complaint,. The filing is deficient for the following reason(s): the wrong party/parties whom the pleading is against were selected. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pc)** (Entered: 05/22/2017) |
| 05/23/2017 | [39](#) | FIRST AMENDED COMPLAINT amending [1](#) Complaint against Carmen Farina, The New York City Department of Education with JURY DEMAND.Document filed by Jill Bloomberg. Related document: [1](#) Complaint filed by Jill Bloomberg.(Chickedantz, Maria) Modified on 5/24/2017 (pc). Modified on 5/26/2017 (pc). (Entered: 05/23/2017) |
| 05/24/2017 | [40](#) | **FILING ERROR - PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to The New York City Department of Education and Carmen Farina, re: [39](#) Amended Complaint. Document filed by Jill Bloomberg. (Chickedantz, Maria) Modified on 5/26/2017 (pc). (Entered: 05/24/2017) |
| 05/26/2017 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney to RE-FILE Document No. [40](#) Request for Issuance of Summons,. The filing is deficient for the following reason(s): Attorney's address field was not filled out. Re-file the document using the event type |

|  |  | **Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (pc)** (Entered: 05/26/2017) |
|---|---|---|
| 05/26/2017 | 41 | REQUEST FOR ISSUANCE OF SUMMONS as to The New York City Department of Education and Carmen Farina, re: 39 Amended Complaint,. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 05/26/2017) |
| 05/30/2017 | 42 | ELECTRONIC SUMMONS ISSUED as to Carmen Farina, The New York City Department of Education. (pc) (Entered: 05/30/2017) |
| 06/07/2017 | 43 | CERTIFICATE OF SERVICE of Summons and Amended Complaint,. Carmen Farina served on 5/31/2017, answer due 6/21/2017. Service was accepted by B. Mazyck, Messenger Center for NYC Law Department. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 06/07/2017) |
| 06/07/2017 | 44 | CERTIFICATE OF SERVICE of Summons and Amended Complaint,. The New York City Department of Education served on 5/31/2017, answer due 6/21/2017. Service was accepted by B. Mazyck, Messenger Center for NYC Law Department. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 06/07/2017) |
| 06/20/2017 | 45 | LETTER MOTION for Extension of Time *to answer, move or to otherwise respond to the complaint* addressed to Judge Paul G. Gardephe from Joseph Anci dated June 20, 2017. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 06/20/2017) |
| 06/21/2017 | 46 | FIRST LETTER addressed to Judge Paul G. Gardephe from Maria L. Chickedantz dated June 21, 2017 re: In Opposition to Defendants' Request for an Extension. Document filed by Jill Bloomberg.(Chickedantz, Maria) (Entered: 06/21/2017) |
| 06/22/2017 | 47 | ORDER granting 45 Letter Motion for Extension of Time. The Application is granted. (Signed by Judge Paul G. Gardephe on 6/22/2017) (cf) (Entered: 06/22/2017) |
| 06/22/2017 |  | Set/Reset Deadlines: Carmen Farina answer due 7/12/2017; The New York City Department of Education answer due 7/12/2017. (cf) (Entered: 06/22/2017) |
| 07/12/2017 | 48 | LETTER MOTION for Conference *Regarding Defendants' Anticipated Motion to Dismiss the Amended Complaint* addressed to Judge Paul G. Gardephe from Joseph Anci dated July 12, 2017. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 07/12/2017) |
| 07/17/2017 | 49 | FIRST LETTER addressed to Judge Paul G. Gardephe from Maria L. Chickedantz dated July 17, 2017 re: Opposition to Defendants' July 12, 2017 Letter Motion. Document filed by Jill Bloomberg.(Chickedantz, Maria) (Entered: 07/17/2017) |
| 07/21/2017 | 50 | ORDER granting 48 Letter Motion for Conference. The Court will conduct a telephone conference in this matter on July 24, 2017 at 5:15 p.m. Counsel should contact chambers at 212-805-0224 once on the phone. Telephone Conference set for 7/24/2017 at 05:15 PM before Judge Paul G. Gardephe. (Signed by Judge Paul G. Gardephe on 7/20/2017) (cf) (Entered: 07/21/2017) |
| 07/25/2017 |  | Minute Entry for proceedings held before Judge Paul G. Gardephe: Telephone Conference held on 7/25/2017. (Court Reporter Karen Gorlaski) (mr) (Entered: 07/25/2017) |
| 07/25/2017 | 51 | ORDER, It is hereby ORDERED that the following schedule will apply to Defendants' motion to dismiss and Plaintiff's cross-motion for judgment on the pleadings: Defendants' motion is due on September 1, 2017; Plaintiff's opposition and cross-motion is due on October 2, 2017; and Defendants' reply, if any, is due on October 16, 2017. So Ordered. (Cross Motions due by 10/2/2017., Motions due by 9/1/2017., Responses due by |

| | | |
|---|---|---|
| | | 10/2/2017, Replies due by 10/16/2017.) (Signed by Judge Paul G. Gardephe on 7/24/17) (yv) (Entered: 07/25/2017) |
| 08/31/2017 | 52 | CONSENT LETTER MOTION for Extension of Time to File *Defendants' Motion to Dismiss* addressed to Judge Paul G. Gardephe from Joseph Anci dated August 31, 2017. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 08/31/2017) |
| 09/01/2017 | 53 | ORDER: granting 52 Letter Motion for Extension of Time to File Motion, Response, Cross Motion and Reply. SO ORDERED. Motion due by 9/8/2017. Response due by 10/9/2017. Cross-motion due by 10/9/2017. Reply due by 10/23/2017. (Signed by Judge Paul G. Gardephe on 9/1/2017) (ap) (Entered: 09/01/2017) |
| 09/01/2017 | | Set/Reset Deadlines: Cross Motions due by 10/9/2017. Motions due by 9/8/2017. Responses due by 10/9/2017. Replies due by 10/23/2017. (ap) (Entered: 09/01/2017) |
| 10/05/2017 | 54 | FIRST LETTER MOTION for Extension of Time *to file plaintiff's opposition to defendants' motion to dismiss* addressed to Judge Paul G. Gardephe from Maria Chickedantz dated October 5, 2017. Document filed by Jill Bloomberg.(Chickedantz, Maria) (Entered: 10/05/2017) |
| 10/06/2017 | 55 | ORDER granting 54 Letter Motion for Extension of Time. SO ORDERED. (Signed by Judge Paul G. Gardephe on 10/6/2017) (cf) (Entered: 10/06/2017) |
| 10/06/2017 | | Set/Reset Deadlines: Responses due by 10/17/2017 Replies due by 10/31/2017. (cf) (Entered: 10/06/2017) |
| 10/17/2017 | 56 | SECOND LETTER MOTION for Extension of Time *to file plaintiff's opposition to defendants' motion to dismiss* addressed to Judge Paul G. Gardephe from Maria Chickedantz dated October 17, 2017. Document filed by Jill Bloomberg.(Chickedantz, Maria) (Entered: 10/17/2017) |
| 10/19/2017 | 57 | ORDER granting 56 Letter Motion for Extension of Time. SO ORDERED. Cross Motions due by 10/23/2017. (Signed by Judge Paul G. Gardephe on 10/19/2017) (cf) (Entered: 10/19/2017) |
| 10/19/2017 | | Set/Reset Deadlines: Responses due by 11/20/2017 Replies due by 11/20/2017. (cf) (Entered: 10/19/2017) |
| 11/02/2017 | 58 | JOINT LETTER MOTION to Continue *Plaintiff's first request to amend her affidavit in support of her cross-motion, not on consent* addressed to Judge Paul G. Gardephe from Maria Chickedantz dated November 2, 2017. Document filed by Jill Bloomberg. (Chickedantz, Maria) (Entered: 11/02/2017) |
| 11/06/2017 | 59 | ORDER denying 58 Letter Motion to Continue. Plaintiff's application is denied. Plaintiff's Cross-Motion for Judgment on the pleadings will not be converted into a Rule 5.6 motion for Summary Judgment. There has been no discovery in this case and pre-discovery motions for Summary judgment are disfavored in this Circuit See, e.g, Lifetree Trading PTE., LTD. v. Washakie Renewable Energy, LLC, 2015 WL 3948097, at *6 (S.D.N.Y. June 29, 2015) see also Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir.2000). Plaintiff's application to file a Second Amended Complaint is denied. Plaintiff moved for Judgment on the pleadings on the basis of the First Amended Complaint, and this Court will decide their motion on the basis of that Complaint. (Signed by Judge Paul G. Gardephe on 11/6/2017) (cf) Modified on 12/8/2017 (cf). (Entered: 11/07/2017) |
| 11/14/2017 | 60 | CONSENT LETTER MOTION for Extension of Time *to Serve and File A Reply in Further Support of Defendants' Motion to Dismiss and Opposition to Plaintiff's Cross-Motion* addressed to Judge Paul G. Gardephe from Joseph Anci dated November 14, |

| | | |
|---|---|---|
| | | 2017. Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 11/14/2017) |
| 11/16/2017 | 61 | ORDER granting 60 Letter Motion for Extension of Time. The Application is granted. (Signed by Judge Paul G. Gardephe on 11/15/2017) (cf) (Entered: 11/16/2017) |
| 11/16/2017 | | Set/Reset Deadlines: Replies due by 12/4/2017. (cf) (Entered: 11/16/2017) |
| 11/27/2017 | 62 | FIRST LETTER MOTION for Conference *for Plaintiff's Intended Motion for Leave to Amend the Complaint* addressed to Judge Paul G. Gardephe from Maria L. Chickedantz dated November 27, 2017. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit Proposed Second Amended Complaint)(Chickedantz, Maria) (Entered: 11/27/2017) |
| 11/28/2017 | 63 | LETTER RESPONSE in Opposition to Motion addressed to Judge Paul G. Gardephe from Joseph Anci dated November 28, 2017 re: 62 FIRST LETTER MOTION for Conference *for Plaintiff's Intended Motion for Leave to Amend the Complaint* addressed to Judge Paul G. Gardephe from Maria L. Chickedantz dated November 27, 2017. *with Request for an Extension of Time for Defendants to File a Reply and to Oppose Plaintiff's Cross-Motion from December 4, 2017 to December 21, 2017.* Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 11/28/2017) |
| 12/28/2017 | 64 | ORDER denying 62 Letter Motion for Conference. This application is denied for the reason stated in the Court's November 6, 2017 Order (Dkt. No. 59). (Signed by Judge Paul G. Gardephe on 12/28/2017) (cf) (Entered: 12/29/2017) |
| 01/17/2018 | 65 | FIRST LETTER addressed to Judge Paul G. Gardephe from Maria L. Chickedantz dated January 17, 2018 re: Request for Referral to a Magistrate for a Settlement Conference. Document filed by Jill Bloomberg.(Chickedantz, Maria) (Entered: 01/17/2018) |
| 01/19/2018 | 66 | MEMO ENDORSEMENT on re: 65 Letter filed by Jill Bloomberg. ENDORSEMENT: The application is granted. SO ORDERED. (Signed by Judge Paul G. Gardephe on 1/19/2018) (mml) (Entered: 01/19/2018) |
| 01/19/2018 | 67 | ORDER REFERRING CASE TO MAGISTRATE JUDGE. Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Settlement. Referred to Magistrate Judge Henry B. Pitman. (Signed by Judge Paul G. Gardephe on 1/19/2018) (mml) (Entered: 01/19/2018) |
| 03/05/2018 | | Set/Reset Hearings: Telephone Conference set for 3/12/2018 at 09:30 AM before Magistrate Judge Henry B. Pitman. (ajc) (Entered: 03/05/2018) |
| 03/12/2018 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Telephone Conference held on 3/12/2018. (ajc) (Entered: 03/12/2018) |
| 03/12/2018 | | Set/Reset Hearings: Settlement Conference set for 4/17/2018 at 02:00 PM in Courtroom 18A, 500 Pearl Street, New York, NY 10007 before Magistrate Judge Henry B. Pitman. (ajc) (Entered: 03/12/2018) |
| 04/10/2018 | 68 | CONSENT LETTER MOTION to Adjourn Conference *Scheduled for April 17, 2018* addressed to Magistrate Judge Henry B. Pitman from Joseph Anci dated April 10, 2018. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 04/10/2018) |
| 05/11/2018 | 69 | NOTICE OF APPEARANCE by Ria Julien on behalf of Jill Bloomberg. (Julien, Ria) (Entered: 05/11/2018) |
| 05/31/2018 | 70 | MEMO ENDORSEMENT on NOTICE OF WITHDRAW AL OF COUNSEL. ENDORSEMENT: SO ORDERED. Attorney Maria Lauren Chickedantz terminated. |

Case 23-343, Document 13, 03/27/2023, 3489709, Page16 of 93

| | | (Signed by Judge Paul G. Gardephe on 5/30/2018) (cf) (Entered: 05/31/2018) |
|---|---|---|
| 05/31/2018 | 71 | NOTICE OF APPEARANCE by Jeanne Ellen Mirer on behalf of Jill Bloomberg. (Mirer, Jeanne) (Entered: 05/31/2018) |
| 05/31/2018 | | Minute Entry for proceedings held before Magistrate Judge Henry B. Pitman: Settlement Conference held on 5/31/2018. (ajc) (Entered: 06/01/2018) |
| 06/25/2018 | 72 | LETTER MOTION for Extension of Time to File Response/Reply as to 66 Memo Endorsement, Terminate Deadlines *and to So-Order Defendants' Proposed Briefing Schedule* addressed to Judge Paul G. Gardephe from Joseph Anci dated June 25, 2018. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 06/25/2018) |
| 06/27/2018 | 73 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated June 27, 2018 re: Briefing schedule. Document filed by Jill Bloomberg.(Mirer, Jeanne) (Entered: 06/27/2018) |
| 07/02/2018 | 74 | ORDER granting 72 Letter Motion for Extension of Time to File Response/Reply. It is hereby ORDERED that the following schedule will apply to Defendants' motion to dismiss and Plaintiff's cross-motion for judgment on the pleadings: 1. Defendants' opposition to Plaintiff's cross-motion is due on July 31, 2018; 2. Plaintiff's reply in further support of her cross-motion, if any, is due on August 28, 2018; and 3. Defendants' reply in further support of their motion to dismiss, if any, is also due on August 28, 2018. Responses due by 7/31/2018 Replies due by 8/28/2018. (Signed by Judge Paul G. Gardephe on 7/2/2018) (mro) (Entered: 07/03/2018) |
| 08/24/2018 | 75 | LETTER MOTION for Extension of Time to File Response/Reply *as noted in this Court's order of July 2, 2018, from August 28, 2018 to September 6, 2018.* addressed to Judge Paul G. Gardephe from Jeanne Mirer dated August 24, 2018. Document filed by Jill Bloomberg.(Mirer, Jeanne) (Entered: 08/24/2018) |
| 08/27/2018 | 76 | ORDER granting 75 Letter Motion for Extension of Time to File Response/Reply. The Application is granted. (Signed by Judge Paul G. Gardephe on 8/27/2018) (tro) (Entered: 08/28/2018) |
| 08/27/2018 | | Set/Reset Deadlines: Replies due by 9/6/2018. (tro) (Entered: 08/28/2018) |
| 09/06/2018 | 77 | MOTION to Dismiss *Plaintiff's Amended Complaint*. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 09/06/2018) |
| 09/06/2018 | 78 | MEMORANDUM OF LAW in Support re: 77 MOTION to Dismiss *Plaintiff's Complaint*. . Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 09/06/2018) |
| 09/06/2018 | 79 | DECLARATION of Joseph Anci in Support re: 77 MOTION to Dismiss *Plaintiff's Amended Complaint*.. Document filed by Carmen Farina, The New York City Department of Education. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Anci, Joseph) (Entered: 09/06/2018) |
| 09/06/2018 | 80 | MEMORANDUM OF LAW in Opposition re: 77 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Jill Bloomberg. (Julien, Ria) (Entered: 09/06/2018) |
| 09/06/2018 | 81 | CROSS MOTION for Judgment on the Pleadings . Document filed by Jill Bloomberg. (Julien, Ria) (Entered: 09/06/2018) |
| 09/06/2018 | 82 | MEMORANDUM OF LAW in Support re: 81 CROSS MOTION for Judgment on the Pleadings . . Document filed by Jill Bloomberg. (Julien, Ria) (Entered: 09/06/2018) |

| 09/06/2018 | 83 | AFFIDAVIT of Jill Bloomberg in Support re: 81 CROSS MOTION for Judgment on the Pleadings .. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit A: March 27, 2017 letter, # 2 Exhibit B: April 6, 2017 letter, # 3 Exhibit C: Guerra Declaration, # 4 Exhibit D: OSI Report, # 5 Exhibit E: October 3, 2017 letter, # 6 Exhibit F: Mayors Office Notice)(Julien, Ria) (Entered: 09/06/2018) |
|---|---|---|
| 09/06/2018 | 84 | AFFIRMATION of Maria L Chickedantz in Support re: 81 CROSS MOTION for Judgment on the Pleadings .. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit 1: D-130 Regulation, # 2 Exhibit 2: November 25, 2014 letter, # 3 Exhibit 3: Commissioner's Decision 12, 761)(Julien, Ria) (Entered: 09/06/2018) |
| 09/06/2018 | 85 | MEMORANDUM OF LAW in Opposition re: 81 CROSS MOTION for Judgment on the Pleadings . . Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 09/06/2018) |
| 09/06/2018 | 86 | REPLY MEMORANDUM OF LAW in Support re: 81 CROSS MOTION for Judgment on the Pleadings . . Document filed by Jill Bloomberg. (Julien, Ria) (Entered: 09/06/2018) |
| 09/06/2018 | 87 | REPLY MEMORANDUM OF LAW in Support re: 77 MOTION to Dismiss *Plaintiff's Amended Complaint*. . Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 09/06/2018) |
| 01/22/2019 | 88 | NOTICE OF CHANGE OF ADDRESS by Jeanne Ellen Mirer on behalf of Jill Bloomberg. New Address: Mirer Mazzocchi & Julien, PLLC, 150 Broadway, Twelfth Floor, New York, New York, United States 10038, 212-231-2235. (Mirer, Jeanne) (Entered: 01/22/2019) |
| 09/24/2019 | 89 | MEMORANDUM OPINION AND ORDER: For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 77) is granted in its entirety, and Plaintiffs cross-motion for judgment on the pleadings (Diet. No. 81) is deemed withdrawn. The Clerk of Court is directed to terminate the motions. Any motion for leave to file a Second Amended Complaint is to be served and filed by October 23, 2019. The proposed Second Amended Complaint is to be attached as an exhibit to the motion. Defendants will submit their Answer to the surviving claim in the Amended Complaint by September 30, 2019. A conference pursuant to Fed. R. Civ. P. 16 will be held on October 21, 2019 at 12:30 p.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. SO ORDERED. Carmen Farina answer due 9/30/2017; The New York City Department of Education answer due 9/30/2017. (Motions due by 10/23/2019., Initial Conference set for 10/21/2019 at 12:30 PM in Courtroom 705, 40 Centre Street, New York, NY 10007 before Judge Paul G. Gardephe.) (Signed by Judge Paul G. Gardephe on 9/24/2019) (jca) (Entered: 09/24/2019) |
| 09/27/2019 | 90 | JOINT LETTER MOTION for Extension of Time *For Defendants To Answer; For Plaintiff To Seek Leave To Amend; And To Adjourn The October 21, 2019 Initial Conference* addressed to Judge Paul G. Gardephe from Joseph Anci dated September 27, 2019. Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 09/27/2019) |
| 10/03/2019 | | NOTICE OF REASSIGNMENT OF A REFERRAL TO ANOTHER MAGISTRATE JUDGE. The referral in the above entitled action has been reassigned to Magistrate Judge Sarah L. Cave, for Settlement. Magistrate Judge Henry B. Pitman no longer referred to the case. (ad) (Entered: 10/03/2019) |
| 10/07/2019 | 91 | ORDER granting 90 Letter Motion for Extension of Time. The application is granted. The conference is adjourned to Nov. 21, 2019 at 10:45 A.M. So ordered. (Signed by Judge Paul G. Gardephe on 10/1/2019) (js) (Entered: 10/07/2019) |

| 10/07/2019 | | Set/Reset Deadlines: Carmen Farina answer due 10/15/2019; The New York City Department of Education answer due 10/15/2019.( Motions due by 11/6/2019.), Set/Reset Hearings:( Initial Conference set for 11/21/2019 at 10:45 AM before Judge Paul G. Gardephe.) (js) (Entered: 10/07/2019) |
|---|---|---|
| 10/15/2019 | 92 | ANSWER to 39 Amended Complaint,. Document filed by Carmen Farina, The New York City Department of Education.(Anci, Joseph) (Entered: 10/15/2019) |
| 11/06/2019 | 93 | MOTION to Amend/Correct *Second Amended Complaint*. Document filed by Jill Bloomberg.(Mirer, Jeanne) (Entered: 11/06/2019) |
| 11/06/2019 | 94 | AFFIDAVIT of Jeanne Mirer in Support re: 93 MOTION to Amend/Correct *Second Amended Complaint*.. Document filed by Jill Bloomberg. (Attachments: # 1 Exhibit Proposed Second Amended Complaint)(Mirer, Jeanne) (Entered: 11/06/2019) |
| 11/14/2019 | 95 | CONSENT LETTER MOTION for Extension of Time to File Response/Reply as to 94 Affidavit in Support of Motion, 93 MOTION to Amend/Correct *Second Amended Complaint*. addressed to Judge Paul G. Gardephe from Joseph Anci dated November 14, 2019. Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 11/14/2019) |
| 11/18/2019 | 96 | ORDER granting 95 Letter Motion for Extension of Time to File Response/Reply re 93 MOTION to Amend/Correct *Second Amended Complaint*. The application is granted. So Ordered. (Responses due by 12/6/2019.) (Signed by Judge Paul G. Gardephe on 11/15/19) (yv) (Entered: 11/18/2019) |
| 11/18/2019 | 97 | ORDER: It is hereby ORDERED that the conference in this action previously scheduled for November 21, 2019 is adjourned. A conference is scheduled for November 21, 2019 at 3:15 p.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. (Signed by Judge Paul G. Gardephe on 11/18/2019) (rro) (Entered: 11/18/2019) |
| 11/20/2019 | 98 | ORDER: It is hereby ORDERED that the conference in this action previously scheduled for November 21, 2019 is adjourned. A conference is scheduled for December 12, 2019 at 11:00 a.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. SO ORDERED. (Initial Conference set for 12/12/2019 at 11:00 AM in Courtroom 705, 40 Centre Street, New York, NY 10007 before Judge Paul G. Gardephe.) (Signed by Judge Paul G. Gardephe on 11/20) (jca) (Entered: 11/20/2019) |
| 12/06/2019 | 99 | MEMORANDUM OF LAW in Opposition re: 93 MOTION to Amend/Correct *Second Amended Complaint*. . Document filed by Carmen Farina, The New York City Department of Education. (Anci, Joseph) (Entered: 12/06/2019) |
| 12/11/2019 | 100 | ORDER: It is hereby ORDERED that the conference in this action previously scheduled for December 12, 2019 is adjourned sine die. (Signed by Judge Paul G. Gardephe on 12/11/2019) (va) (Entered: 12/12/2019) |
| 12/12/2019 | 101 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated December 12, 2019 re: Agreed Extension to File Plaintiff's Reply. Document filed by Jill Bloomberg. (Mirer, Jeanne) (Entered: 12/12/2019) |
| 12/17/2019 | 102 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated December 17, 2019 re: Agreed Extension to File Plaintiff's Reply. Document filed by Jill Bloomberg. (Mirer, Jeanne) (Entered: 12/17/2019) |
| 12/17/2019 | 103 | MEMO ENDORSEMENT on re: 102 Letter filed by Jill Bloomberg. ENDORSEMENT: SO ORDERED. (Replies due by 1/10/2020.) (Signed by Judge Paul G. Gardephe on |

| | | 12/17/2019) (jca) (Entered: 12/17/2019) |
|---|---|---|
| 01/10/2020 | 104 | FIRST REPLY MEMORANDUM OF LAW in Support re: 93 MOTION to Amend/Correct *Second Amended Complaint*. . Document filed by Jill Bloomberg. (Mirer, Jeanne) (Entered: 01/10/2020) |
| 11/17/2020 | 105 | ORDER: It is hereby ORDERED that Plaintiff Jill Bloomberg shall submit by Friday, November 20, 2020 a redline comparison between the First Amended Complaint (Dkt. No. 39 and the Proposed Second Amended Complaint (Dkt. No. 94-1). SO ORDERED. (Signed by Judge Paul G. Gardephe on 11/17/2020) (jca) (Entered: 11/17/2020) |
| 11/20/2020 | 106 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated 11/20/2020 re: Order (Dkt #105) requesting redline complaints comparison. Document filed by Jill Bloomberg..(Julien, Ria) (Entered: 11/20/2020) |
| 11/20/2020 | 107 | LETTER addressed to Judge Paul G. Gardephe from Jeanne Mirer dated 11/20/2020 re: Order (Dkt #105) requesting redline complaints comparison with attachment. Document filed by Jill Bloomberg. (Attachments: # 1 Supplement Redline comparison of complaints).(Julien, Ria) (Entered: 11/20/2020) |
| 09/23/2021 | 108 | ORDER denying 93 Motion to Amend/Correct 93 MOTION to Amend/Correct *Second Amended Complaint*. Plaintiffs motion for leave to file a Second Amended Complaint (Dkt. No. 93) is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 93) and to close this case. So Ordered. (Signed by Judge Paul G. Gardephe on 9/23/21) (yv) Transmission to Docket Assistant Clerk for processing. (Entered: 09/24/2021) |
| 10/08/2021 | 109 | MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . Document filed by Jill Bloomberg..(Mirer, Jeanne) (Entered: 10/08/2021) |
| 10/08/2021 | 110 | AFFIDAVIT of Jeanne Mirer in Support re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, .. Document filed by Jill Bloomberg..(Mirer, Jeanne) (Entered: 10/08/2021) |
| 10/08/2021 | 111 | MEMORANDUM OF LAW in Support re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . . Document filed by Jill Bloomberg..(Mirer, Jeanne) (Entered: 10/08/2021) |
| 10/15/2021 | 112 | ORDER with respect to 109 Motion for Reconsideration re 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . filed by Jill Bloomberg. It is hereby ORDERED that the following schedule will apply to Plaintiffs motion for reconsideration (Dkt. No. 109): 1. Defendants opposition is due on October 29, 2021; and 2. Plaintiffs reply, if any, is due on November 5, 2021. SO ORDERED. (Signed by Judge Paul G. Gardephe on 10/15/2021) (tg) (Entered: 10/15/2021) |
| 10/15/2021 | | Set/Reset Deadlines: Responses due by 10/29/2021 Replies due by 11/5/2021. (tg) (Entered: 10/15/2021) |
| 10/27/2021 | 113 | CONSENT LETTER MOTION for Extension of Time *To File Opposition To Plaintiff's Motion For Reconsideration* addressed to Judge Paul G. Gardephe from Joseph Anci dated October 27, 2021. Document filed by Carmen Farina, The New York City Department of Education..(Anci, Joseph) (Entered: 10/27/2021) |
| 11/04/2021 | 114 | ORDER granting 113 Letter Motion for Extension of Time. Memo Endorsed: The application is granted. Defendants will file their opposition to Plaintiff's motion for reconsideration by November 12, 2021, and Plaintiff will file a reply, if any, by November 19, 2021. SO ORDERED. (Signed by Judge Paul G. Gardephe on 11/4/2021) (mml) (Entered: 11/05/2021) |

| | | |
|---|---|---|
| 11/04/2021 | | Set/Reset Deadlines: Responses due by 11/12/2021 Replies due by 11/19/2021. (mml) (Entered: 11/05/2021) |
| 11/12/2021 | 115 | MEMORANDUM OF LAW in Opposition re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . . Document filed by Carmen Farina, The New York City Department of Education..(Anci, Joseph) (Entered: 11/12/2021) |
| 11/19/2021 | 116 | REPLY MEMORANDUM OF LAW in Support re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . . Document filed by Jill Bloomberg..(Mirer, Jeanne) (Entered: 11/19/2021) |
| 12/20/2022 | 117 | ORDER with respect to 109 Motion for Reconsideration re 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . filed by Jill Bloomberg. Accordingly, Plaintiff must cite case law satisfying this standard. The parties' briefing should address, inter alia, the applicability of the following cases in determining the appropriate pleading standard for a Title VI retaliation claim in the context of this case: Hickey v. Myers, 2010 WL 786459 (N.D.N.Y. Mar. 2, 2010) (Title VI retaliation standard); Lopez v. Webster Cent. Sch. Dist., 682 F. Supp. 2d 274 (W.D.N.Y. 2010) (sufficiency of allegations related to defendants' receipt of federal funds); New York Urb. League, Inc. v. Metro. Transp. Auth., 905 F. Supp. 1266 (S.D.N.Y.), vacated on other grounds, 71 F.3d 1031 (2d Cir. 1995) (applicability of Title VI to a state agency); Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003) (private right of action for retaliation under Title VI); Homer v. Kentucky High Sch. Athletic Ass'n, 43 F.3d 265 (6th Cir. 1994) (Civil Rights Restoration Act and the definition of "program or activity" under Title IX). The supplemental briefing will be filed according to the following schedule: (1) Plaintiffs supplemental brief is due by January 4, 2023; and (2) Defendants' supplemental brief is due by January 11, 2023. SO ORDERED.. (Signed by Judge Paul G. Gardephe on 12/20/2022) (kv) (Entered: 12/20/2022) |
| 01/04/2023 | 118 | RESPONSE in Support of Motion re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . *SUPPLEMENTAL BRIEF*. Document filed by Jill Bloomberg..(Julien, Ria) (Entered: 01/04/2023) |
| 01/11/2023 | 119 | RESPONSE in Opposition to Motion re: 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . . Document filed by Carmen Farina, The New York City Department of Education. (Attachments: # 1 Appendix A, # 2 Appendix B).(O'Connor, Andrea) (Entered: 01/11/2023) |
| 02/10/2023 | 120 | ORDER granting in part and denying in part 109 Motion for Reconsideration re 109 MOTION for Reconsideration re; 108 Order on Motion to Amend/Correct, . filed by Jill Bloomberg For the reasons stated above, Plaintiffs motion for reconsideration (Dkt. No. 109) is granted, but leave to amend is denied. The Clerk of Court is directed to close this case. SO ORDERED.. (Signed by Judge Paul G. Gardephe on 2/10/2023) (ks) (Entered: 02/10/2023) |
| 03/10/2023 | 121 | NOTICE OF APPEAL from 120 Order on Motion for Reconsideration,. Document filed by Jill Bloomberg. Filing fee $ 505.00, receipt number ANYSDC-27455325. Form C and Form D are due within 14 days to the Court of Appeals, Second Circuit..(Julien, Ria) (Entered: 03/10/2023) |
| 03/13/2023 | | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 121 Notice of Appeal. (tp) (Entered: 03/13/2023) |
| 03/13/2023 | | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 121 Notice of Appeal, filed by Jill Bloomberg were transmitted to the U.S. Court of Appeals. (tp) (Entered: 03/13/2023) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/27/2023 10:51:40 | | | |
| **PACER Login:** | rjulien2 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:17-cv-03136-PGG |
| **Billable Pages:** | 13 | **Cost:** | 1.30 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

     Plaintiff,

  - against -

THE NEW YORK CITY DEPARTMENT
OF EDUCATION and CARMEN FARINA,

     Defendants.

**MEMORANDUM
<u>OPINION & ORDER</u>**

17 Civ. 3136 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Jill Bloomberg – a high school principal – brings this action against the

New York City Department of Education (the "DOE") and its chancellor. Bloomberg claims

that a DOE investigation of her conduct – purportedly premised on her violation of a DOE

regulation governing DOE personnel's activity on behalf of political organizations – was

retaliatory and in violation of her First Amendment rights. Bloomberg further contends that the

DOE regulation on which the investigation was based does not apply to her alleged conduct and,

in any event, is unconstitutionally vague. The Amended Complaint asserts claims for retaliation

in violation of the First Amendment, Title VI of the Civil Rights Act of 1964 ("Title VI"), 42

U.S.C. §§ 2000d-1 <u>et seq.</u>, and the New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin. Code § 8-101 <u>et seq.</u> Bloomberg also challenges the DOE regulation on Due Process

grounds. (Am. Cmplt. (Dkt. No. 39))

    Defendants have moved to dismiss Plaintiff's First Amendment and Title VI

claims, and her Due Process claim. (Mot. (Dkt. No. 77)) Plaintiff has cross-moved for partial

judgment on the pleadings seeking, <u>inter alia</u>, a declaration as to the DOE regulation's scope.

(Cross-Mot. (Dkt. No. 81); Pltf. Br. (Dkt. No. 82))

For the reasons stated below, Defendants' motion to dismiss will be granted in its entirety, and Plaintiff's cross-motion will be terminated as withdrawn.

## **BACKGROUND**

### I.   **FACTS**

Plaintiff Bloomberg is the principal of Park Slope Collegiate ("PSC"), a secondary school in Park Slope, Brooklyn.  (Am. Cmplt. (Dkt. No. 39) ¶¶ 1, 4, 21, 28)  Plaintiff has served as the principal of PSC since 2004, and has been employed by the DOE since 1998.  (Id. ¶¶ 9-10)

PSC is located at a facility known as the "John Jay Campus."  The John Jay Campus houses PSC and three other schools:  the Secondary School for Journalism ("Journalism"); The John Jay School for Law ("Law"); and Millennium Brooklyn High School ("Millennium").  (Id. ¶ 4; Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))  Millennium joined the John Jay Campus in 2011.  (Am. Cmplt. (Dkt. No. 39) ¶¶ 33, 36; Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))  PSC's student body is 85 percent Black or Latino, while Millennium has a "high percentage" of white students, although the majority of the student body is Black or Latino.[1]  (Am. Cmplt. (Dkt. No. 39) ¶ 56)  Park Slope – where the schools are located – is "an increasingly affluent neighborhood . . . with a majority [w]hite population."  (Id. ¶ 30)

"Since the outset of her tenure at PSC," Plaintiff "has encouraged desegregation of the school and opposed measures that reinforce and perpetuate de facto segregation."  For example, Bloomberg opposed the addition of Millennium to the John Jay Campus.  (Id. ¶ 32; see id. ¶¶ 33-52)

---

[1]  Millenium is an offshoot of Millennium High School in Manhattan ("Millennium-Manhattan").  The student body of Millennium-Manhattan is approximately 25 percent Black or Latino.  (Am. Cmplt. (Dkt. No. 39) ¶ 56)

A.   **Plaintiff's January 10, 2017 Email**

The Campus operates two sports programs.  One program is for students at PSC, Journalism, Law, and a neighboring school – Brooklyn High School of the Arts ("Arts") – and the second program is for students at Millennium and Millennium-Manhattan.  (Id. ¶ 56; Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))

According to Plaintiff, "[i]t is part of a principal's . . . regular job duties to request sports teams of the [Public School Athletic League ("PSAL")].  For years[,] principals and coaches in the John Jay Program had been making these formal requests but [their] requests were regularly rejected."  (Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 5)

On January 10, 2017, Plaintiff sent the following email to Eric Goldstein, the chief executive officer of the DOE sports programs, and Michael Prayor, the District Superintendent,[2] concerning sports programs at the John Jay Campus:

> Dear CEO Goldstein and Superintendent Prayor,
>
> I am writing to request your assistance in uniting the PSAL sports teams on the John Jay Campus in Brooklyn.  Our campus houses [Journalism, Law, Millennium, and PSC].  Currently, the John Jay Campus Schools PSAL teams include students from [Journalism, Law, PSC and students from [Arts] on Dean Street.  [Millennium] students belong to the Millennium High School PSAL teams that also include students from [Millennium-Manhattan].  These separate sports programs, both of which practice and compete at the John Jay Campus ([Millennium-Manhattan] does not have a gym) offer vastly unequal opportunities to students.

(Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))

The email includes the following chart:

---

[2] Four other DOE employees are copied on the email, including Donald Douglas, the executive director of the PSAL.  (Bloomberg Aff., Ex. 3 (Dkt. No. 10-3); Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 7)

| School or Program | Number of PSAL Teams | Enrollment (SY 15-16) | % Black & Hispanic |
|---|---|---|---|
| [Law] | | 357 | 90.4 |
| [Journalism] | | 222 | 87.0 |
| PSC | | 356 (HS only) | 85 |
| [Arts] | | 924 | 90.7 |
| **John Jay Campus PSAL** | **9** | **1859** | |
| [Millennium] | | 620 | 51.5 |
| [Millennium-Manhattan] | | 641 | 25.2 |
| **Millennium High School PSAL** | **17** | **1261** | |

(Id. (emphasis in original))  The email goes on to state:

> Prior to this school year, the John Jay Campus had only four teams.  We were recently granted girls' cross-country, and girls' and boys' indoor and outdoor track[,] though we requested and were denied girls' and boys' swimming, girls' softball, flag football, double-dutch and JV volleyball as well as boys' volleyball and soccer.  Meanwhile, the number of [Millennium-Manhattan] teams continues to grow.

> The Principals of the schools at the John Jay Campus meet weekly to manage our shared campus.  From the time that [Millennium] joined our campus community in 2011, I have argued that they should be a part of our PSAL team.  Nonetheless, they opted to join with [Millennium-Manhattan] (which opened in 2002) and, over the years, have been granted 17 teams.  In spite of repeated requests to unite the teams and open up the opportunities that exist on the campus, but that are denied to students from three of the four schools, [Millennium] maintains its exclusive alliance with [Millennium-Manhattan].

> The PTA at PSC has also raised these inequities with Executive Director Donald Douglas but have heard nothing in response.

> The benefits of these separate and unequal programs to the students at [Millennium] and [Millennium-Manhattan] do not justify the disadvantages imposed on the students from [Arts, Law, Journalism,] and PSC.  Nor do whatever logistical difficulties may arise from uniting them.  The students at all six schools are equally deserving of opportunities to participate in extracurricular sports and it is the responsibility of the DOE and PSAL to facilitate that equity.

> I look forward to hearing from you soon.

(Id.)

> According to Plaintiff, her "primary protest" in this email "was the segregation of the programs based on race."  (Am. Cmplt. (Dkt. No. 39) ¶ 57; see also id. ¶ 56 (the January 10,

4

2017 email "accus[ed] the DOE of race discrimination and segregation within the sports programs in her building"); Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 9 ("The Complaint I made to PSAL was designed to address what I believe was a violation of the law. . . ."))[3]

According to Plaintiff, she "received no meaningful response" to her January 10, 2017 email. (Id. ¶ 58) As a result, PSC's PTA organized a February 13, 2017 "leafleting action," distributing flyers containing language from the January 10, 2017 email on the sidewalk outside of the John Jay Campus building "to inform the community about the race discrimination and segregation that [P]laintiff had complained about." (Id. ¶ 59)

On March 3, 2017, Donald Douglas – the executive director of the PSAL, who had been copied on Plaintiff's January 10, 2017 email – met with the principals of the schools located at the John Jay Campus. Although he "refused to combine the programs between the PSC and other John Jay programs with the programs at Millennium," he did "grant[] John Jay an additional five teams," and asked Plaintiff "if that made [her] happy." (Bloomberg Supp. Aff. (Dkt. No. 21) ¶¶ 7, 10)

Plaintiff describes her January 10, 2017 email as a "Title VI Complaint." (Am. Cmplt. (Dkt. No. 39) ¶ 59) Plaintiff further alleges, "[u]pon information and belief," that "all Title VI complaints made to DOE officials are immediately referred to the Office of Civil Rights ('OCR')." (Id. ¶ 60) Accordingly, "[b]ased on DOE policy and upon information and belief,

---

[3] The Amended Complaint also notes that on November 29, 2016, Plaintiff "sent a letter to Ramon Garcia, Assistant Commissioner of the School Safety Division, NYPD, and other DOE officials," in connection with an incident in which the John Jay Campus girls' volleyball team "had been singled out, humiliated, and treated like criminals by the school safety agents at another, predominantly White school." (Am. Cmplt. (Dkt. No. 39) ¶¶ 54-55) In her letter to Garcia, Plaintiff notes that the principal of the other school "sent a letter of apology . . . [and] agreed to host . . . a Unity Game"; the commander of the school safety personnel "also offered an apology to the team." (Bloomberg Aff., Ex. 2 (Dkt. No. 10-2))

"[P]laintiff's Title VI Complaint . . . was referred to OCR by at least on or about January 15, 2017." (Id. ¶ 61)  Robin Greenfield – DOE's Executive Deputy Counsel for Employment and General Practice – is "directly responsible for responding to OCR complaints on behalf of DOE." (Id. ¶ 60)[4]

### B.    The OSI Investigation

On May 12, 2016 – eight months before Plaintiff's January 10, 2017 email – the Special Commissioner of Investigation for the New York City School District ("SCI") received an anonymous complaint concerning Plaintiff.  SCI is independent of DOE, and its "sole function" "is to investigate allegations of corruption, conflicts of interest, unethical conduct[,] and other misconduct in the DOE." (Guerra Decl. (Dkt. No. 13) ¶¶ 6, 11; see also Am. Cmplt. (Dkt. No. 39) ¶¶ 69, 87)  The anonymous complaint alleged that Plaintiff "was a member of a political organization known as the [Progressive] Labor Party ('PLP') and was actively recruiting students into the organization and inviting them to participate in organizational activities including marches for her political organization." (Guerra Decl. (Dkt. No. 13) ¶ 11)

SCI is authorized by law to refer certain complaints to the Office of Special Investigations ("OSI"), an internal DOE investigatory unit overseen by DOE's Office of General Counsel.  (Id. ¶¶ 5-6; Am. Cmplt. (Dkt. No. 39) ¶ 60; see also New York City Mayoral Executive Order 11, § 3)[5]  SCI referred the anonymous complaint to OSI on May 13, 2016.  (Guerra Decl. (Dkt. No. 13) ¶ 12)  OSI concluded that there was insufficient information to pursue the complaint, and – given that the identity of the complainant was unknown – on May 17, 2016, OSI "marked the complaint as closed pending additional information." (Id. ¶ 13)

---

[4]  Greenfield's position is within DOE's Office of General Counsel.  (Id. ¶ 60)
[5]  Mayoral Executive Order 11 is available at
https://www.nycourts.gov/library/queens/PDF_files/Orders/ord11.pdf.

On December 20, 2016, the anonymous complainant provided additional information to SCI, reporting, inter alia, that Plaintiff's husband was the president of the Len Ragozin Foundation (the "Foundation"), an organization associated with the Progressive Labor Party; that Plaintiff's husband included images of students and staff in a documentary he filmed for the Foundation, without the students' and staff's authorization; and that this documentary had been screened at PSC, with a $20 admission fee.[6] (Guerra Decl. (Dkt. No. 13) ¶¶ 14-15)[7] SCI referred the new report to OSI on January 25, 2017, about two weeks after Plaintiff had sent her January 10, 2017 email about sports programs at the John Jay Campus. (Id. ¶ 17)

Equipped with this new information, OSI re-opened its investigation of the complaint concerning Plaintiff, and assigned the investigation to Confidential Investigator Michelle Archie. (Id. ¶¶ 18, 21) As a result of the additional information provided on December 20, 2016, OSI was also able to identify and interview the complainant. (Id. ¶ 19)

Plaintiff asserts that, "[b]ecause Robin Greenfield would have received the information about [P]laintiff's January 10, 2017 Title VI Complaint on at least January 15, 2017, as she is the person responsible for receiving . . . all Title VI complaints[], and she also received

---

[6] On May 4, 2016, about a week before SCI received the May 12, 2016 anonymous complaint, the Foundation applied for an "extended use" permit for a June 3, 2016, 6:00 p.m. "film screening and panel discussion" at the PSC auditorium. The application requested permission to sell goods and solicit donations. The application does not provide a description of the Foundation. The application form states, however, that "[s]chool buildings cannot be used for . . . [p]olitical events, activities or meetings[,] including those conducted on behalf of an elected official, candidate, slate of candidates or political organizations. . . ." (Extended Use Permit App. (Dkt. No. 21-4)) The application was approved. (Permit Confirmation (Dkt. No. 21-3))

[7] The anonymous complainant also alleged that, under Plaintiff's watch, a bake sale was held at PSC to raise money for a May Day march; that PSC was failing to teach a required course; and that "students who voice opinions different from those of [P]laintiff are not allowed to express them." (Guerra Decl. (Dkt. No. 13) ¶ 16) Plaintiff denies all of these allegations. (Am. Cmplt. (Dkt. No. 39) ¶¶ 86-87)

7

the information regarding the complaints from OSI, she had specific knowledge of both the Title VI Complaint and the OSI complaints prior to the time the investigation was officially commenced." (Am. Cmplt. (Dkt. No. 39) ¶ 78)

On March 2, 2017, Archie informed Plaintiff that she was under investigation, but stated "that the allegations against her and the subject of the investigation could not be disclosed to her." (Id. ¶¶ 24, 63) That same day, however, Archie informed PSC's assistant principal, Carla Laban, "that the investigation . . . related to 'communist activities taking place at the school.'" (Id. ¶ 64) Archie showed Laban "a list of names" – including, among others, Plaintiff, her family members, current and former PSC teachers, and former students – and asked Laban to identify those she had seen "engag[e] in communist activities." (Id. ¶¶ 64-65) Laban disclosed the substance of her conversation with Archie at a PSC PTA meeting on March 16, 2017. (Id. ¶ 67)

On March 22, 2017, Plaintiff's counsel (and Caban) sent a letter to DOE's General Counsel asserting that Plaintiff "[was] . . . under investigation by the OSI" "[a]s a result of and in retaliation for her advocacy against segregation." (Bloomberg Aff., Ex. 5 (Dkt. No. 10-5) at 2; see also Am. Cmplt. (Dkt. No. 39) ¶ 68) Noting Plaintiff's January 10, 2017 email about sports programs at the John Jay Campus, and the February 13, 2017 "leafleting action," Plaintiff's letter asserted that there was "no question that it is illegal for an investigation to be instituted in direct retaliation for [Plaintiff's] recent actions protesting race discrimination." Plaintiff "demand[ed] that the OSI immediately close its retaliatory investigation," and threatened to file suit if DOE did not respond by March 27, 2017. (Bloomberg Aff., Ex. 5 (Dkt. No. 10-5) at 3-4)

On March 27, 2017, Robin Greenfield responded to Plaintiff's letter. (Bloomberg Aff., Ex. 6 (Dkt. No. 10-6)) Greenfield informed Plaintiff that "[t]he substance of the complaint that OSI is investigating is unrelated to [Plaintiff's] complaint." Greenfield noted that "the complaint being investigated initially was filed in May 2016, long before [Plaintiff] lodged a complaint about the sports teams on the John Jay Campus." Greenfield also stated that "OSI has no knowledge of any complaint lodged by [Plaintiff] with the [PSAL] concerning racial segregation in the sports teams." (Id.) Finally, Greenfield stated that it was "entirely proper for the OSI investigator to ask questions about communist activities at [Plaintiff's] school and about whether staff is engaging students in an inappropriate manner," because "it would not be appropriate for school staff to solicit students to participate in any political events or to encourage them to support a particular political group or party." (Id.)

In a March 28, 2017 letter to Greenfield, Plaintiff's counsel stated that Greenfield's response "in fact makes us believe that retaliation is indeed the motive for this investigation," as "[t]here could be no other reason for the OSI to sit on a complaint . . . for almost one year, only to commence the investigation within two weeks" of Plaintiff's January 10, 2017 email. (Bloomberg Aff., Ex. 7 (Dkt. No. 10-7); Am. Cmplt. (Dkt. No. 39) ¶ 70) Counsel "insist[ed] that [DOE] share . . . the exact nature of the allegations, including which specific activity violated which specific regulation." (Bloomberg Aff., Ex. 7 (Dkt. No. 10-7))

In an April 6, 2017 letter, Greenfield addressed Plaintiff's demand for specifics concerning the complaint OSI was investigating:

> The complaint being investigated is that [Plaintiff] and two teachers at the Park Slope Collegiate School are members of a communist organization known as the Progressive Labor Party, that they are actively recruiting students into the organization during school hours, and that they invite students to participate in the organization's activities, including marches for communism. If substantiated, this could constitute a violation of Chancellor's Regulation D-130, which provides, in

9

part, that staff may not be involved in any activities on behalf of a political organization during working hours.

(Bloomberg Aff., Ex. 8 (Dkt. No. 10-8); Am. Cmplt. (Dkt. No. 39) ¶ 72)

Greenfield's letter also explains that "[t]he complaint was initially filed with [SCI] in May of 2016 [and] . . . referred . . . to OSI. The complainant supplied further information in December 2016, and thereafter, OSI began its investigation. (Bloomberg Aff., Ex. 8 (Dkt. No. 10-8))

## C.     Chancellor's Regulation D-130

Regulation D-130 (the "Regulation") "governs the use of school buildings by candidates, elected officials, and political organizations and the conduct of school employees and officers with respect to political campaigns and elections." (Regulation D-130 (Abstract) (Dkt. No. 79-3)) The Regulation's introduction provides:

> School buildings are not public forums for purposes of community or political expression. The following sets forth the rules which govern: (1) the use of, or access to, Department of Education school buildings by elected officials, candidates for elective office, or organizations working on behalf of such officials or candidates, both during school and non-school hours; (2) use of school facilities, equipment and supplies for political purposes by school employees, personnel, or staff members and officials; and (3) conduct of school employees, personnel, or staff members and officials with respect to political campaigns and elections.

(Id. (Introduction) (footnote omitted)).

Section I.B of the Regulation addresses the use of school facilities, equipment, and supplies, and provides that – generally – these resources "may not be used on behalf of any candidate, candidates, slate of candidates, or political organization/committee." (Id. at § I(B)) In particular,

1.  The use of any Department of Education school during school/business hours by any person, group, organization, committee, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates or political organization/committee is prohibited.

10

2. No rallies, forums, programs, etc., on behalf of, or for the benefit of any elected official, particular candidate, candidates, slate of candidates or political organization/committee may be held in a school building.

3. No material supporting any candidate, candidates, slate of candidates or political organization/committee may be distributed, posted, or displayed in any school building . . . .

. . . .

8. No Department of Education . . . equipment may be used to produce, reproduce, record, or disseminate information on behalf of any candidate, candidates, slate of candidates or political organization/committee.

(Id.)

       Section I.C addresses the conduct of school personnel. It provides:

1. While on duty or in contact with students, all school personnel shall maintain a posture of complete neutrality with respect to all candidates. Accordingly, while on duty or in contact with students, school personnel may not wear buttons, pins, articles of clothing, or any other items advocating a candidate, candidates, slate of candidates or political organization/committee.

2. Personnel may not be involved in any activities, including fundraising, on behalf of any candidate, candidates, slate of candidates or political organization/committee during working hours.

3. Any campaigning by any personnel on Department of Education time is strictly prohibited. . . .

4. This regulation does not preclude school personnel from discussing or distributing information about election issues in connection with legitimate instructional programs and activities.

(Id. at § I(C))

       Section II of Regulation D-130 addresses use of school buildings during non-school hours. Subsection A provides that "[t]he use of any Department of Education school after school/business hours by any person, group, organization, committee, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates or political organization/committee is prohibited," although there is an exception for "candidate forums."

(Id. § II(A))

Plaintiff contends that the supplemental allegations "regarding the May 2016 SCI complaint are false[] on their face," but that "even if they were true[,] there would be no violation of [Regulation] D-130." (Am. Cmplt. (Dkt. No. 39) ¶¶ 87-88)

## II.  PROCEDURAL HISTORY

The Complaint was filed on April 28, 2017, and asserts claims for retaliation under the First Amendment, Title VI, and the NYCHRL. (Cmplt. (Dkt. No. 1)) On April 29, 2017, Plaintiff moved for a temporary restraining order and preliminary injunction enjoining the DOE's investigation of her pending the outcome of this case. (Mot. (Dkt. No. 3))

On May 1 and May 3, 2017, this Court conducted a hearing on Plaintiff's application for injunctive relief. On May 3, 2017, the Court denied the application, finding that Plaintiff had not shown a likelihood of success or irreparable injury with respect to her retaliation claims under the First Amendment, Title VI, and the NYCHRL. (See May 1, 2017 Hearing Tr. (Dkt. No. 33); May 3, 2017 Hearing Tr. (Dkt. No. 36) at 37; see also Order (Dkt. No. 31))

On May 23, 2017, Plaintiff filed the Amended Complaint. (Am. Cmplt. (Dkt. No. 39)) The Amended Complaint includes the causes of action originally pled, but also asserts that OSI's investigation violates Plaintiff's Due Process rights, because Regulation D-130 does not address Plaintiff's alleged conduct, and because the Regulation is unconstitutionally vague. (Id.)

Defendants have moved to dismiss Plaintiff's First Amendment and Title VI retaliation claims, as well as her Due Process claim. (Def. Mot. (Dkt. No. 77)) Plaintiff has cross-moved for partial judgment on the pleadings, with respect to "the applicable scope" of Regulation D-130. (Pltf. Mot. (Dkt. No. 81)) Since filing her cross-motion, however, Plaintiff has acknowledged that her motion is procedurally improper, because the pleadings in this case have not yet closed. Accordingly, Plaintiff "[does] not oppose the Court finding Plaintiff's 12(c) motion premature." (See Pltf. Reply Br. (Dkt. No. 86) at 4; see also Fed. R. Civ. P. 12(c) ("After

the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." (emphasis added)) Accordingly, the Court deems Plaintiff's cross-motion for judgment on the pleadings withdrawn.

## DISCUSSION

## I.  LEGAL STANDARDS

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . , the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiff['s] amended complaint, . . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit." Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

"To be incorporated by reference, the Complaint must make a clear, definite and substantial reference to the documents." Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003) "[L]imited quotation" of a document, Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985), or a mere passing reference to a document, does not incorporate the document into the complaint. See, e.g., Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989).

"Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). For a document to be integral to a complaint, "the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] document[ ] in framing the complaint.'" DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation marks omitted)); see also Williams v. City of New York, No. 14 Civ. 5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015) ("A document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." (emphasis in original)).

## II.  ANALYSIS

### A.  First Amendment Retaliation Claim

The Amended Complaint alleges that, as a result of "the letter of complaint [Plaintiff] wrote on January 10, 2017," Plaintiff "is now subjected to an investigation in which she is . . . labeled as a communist." "By engaging in this investigation . . . defendant[s] ha[ve] violated plaintiff's rights to freedom of expression under the First Amendment." (Am. Cmplt.

14

(Dkt. No. 39) ¶¶ 137, 141-42) Defendants seek dismissal of this claim on the ground that, "as a matter of law, . . . [Plaintiff] cannot demonstrate that any speech alleged in the complaint was made as a citizen, not as an employee." (Def. Br. (Dkt. No. 78) at 5)

A public employee asserting a First Amendment retaliation claim "must establish that: '(1) h[er] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against h[er]; and (3) there was a causal connection between this adverse action and the protected speech.'" Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (quoting Cox v. Warwick Valley Cent. School Dist., 654 F.3d 267, 272 (2d Cir. 2011)). "The inquiry into the protected status of speech is one of law, not fact." Connick v. Myers, 461 U.S. 138, 148 n.7 (1983).

Analyzing whether speech is protected by the First Amendment "encompasses two separate subquestions: '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke "as a citizen" rather than solely as an employee.'" Matthews, 779 F.3d at 172 (quoting Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011)). "If the answer to either question is no, that is the end of the matter." Id. "'[B]efore asking whether the subject matter of particular speech is a topic of public concern, [a] court must decide whether the plaintiff was speaking 'as a citizen'. . . .'" Agyeman v. Roosevelt Union Free Sch. Dist., 254 F. Supp. 3d 524, 534 (E.D.N.Y. 2017) (quoting Mills v. City of Evansville, 452 F.3d 646, 647 (7th Cir. 2006), and citing Benvenisti v. City of N.Y., No. 04-CV-3166 (JGK), 2006 WL 2777274, at *7 (S.D.N.Y. Sept. 23, 2006) ("First, the Court must determine whether the plaintiff was speaking as a 'citizen' for First Amendment purposes. After that, the Court . . . ask[s] whether . . . the plaintiff's speech was made . . . upon 'matters of public concern.'" (citations omitted))

In determining whether a plaintiff was speaking as an employee or as a citizen, courts consider whether (1) the speech "fall[s] outside of the employee's 'official responsibilities,'" and (2) whether a "civilian analogue" for the speech exists. Matthews, 779 F.3d at 173. A plaintiff speaks pursuant to her official job duties when the speech at issue "owe[s] its existence to" those job duties, Garcetti v. Ceballos, 547 U.S. 410, 421-22, 423 (2006), or when the speech is "'part-and-parcel of [the employee's] concerns' about [her] ability to 'properly execute [her] duties.'" Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 203 (2d Cir. 2010) (citation omitted). "[S]peech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description or in response to a request by the employer." Id. Here, "the key question in determining whether [Plaintiff] spoke as an employee or as a citizen is whether h[er] speech was 'undertaken in the course of performing . . . h[er] primary employment responsibility' and was aired 'in furtherance of the execution of one of [her] core duties as [principal].'" Morey v. Somers Cent. Sch. Dist., No. 06 CIV.1877 (PGG), 2010 WL 1047622, at *6 (S.D.N.Y. Mar. 19, 2010) (quoting Weintraub, 535 F.3d at 203 (internal quotation marks and citation omitted)), aff'd, 410 F. App'x 398 (2d Cir. 2011).

The Amended Complaint asserts that the January 10, 2017 email "was not something plaintiff was 'employed to do,' nor . . . 'part and parcel' of her regular job." (Am. Cmplt. (Dkt. No. 39) ¶ 137) This conclusory assertion is belied by Plaintiff's own statements, however, and by the email itself.

In an affidavit that is discussed in the Amended Complaint (see, e.g., Am. Cmplt. (Dkt. No. 39) ¶ 86), Plaintiff asserts that "[i]t is part of a principal's . . . regular job duties to request sports teams of the PSAL." Indeed, "[f]or years[,] principals and coaches in the John Jay

16

program had been making these formal requests." (Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 5) In

Plaintiff's January 10, 2017 email – which she sent by internal email to six DOE employees –

Plaintiff did just that: she "request[ed] [the] assistance" of Goldstein – who is in charge of

DOE's sports programs – and Superintendent Prayor "in uniting the PSAL sports teams on the

John Jay Campus." (Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))

      Plaintiff reminded Goldstein, Prayor, and the other DOE employees that "[p]rior

to [the 2016-17] school year, the John Jay campus had only four teams," while the sports

program for the Millennium schools "ha[d] been granted 17 teams." As such, the two programs

"offer vastly unequal opportunities to students." Plaintiff also submitted a chart reflecting the

percentage of Black or Latino students at each of the schools in the two sports programs.

Plaintiff told her DOE colleagues that "[t]he students at all [the] schools are equally deserving of

opportunities to participate in extracurricular sports and it is the responsibility of the DOE and

PSAL to facilitate that equity." (Bloomberg Aff., Ex. 3 (Dkt. No. 10-3))

      As this Court stated in ruling on Plaintiff's application for a temporary restraining

order and preliminary injunction, Plaintiff's January 10, 2017 email to her DOE colleagues was

"a plea for resources and a plea for fairness as to the availability of extracurricular sports teams"

for Plaintiff's students. (May 3, 2017 Hearing Tr. (Dkt. No. 36) at 18)[8] Such a request is

---

[8] Plaintiff maintains that while her job duties include "request[ing] sports teams of the PSAL,"
they "do not include formulating, implementing or providing feedback on PSAL policy."
(Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 6) Plaintiff's January 10, 2017 email does not
"formulat[e]" or "implement[]" PSAL policy, however. While one could read Plaintiff's
complaints about the sports program as "providing feedback," her email is, in essence, a focused
plea for resources, rather than a "policy oriented complaint," as she now asserts. (Id. ¶ 8, Am.
Cmplt. (Dkt. No. 39) ¶ 137) As is common whenever someone requests more resources –
whether at DOE or in the private sector – Plaintiff supports her plea for more resources by
contrasting what her students have received to the resources provided to other schools. But
Plaintiff's request for more resources cannot be fairly read as a "policy oriented complaint."
And even if her request could be construed in that fashion, any "policy oriented complaint" "was

"'undertaken in the course of performing . . . [Plaintiff's] primary employment responsibility,'"

and is "'in furtherance of the execution of one of [Plaintiff's core duties as [principal].'" Morey,

2010 WL 1047622, at *6 (quoting Weintraub, 535 F.3d at 203). See Ehrlich v. Dep't of Educ. of

City of New York, No. 11 CIV. 4114 RMB KNF, 2012 WL 424991, at *3 (S.D.N.Y. Feb. 6,

2012) ("[C]ourts have routinely held as a matter of law that a teacher's advocacy on behalf of her

students falls squarely within her official duties as a teacher."); Verdi v. City of New York, 306

F. Supp. 3d 532, 548 (S.D.N.Y. 2018) ("Plaintiff's objections to the alleged [racially]

discriminatory practices at P.S. 24 were lodged by him as part of his duties as a public employee

to protect his students' and his putative students' rights. . . . Plaintiff's speech constituted

advocacy on behalf of his students and putative students and was part-and-parcel of his duties as

Assistant Principal at P.S. 24. Accordingly, his speech is not protected for the purposes of his

[First Amendment] retaliation claim. . . ."); see also Agyeman, 254 F. Supp. 3d at 535 ("[T]he

record and the case law demonstrate that plaintiff indisputably spoke as a public employee in her

internal e-mails complaining about student discipline, the conduct of other teachers and District

personnel, and the lack of resources and support. . . .")[9]

---

'undertaken in the course of performing . . . [Plaintiff's] primary employment responsibility' and
was aired 'in furtherance of the execution of one of [her] core duties.'" Morey, 2010 WL
1047622, at *6 (quoting Weintraub, 535 F.3d at 203).

[9] Plaintiff also contends that her e-mail "accus[es] the DOE of race discrimination and
segregation within the sports programs in her building," and that her "primary protest" in the
email "was the segregation of the programs based on race." (Am. Cmplt. (Dkt. No. 39) ¶¶ 56,
57) In her brief opposing Defendants' motion to dismiss, Plaintiff likewise argues that "[s]he
was seeking in th[e January 10, 2017] e-mail to raise a racially discriminatory condition
prevailing in the John Jay Campus building regarding the racial segregation and racially
discriminatory allocation of sports teams. . . . The fact that principals have to make an
application to PSAL in order to get sports teams in general does not convert plaintiff's complaint
about racial segregation and the racially disparate assignment of teams into one of her ordinary
duties." (Pltf. Opp. Br. (Dkt. No. 80) at 19)

The cases Plaintiff cites (Pltf. Opp. Br. (Dkt. No. 80) at 19-23) are not to the

contrary. In Matthews v. City of New York, 779 F.3d 167 (2d Cir. 2015), the Second Circuit

held that a police officer – in complaining to a supervisor about a precinct-wide quota system,

which he argued was "causing unjustified stops" and harming the precinct's relationship with the

community – had engaged in speech in his capacity as a private citizen and not as a police

officer. Matthews, 779 F.3d at 173-75. The Matthews court found that the police officer's

"speech to the Precinct's leadership . . . was not what he was 'employed to do,' . . . nor was it

'part-and-parcel' of his regular job. . . . [The officer's] policy-oriented speech was neither part of

his job description nor part of the practical reality of his everyday work." Id. at 174.

---

Whatever Plaintiff's intentions or motivations may have been in composing her email, Plaintiff's alleged "primary" concern about racial discrimination and segregation is not made manifest in the email. Indeed, there is no reference to discrimination or segregation – or to comparable terms – in her email. While Plaintiff includes a chart listing the percentage of Black or Hispanic students at each school in the two sports programs, the email does not address these statistics in any fashion. Instead, the crux of the email is that (1) students at PSC and the other schools in its sports program deserve an opportunity to participate in extracurricular sports; (2) they are not being given this opportunity; and (3) the failure to offer them this opportunity is inequitable, because other students – including students at another school in the same building – have these opportunities. While pointing out the "inequities," however, Plaintiff does not assert that they are the product of racial discrimination or a desire to segregate sports teams.

It also appears that the DOE recipients of Plaintiff's email understood her to be requesting that PSAL make more sports teams available to PSC and the other schools that are part of its sports program. According to Plaintiff, Donald Douglas – a recipient of the email and the executive director of the PSAL – "granted John Jay an additional five teams," and asked Plaintiff "if that made [her] happy." (Bloomberg Supp. Aff. (Dkt. No. 21) ¶¶ 7, 10)

Finally, even if Plaintiff had alleged racial discrimination and segregation more pointedly in her email, such allegations would not change the fact that she spoke as a public employee. See Verdi, 306 F. Supp. 3d at 548 (where assistant principal "publicly complained that efforts have been and are being made to keep poor and minority children . . . out of [his school]," including by "wr[iting] to the Schools Chancellor . . . and DOE's Special Commissioner of Investigation regarding his concerns about the kindergarten enrollment process," he spoke as a public employee, rather than as a citizen).

Here, by contrast, Plaintiff concedes that "[i]t is part of a principal's . . . regular job duties to request sports teams of the PSAL" (Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 5), and – as discussed above – Plaintiff's January 10, 2017 email was thus part of her "regular job duties."

The other cases Plaintiff cites likewise do not demonstrate that Plaintiff spoke as a citizen rather than as PSC's principal. (See Pltf. Opp. Br. (Dkt. No. 80) at 21-23)[10]

---

[10] In Dillon v. Suffolk Cty. Dep't of Health Servs., 917 F. Supp. 2d 196 (E.D.N.Y. 2013), the court concluded that the plaintiff physician – in voicing concerns that Suffolk County's Health Department was deliberately indifferent to the medical needs of prisoners, to abuse of prisoners, and to alteration of medical records at a correctional facility – was not speaking pursuant to her job duties. In so ruling, the court emphasized that "unlike the complaint in Weintraub [, 593 F.3d at 203,] which referred to incidents in the teacher's own classroom, the Plaintiff's complaints referred to systemic mistreatment and corruption extending outside of her own personal duties and affecting inmates with whom she had no personal or job connection. The Court finds that this speech was . . . that of a concerned citizen seeking to bring certain wrongdoing to light." Dillon, 917 F. Supp. 2d at 210. Here, as in Weintraub – but unlike in Dillon – Plaintiff's January 10, 2017 email "refer[s] to [the sports programs] in [Plaintiff's] own [school]," and not to "systemic" failings "extending outside of [Plaintiff's] own personal duties and affecting [students] with whom she had no . . . job connection." See id.

Similarly, in Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158 (E.D.N.Y. 2014), the court concluded that the director of technology and chief information officer for a school district did not act pursuant to his job duties when he wrote letters accusing defendants of improperly inflating student grades to procure funding from local governments. The court emphasized that plaintiff's job was only to "maintain and upgrade the Board of Education's technological capabilities," and accordingly his job responsibilities were far removed from the conduct about which he complained. Ramirez, 33 F. Supp. 3d at 172-73. Here, as Plaintiff concedes, Plaintiff's email falls within the duties of a school principal.

Likewise in Griffin v. City of New York, 880 F. Supp. 2d 384 (E.D.N.Y. 2012), where a former New York City Police Department detective alleged retaliation after he reported a colleague's misconduct, the court concluded the plaintiff spoke as citizen, because plaintiff's job duties did not involve reporting such misconduct. Griffin, 880 F. Supp. 2d at 394-99.

Finally, in Smith v. County of Suffolk, 776 F.3d 114 (2d Cir. 2015), the Second Circuit did not analyze whether plaintiff spoke as a citizen. Smith, 776 F.3d at 125 ("[B]ecause defendants do not [raise the issue] on appeal, we do not revisit the district court's conclusions that Smith's media communications enjoyed First Amendment protection as citizen speech. . . .").

The Court concludes that Plaintiff's January 10, 2017 email to her DOE colleagues falls squarely within the scope of her duties as PSC principal.

Plaintiff argues, however, that her email falls within what she refers to as "the Givhan carve[-]out" to First Amendment retaliation doctrine. (Pltf. Opp. Br. (Dkt. No. 80) at 14-19) According to Plaintiff, since the Supreme Court's decision in Garcetti v. Ceballos, 547 U.S. 410 (2006), courts have "reinforced what might be called the Givhan 'carve[-]out in Garcetti protecting employees who were retaliated against after raising issues of public concern . . . and in particular issues of race discrimination, which is quintessentially a matter of public concern." (Pltf. Opp. Br. (Dkt. No. 80) at 15)

Garcetti never mentions race discrimination, however. And while the Supreme Court's 1979 decision in Givhan v. Western Line Consol. School Dist., 439 U.S. 410 (1979) – in which the Supreme Court ruled in favor of a schoolteacher fired for criticizing school practices allegedly impeding integration efforts – concerns speech about race discrimination, Garcetti cites Givhan only for the proposition that "[e]mployees in some cases may receive First Amendment protection for expressions made at work," provided those expressions are not made pursuant to the employees' job duties. Garcetti, 547 U.S. at 421. To the extent that Plaintiff contends that Garcetti's cite to Givhan indicates "that when a public employee raises concerns of racial discrimination, the employee [invariably] does so as a citizen" (Pltf. Opp. Br. (Dkt. No. 80) at 18), nothing in Garcetti or its progeny supports that claim. Indeed, the two cases Plaintiff cites for this proposition – Lane v. Franks, 573 U.S. 228 (2014), and Jackler v. Byrne, 658 F.3d 225 (2d Cir. 2011) – do not involve complaints about race discrimination, and do not suggest that any "carve-out" or exception applies when a public employee's speech involves allegations of race discrimination.

The Court concludes that the Amended Complaint does not state a claim for First Amendment retaliation, because Plaintiff's email was sent pursuant to her duties as the principal of PSC, rather than as a citizen. Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim will be granted.[11]

## B.    TITLE VI CLAIM

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." Verdi, 306 F. Supp. 3d at 542 (internal quotation marks and citation omitted). "Title VI does not contain an explicit anti-retaliation provision, but courts have

---

[11]  In her opposition brief, Plaintiff contends – for the first time – that the Amended Complaint "alleges that retaliatory actions which occurred after she filed th[is] case violated her First Amendment Right to Petition," and that the Amended Complaint states a claim pursuant to the Petition Clause of the Constitution, which extends First Amendment protection not only to "freedom of speech," but to "the right of the people . . . to petition the Government for a redress of grievances." (Pltf. Opp. Br. (Dkt. No. 80) at 11-13; U.S. Const. amend. I)

The Amended Complaint does not state a Petition Clause claim, however. Indeed, the word "petition" does not appear in the Amended Complaint. In any event, the Supreme Court has stated that while "[c]ourts should not presume there is always an essential equivalence between [the Petition Clause] and [the Speech Clause] or that Speech Clause precedents necessarily and in every case resolve Petition Clause claims[,] . . . claims of retaliation by public employees do not call for this divergence. . . . The considerations that shape the application of the Speech Clause to public employees apply with equal force to claims by those employees under the Petition Clause." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 388, 389 (2011). District courts in this Circuit have construed Guarnieri as indicating that a Petition Clause claim – like a First Amendment retaliation claim – will fail where a public employee's "petition" was pursuant to her job duties. See Ross v. New York City Dep't of Educ., 935 F. Supp. 2d 508, 526 (E.D.N.Y. 2013) ("[A] public employee asserting a claim under the Petition Clause must prove that his petitioning activity was made as a citizen and not pursuant to his official duties."); Lenox v. Town of N. Branford, No. 3:08CV01448 DJS, 2012 WL 6102470, at *10 (D. Conn. Dec. 7, 2012) ("This Court will analyze the Plaintiff's alleged protected petition under the same test it would use to analyze allegedly protected speech."), order vacated in part on reconsideration on other grounds, No. 3:08CV01448 DJS, 2013 WL 2155523 (D. Conn. May 16, 2013).

In sum, even if the Amended Complaint asserted a claim pursuant to the Petition Clause, that claim would fail along with Plaintiff's First Amendment retaliation claim.

generally construed the statute as creating an implied private right of action for retaliation."
Palmer v. Penfield Cent. Sch. Dist., 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013) (collecting cases).

To plead a claim for retaliation under Title VI, a plaintiff must "plausibly allege: '(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'" Diaz v. City Univ. of New York, No. 15 Civ. 1319 (PAC) (MHD), 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016).

In support of their motion to dismiss Plaintiff's Title VI claim, Defendants argue that the Amended Complaint does not plead sufficient facts about the federal funding DOE receives. (Def. Br. (Dkt. No. 78) at 22-23) According to Defendants, Plaintiff is required to plausibly allege "that the defendant received federal funding, identify the primary objective of the federal funding, and [demonstrate] that the alleged discrimination or retaliation was related to the primary objective of the program or subject benefiting from federal funding," and has not done so. (Id.)

Plaintiff responds that "[t]he cases cited by defendants relate to cases of employment discrimination," and that while these cases "add a requirement that a plaintiff must plead that federal funds are used for employment," Plaintiff "has not claimed employment discrimination." (Pltf. Opp. Br. (Dkt. No. 80) at 10) Plaintiff further asserts that "[i]t is uncontested that the DOE receives federal money for student programs from the Federal Department of Education." (Id.)

Title VI provides that "[n]othing contained in [it] shall be construed to authorize action under [Title VI] . . . with respect to any employment practice of any employer . . . except

23

where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. "[T]his section essentially 'requires a logical nexus between the use of federal funds and the practice toward which [the] action is directed.'" Johnson v. Cty. of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (quoting Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981)). In the Title VI employment discrimination context, courts have construed Section 2000d-3 as imposing "a threshold requirement . . . that the employer be the recipient of federal funds aimed primarily at providing employment." Ass'n Against Discrimination in Employment, Inc., 647 F.2d at 276; see also Sulehria v. New York, No. 13-CV-6990 AJN, 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014) ("To state a claim under Title VI, a plaintiff must plausibly allege . . . that the defendant was an entity receiving federal funding . . . [and] that the federal funds have been made available primarily for providing employment.").

Few cases have addressed this pleading requirement where plaintiff alleges that her employer retaliated against her after she raised concerns about race discrimination affecting others, including non-employees. "It is unsettled . . . whether retaliation claims affecting employment – in which an individual who voices concerns about discrimination against others is retaliated against with respect to his or her employment – should be treated the same as straight retaliation for employment discrimination claims. . . ." Verdi, 306 F. Supp. 3d at 544-45 (emphasis in original).

Verdi v. City of New York presents the most thorough analysis of this question to date. In Verdi, plaintiff – an assistant principal employed by DOE – alleged that he was retaliated against for opposing discriminatory admissions practices at his school. The court concluded that the "'primary objective of providing employment' requirement does not apply

24

when analyzing an employment-based retaliation claim where the victims of the discrimination about which the claimant complained (and for which complaining the claimant suffered retaliation) are the intended beneficiaries of the federal funding." Id. at 545-46. The court reasoned that "[r]ecognizing a retaliation claim based on harms to a claimant's employment where the complained-of discrimination was against the intended beneficiaries of the relevant federal funding would vindicate rather than undermine the intent and spirit of § 2000d-3." Id. at 545.

The reasoning in Verdi is persuasive, but that reasoning does not obviate the need for Plaintiff to plead a "logical nexus between the use of federal funds and the practice to which [the] action is directed." Johnson, 411 F. Supp. 2d at 175 (internal quotation marks and citation omitted). Accordingly, Plaintiff must plead a nexus between the use of federal funds and the alleged discriminatory practice about which Plaintiff allegedly complained, and for which complaints she allegedly suffered retaliation: discrimination in the PSAL's sports programs.

The Amended Complaint alleges only that "[a]t all times relevant the DOE was and is a recipient of federal funding for purposes of Title VI," and that "[t]he New York City DOE receives Federal Financial Assistance." (Am. Cmplt. (Dkt. No. 37) ¶¶ 23, 125) These allegations do not sufficiently plead the requisite "logical nexus." See Verdi, 306 F. Supp. 3d at 546 (dismissing Verdi's Title VI claim because his "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints").

Accordingly, Defendants' motion to dismiss Plaintiff's Title VI claim will be granted.

### C.    **DUE PROCESS CLAIM**

     The Amended Complaint asserts that Regulation D-130 applies "exclusively to partisan electoral politics" (Am. Cmplt. (Dkt. No. 39) ¶ 115), and does not reach the conduct upon which the OSI investigation purportedly was predicated. (Id. ¶¶ 112-14) Plaintiff further contends that "[t]he DOE's application of [Regulation] D-130 does not give notice to a reasonable person in [P]laintiff's shoes that the conduct [P]laintiff is under investigation for is a violation of [the regulation]," and "[t]o the extent defendants assert D-130 is the basis for th[e] investigation [of Plaintiff]," Regulation D-130 "is void for vagueness and violates Plaintiff's right to due process." (Id. 119-20)

     Defendants have moved to dismiss Plaintiff's Due Process claim, noting that the standards regarding vagueness challenges are "considerably . . . relaxed" where the regulation in question is civil, and where the government is acting as an employer. (Def. Br. (Dkt. No. 78) at 17) Defendants also assert that if this Court finds Regulation D-130 ambiguous, "the court must defer to the agency's interpretation of its own regulation, unless that interpretation is plainly erroneous." (Id.)

     "The vagueness doctrine voids on due process grounds a rule that contains 'prohibitions [that] are not clearly defined.'" Kramer v. New York City Bd. of Educ., 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010). "A punitive enactment is unconstitutionally vague when it (1) does not allow a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) lacks explicit standards, thus permitting arbitrary or discriminatory enforcement." Id. As to the second prong, "[a] statute or rule is inadequate . . . when it 'fails to provide sufficiently explicit standards for those who apply it,' and 'impermissibly delegates basic policy matters . . . for resolution on an ad hoc and subjective basis.'" Id.

"In meeting these requirements, . . . 'the degree of linguistic precision . . . varies with the nature – and in particular, with the consequences of enforcement – of the statutory provision [or regulation].'" NYC C.L.A.S.H., Inc. v. City of New York, 315 F. Supp. 2d 461, 484 (S.D.N.Y. 2004) (quoting General Media Communications, Inc. v. Cohen, 131 F.3d 273, 286 (2d Cir. 1997)). Accordingly, "'[t]he standards of certainty in statutes punishing for offenses is higher than in those depending primarily upon civil sanction for enforcement.'" Gen. Media Commc'ns, Inc., 131 F.3d at 286 (quoting Winters v. New York, 333 U.S. 507, 515 (1948).

"At the same time, statutes that implicate constitutionally protected rights, including the freedoms protected by the First Amendment, are subject to 'more stringent' vagueness analysis. Id. (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982)); see also Marchi v. Bd. of Coop. Educ. Servs. of Albany, 173 F.3d 469, 480 (2d Cir. 1999) ("'[W]here a statute's literal scope . . . is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts.'" (quoting Smith v. Goguen, 415 U.S. 566, 573 (1974)). "Aware that precise delineation of sanctionable conduct is close to impossible, [however,] courts have granted schools, acting in their capacity as employers, significant leeway." Marchi, 173 F.3d at 480.

Here, the Court concludes that Regulation D-130 unambiguously encompasses the reported conduct that instigated OSI's investigation. The regulation prohibits the "use of any [DOE] school during school/business hours by any person, group, organization, committee, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates or political organization/committee." (Regulation D-130 (Dkt. No. 79-3) § I(B)(1)) It also prohibits personnel from being "involved in any activities, including fundraising, on behalf of

any candidate, candidates, slate of candidates or political organization/committee during working hours." (Id. § I(C)(2)) The regulation further prohibits "[t]he use of any Department of Education school after school/business hours by any person, group, organization, committee, etc., on behalf of, or for the benefit of any elected official, candidate, candidates, slate of candidates or political organization/committee." (Id. § II(A))

Here, OSI received information alleging that Plaintiff was a "member[] of a communist organization known as the Progressive Labor Party," and was "actively recruiting students into the organization during school hours," and was "invit[ing] students to participate in the organization's activities." (Bloomberg Aff., Ex. 8 (Dkt. No. 10-8); Am. Cmplt. (Dkt. No. 39) ¶ 72) "[A] communist organization known as the Progressive Labor Party" is a "political organization" for purposes of the Regulation.

Plaintiff attempts to distinguish between "ideological organizations which do[] not run candidates and are not engaged in electoral politics," and organizations that are engaged in "electoral partisan politics," and insists that the term "political organization/committee" used throughout Regulation D-130 encompasses only the latter kind of organization. (Am. Cmplt. (Dkt. No. 39) ¶¶ 4, 118, 135) While Regulation D-130 contains references to campaigns and elections, it does not qualify or limit the scope of "political organization/committee" – a term that, on its face, encompasses the "Progressive Labor Party" – in the manner Plaintiff proposes. Moreover, Plaintiff's distinction between "ideological organizations which . . . do[] not run candidates" and "those engaged in electoral politics" is unclear and impractical. For example, the name "Progressive Labor Party" suggests that the organization is engaged in "partisan politics." And if Regulation D-130's application were to turn on whether a particular "party" is then engaged in "electioneering" (see Am. Cmplt. (Dkt. No. 39) ¶¶ 1, 143), the same

organization might fall within the ambit of the term "political organization/committee" at some times, but not at others – an absurd result.

Nor is Regulation D-130 void for vagueness. As an initial matter, the Regulation provides adequate notice of the conduct it prohibits. Indeed, the Regulation sets forth a detailed list of prohibited and permissible conduct. To the extent Plaintiff contends that the term "political organization" is impermissibly vague, the Court concludes that – although the term "political organization" is not defined in Regulation D-130 – a reasonable person would surely understand that "a communist organization known as the Progressive Labor Party" is a "political organization."

Finally, Regulation D-130 does not "lack[] explicit standards, thus permitting arbitrary or discriminatory enforcement." Kramer, 715 F. Supp. 2d at 356. As noted, the regulation sets out a detailed, specific list of prohibited and permissible conduct. Although the Amended Complaint suggests that the Regulation is enforced in an arbitrary and discriminatory manner, Plaintiff has not pled facts demonstrating that OSI ignored conduct comparable to that in which she allegedly engaged.

Accordingly, Defendants' motion to dismiss Plaintiff's Due Process claim will be granted.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 77) is granted in its entirety, and Plaintiff's cross-motion for judgment on the pleadings (Dkt. No. 81) is deemed withdrawn. The Clerk of Court is directed to terminate the motions.

Any motion for leave to file a Second Amended Complaint is to be served and filed by October 23, 2019. The proposed Second Amended Complaint is to be attached as an exhibit to the motion.

Defendants will submit their Answer to the surviving claim in the Amended Complaint by September 30, 2019.

A conference pursuant to Fed. R. Civ. P. 16 will be held on October 21, 2019 at 12:30 p.m. in Courtroom 705 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

Dated: New York, New York
      September 24, 2019

SO ORDERED.

Paul G. Gardephe
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

                              Plaintiff,

              - against -

THE NEW YORK CITY DEPARTMENT
OF EDUCATION and CARMEN FARINA,

                              Defendants.

**ORDER**

17 Civ. 3136 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Jill Bloomberg – a high school principal – brings this action against the
New York City Department of Education (the "DOE") and its chancellor (collectively,
"Defendants"). The Amended Complaint claims that a DOE investigation of Plaintiff's conduct
– purportedly premised on her violation of a DOE regulation governing DOE personnel's
activity on behalf of political organizations – was retaliatory and in violation of her First
Amendment rights. (Am. Cmplt. (Dkt. No. 39) ¶¶ 1, 4-6) The Amended Complaint further
pleads that the DOE regulation on which the investigation was based does not apply to her
alleged conduct and, in any event, is unconstitutionally vague. (Id. ¶¶ 88-89, 118-120)

        The Amended Complaint pleads claims for a violation of Due Process, and for
retaliation in violation of the First Amendment, Title VI of the Civil Rights Act of 1964, 42
U.S.C. §§ 2000d-1 et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C.
Admin. Code § 8-101 et seq. (Id. ¶¶ 4-5; id. at 111-56)[1]

---

[1] Citations to page numbers refer to the pagination generated by this District's Electronic Case
Files ("ECF") system.

Defendants moved to dismiss the Amended Complaint's First Amendment, Title VI, and Due Process claims. (Mot. (Dkt. No. 77) On September 24, 2019, this Court granted Defendants' motion (the "September 24, 2019 Opinion"). (Dkt. No. 89)

On November 6, 2019, Plaintiff moved for leave to file a Second Amended Complaint ("SAC"). (Dkt. No. 93) For the reasons stated below, Plaintiff's motion will be denied.

## BACKGROUND

I. **FACTS**

 A.  **May 12, 2016 Anonymous Complaint Concerning Plaintiff's Political Activities at Park Slope Collegiate**

Plaintiff is the principal of Park Slope Collegiate ("PSC"), a secondary school in Park Slope, Brooklyn. (SAC (Dkt. No. 94-1) ¶¶ 1, 3, 20, 30)

On May 12, 2016, the Special Commissioner of Investigation for the New York City School District ("SCI") received a complaint concerning Plaintiff. (Id. ¶¶ 71, 74-76; see also id. ¶¶ 84-86 (referencing a declaration provided to the Court by Charity Guerra); see also Guerra Decl. (Dkt. No. 13) ¶ 11 (explaining that "[o]n May 12, 2016," a complainant contacted SCI to report information about Plaintiff)) The anonymous complaint alleged that Plaintiff was a member "of a communist organization known as the Progressive Labor Party" and had "actively recruit[ed] students into the organization during school hours, and that [she had] invited students to participate in marches for Communism," in violation of Chancellor's Regulation D-130. (Id. ¶ 74; see also Guerra Decl. (Dkt. No. 13) ¶ 11)

On May 13, 2016, SCI referred the anonymous complaint about Plaintiff to the Office of Special Investigations ("OSI"), an internal DOE investigatory unit overseen by DOE's Office of General Counsel. (Id. ¶¶ 62, 64, 71, 74-75; see also Guerra Decl. (Dkt. No. 13) ¶¶ 5,

12) OSI "has the primary function of investigating alleged violations of the Chancellor's Regulations." (Id. ¶ 64) OSI concluded that there was insufficient information to pursue the complaint, and – given that the identity of the complainant was unknown to OSI – on May 17, 2016, OSI "marked the complaint as closed pending additional information." (Id. ¶ 75; see also Guerra Decl. (Dkt. No. 13) ¶ 13)

On December 20, 2016, the anonymous complainant provided additional information to SCI. (Id. ¶¶ 76, 79, 84; see also Guerra Decl. (Dkt. No. 13) ¶ 14) The complainant reported, inter alia, that Plaintiff's husband was the president of the Len Ragozin Foundation (the "Foundation"), an organization associated with the Progressive Labor Party; that Plaintiff's husband included images of students and staff in a documentary he filmed for the Foundation, without the students' and staff's authorization; and that this documentary had been screened at PSC, with a $20 admission fee.[2] (Id. ¶ 84) The anonymous complainant further reported that "[a] bake sale was held to raise funds for a May Day march," and that "[s]tudents who voice opinions different from those of plaintiff are not allowed to express them." (Id.)

---

[2] On May 4, 2016, about a week before SCI received the May 12, 2016 anonymous complaint, the Foundation applied for an "extended use" permit for a June 3, 2016, 6:00 p.m. "film screening and panel discussion" at the PSC auditorium. The application requested permission to sell goods and solicit donations. The application does not provide a description of the Foundation.

The application form provides that "[s]chool buildings cannot be used for . . . [p]olitical events, activities or meetings[,] including those conducted on behalf of an elected official, candidate, slate of candidates or political organizations. . . ." (Extended Use Permit App. (Dkt. No. 21-4))

The application was approved. (Permit Confirmation (Dkt. No. 21-3))

3

B.    **Plaintiff's January 10, 2017 Complaint Regarding**
      **the Sports Programs at the John Jay Campus**

PSC is located at the "John Jay Campus," which houses PSC and three other

schools:  the Secondary School for Journalism ("Journalism"); The John Jay School for Law

("Law"); and Millennium Brooklyn High School ("Millennium").  (Id. ¶ 3; Bloomberg Aff., Ex.

3 (Dkt. No. 10-3) at 2)  The John Jay Campus operates two sports programs:  one is for students

at PSC, Journalism, Law, and a neighboring school – Brooklyn High School of the Arts – and the

second is for students at Millennium and Millennium High School in Manhattan ("Millennium-

Manhattan").  (Id. ¶ 58; Bloomberg Aff., Ex. 3 (Dkt. No. 10-3) at 2)

PSC's student body is 85 percent Black or Latino.  (SAC (Dkt. No. 94-1) ¶ 58)

Millennium's student body is 51.5 percent Black or Latino.  (Id.)  Millennium-Manhattan, for

which Millennium is an off-short, and with which Millennium participates in sports program, is

25.2 percent Black or Latino.  (Id.; see id. ¶ 35)  The "Millennium sports program," however, has

a "high percentage of White students."  (Id. ¶ 58)

In a January 10, 2017 email, Plaintiff complained to Eric Goldstein – chief

executive officer of the DOE sports programs – and Michael Prayor – the District Superintendent

– about the sports programs at the John Jay Campus.  (Id. ¶¶ 27, 58; Bloomberg Aff., Ex. 3 (Dkt.

No. 10-3) at 2)  Plaintiff asserted that the two sports programs offered "vastly unequal

opportunities" to students (Bloomberg Aff., Ex. 3 (Dkt. No. 10-3) at 2); see also SAC (Dkt. No.

94-1) ¶ 58 ("[T]he John Jay Campus was operating two separate and unequal sports programs")),

and that the sports programs were segregated on the basis of race.[3]  (SAC (Dkt. No. 94-1) ¶ 58;

---

[3]  Plaintiff speculates that her January 10, 2017 email complaining about the alleged racially
segregated sports programs would have been "immediately referred to [DOE's] Office of Civil
Rights" (id. ¶ 62), and that "Robin Greenfield, the Executive Deputy Counsel for Employment
and General Practice, within the Office of the General Counsel" – whose office "oversees the

4

see also id. ¶ 59 ("Plaintiff's primary protest was the segregation of the programs based on race."))

### C.     OSI Re-Opens Its Investigation of Plaintiff

SCI referred the anonymous complainant's new information to OSI on January 25, 2017, about two weeks after Plaintiff had sent her January 10, 2017 email about sports programs at the John Jay Campus.  (Id. ¶ 79)

Equipped with this new information, OSI re-opened its investigation of the complaint concerning Plaintiff, and assigned the investigation to Confidential Investigator Michelle Archie.  (Id. ¶¶ 65-69, 81)

### D.     Further Developments Regarding the Sports Program at PSC

Plaintiff claims that she "received no meaningful response to her January 10, 2017" email (id. ¶ 60), and that accordingly, "on February 13, 2017, the PSC PTA organized a leafleting action," distributing flyers on the "sidewalk outside of the John Jay Campus to inform the community about the race discrimination and segregation that [P]laintiff had complained about on January 10, 2017 (the 'Title VI Complaint')."  (Id. ¶ 61)

On March 3, 2017, Donald Douglas – the executive director of the Public School Athletic League – who had been copied on the January 10, 2017 email – granted "John Jay an additional five teams."  (Bloomberg Supp. Aff. (Dkt. No. 21) ¶¶ 7,10; Bloomberg Aff., Ex. 3 (Dkt. No. 10-3) at 2)  Douglas "refused to combine the programs between the PSC and other John Jay programs with the programs at Millennium," however.  (Bloomberg Supp. Aff. (Dkt.

---

Office of Special Investigations ('OSI')" – would have received information about Plaintiff's January 10, 2017 email by at least January 15, 2017.  (Id. ¶¶ 62-63, 79)

No. 21) ¶ 10)  After John Jay was granted five additional teams, Douglas asked Plaintiff "if that

made [her] happy."  (Id.)

### E.    The OSI Investigation Becomes Overt

On March 2, 2017, Michelle Archie – "an investigator with the OSI [–] a visited

[PSC] and informed [Plaintiff] that she was under investigation.  Plaintiff was told, however, that

the allegations against her and the subject of the investigation could not be disclosed to her."

(SAC (Dkt. No. 94-1) ¶¶ 26, 65)

Investigator Archie spoke with PSC's Assistant Principal Carla Laban:

66.    Archie informed Laban that the investigation of [P]laintiff related to "communist
activities taking place at the school."  Archie then showed Laban a list of names,
and asked Laban to identify who from the list she had ever seen "engaging in
communist activities."  Laban informed Archie that she did not know what was
meant by "engaging in communist activities" and therefore was unable to answer
the question.

67.    . . . Archie's list of names contained the name of [P]laintiff and four current PSC
teachers.  It also contained names of people who had no present connection to the
school including six former PSC teachers, [P]laintiff's family members, a few
employees from an after-school sports and arts program, and a few former
students who had graduated long ago.

68.    . . . At that time[,] [P]laintiff believed, and still believes, that the OSI investigation
against her was retaliation for her complaint about the segregated sports
programs.

69.    . . . On March 16, 2017, at an after school PTA meeting with several members of
staff present, Laban announced that the OSI was investigating [P]laintiff, and that
the OSI investigator had asked her whether she had ever seen [P]laintiff and/or
others engaging in communist activities at the school.

. . . .

96.    . . . [O]n May 16, 2017, two investigators from OSI and the District
Superintendent Michael Prayor came to PSC, and pulled several students from
their classes.  The students that were targeted by the OSI were the most outspoken
students, the children of outspoken PTA members, and children of DOE
employees.

6

97.     . . . Plaintiff was asked to accommodate the OSI in their interrogation of students, and she cooperated fully.

(Id. ¶¶ 66-69, 96-97)

### F.     Plaintiff's Complaints that the OSI Investigation is Retaliatory

On March 22, 2017, Plaintiff's counsel "sent a letter to defendant[s] requesting [that] they cease and desist from . . . [their] retaliatory investigation," which was causing a "'chilling effect.'"  (Id. ¶ 70)

In a March 27, 2017 letter, DOE Deputy Counsel Greenfield "claimed that the OSI investigation was based on a complaint that had been lodged in May, 2016."  (Id. ¶ 71)

In a March 28, 2017 letter, Plaintiff repeated her claim that the OSI investigation was retaliatory and had been launched in response to Plaintiff's January 10, 2017 email and the February 13, 2017 leafleting action.  Plaintiff's counsel also asked that "the DOE . . . identify the specific regulation [and practices] that [P]laintiff had allegedly violated[.]" (Id. ¶¶ 26, 72-73)

In an April 6, 2017 letter, Greenfield responded that Plaintiff "and two teachers . . . stood accused of being members of a communist organization known as the Progressive Labor Party and that they had been accused of actively recruiting students into the organization during school hours, and that they invited students to participate in marches for Communism," all in "violation of Chancellor's Regulation D-130."[4]  (Id. ¶ 74; see also id. Guerra Decl. (Dkt.

---

[4]  As discussed in the September 24, 2019 Opinion, Regulation D-130 "'governs the use of school buildings by candidates, elected officials, and political organizations and the conduct of school employees and officers with respect to political campaigns and elections.'"  (Dkt. No. 89 at 10 (quoting Regulation D-130 (Abstract) (Dkt. No. 79-3)))  Regulation D-130 provides generally that school facilities, equipment, and supplies "'may not be used on behalf of any candidate, candidates, slate of candidates, or political organizations/committee.'"  (Id. (quoting Id. at § I(B)); see also id. ("School buildings are not public forums for purposes of community or political expression." (quoting Regulation D-130 (Introduction) (Dkt. No. 79-3) (footnote omitted))))

No. 13) ¶¶ 11-13)  Greenfield also disclosed "that more but unspecified evidence was presented

to the DOE through the [SCI] in December[] 2016." (Id. ¶ 76)  Greenfield also warned Plaintiff

not to interfere with the investigation, noting that such conduct "was grounds for removal and

dismissal." (Id. ¶ 77)

### G.    August 25, 2017 OSI Investigative Report

On August 25, 2017, OSI issued a report concerning the results of its

investigation of Plaintiff.  (Id. ¶ 75)  Plaintiff contends that the OSI Investigative Report (the

"OSI Report") supports her claim that the investigation of her was commenced in retaliation for

her January 10, 2017 email and the February 13, 2017 leafletting at the school.  (Id. ¶¶ 3, 26-27,

58, 61, 65, 68, 72, 75-76, 91)

The proposed SAC includes the following allegations regarding the findings of

the OSI Report:

75.    . . . [A]ccording to the OSI's August 25, 2017 Investigative Report . . . at the time
Greenfield made the April 6, 2017 representations regarding the nature of the
allegations against plaintiff, OSI investigators had already twice interviewed the
confidential complainant who filed the original May 2016 complaint referred to in
Greenfield's April 6, 2017 letter, and as of March 13, 2017, the OSI had already
determined that the confidential complainant had no evidence to support the May
2016 accusation.

. . . .

85.    . . . [T]hat the DOE's stated rationale for commencing the D-130 investigation
against [P]laintiff is a pretext for retaliation is demonstrated by the contradictory
rationales provided by Ms. Guerra and the OSI.  According to the August 25,
2017 OSI Report, the OSI's stated rationale for investigating whether [P]laintiff
had violated D-130 is because the OSI received documentation on January 25,
2017 indicating that a May Day bakesale had taken place at PSC.  The OSI Report
omits any reference whatsoever to the Len Ragozin Foundation's alleged
connection with the PLP as a basis for commencing the D-130 Investigation.

86.    Moreover, also in contradiction to the information provided to the Court in Ms.
Guerra's declaration, the OSI Report explicitly contradicted the claim that
students with different opinions than [P]laintiff's were not allowed to express

8

them since as of March 13, 2017 the OSI's interviews with the confidential complainant showed she had no evidence to support her claims.

. . . .

90.     . . . . The DOE could have easily discovered all of the allegations regarding the Len Ragozin Foundation and the screening of the movie "Profiled" without opening an OSI investigation into [P]laintiff's activities and disrupting the entire school. The OSI Report's complete omission of these facts is also proof that the DOE knew they were false.

. . . .

101.    On August 25, 2017, the OSI issued the OSI Report, (Attached as Exhibit 1), which acknowledged that as of March 13, 2017, (a good six weeks before the DOE through its general counsel refused to put off the investigation thus precipitating the filing of the injunctive relief) the **OSI was aware that the confidential complainant had no evidence to support the assertion that [P]laintiff was a member of the PLP and was actively recruiting students to join the organization. Instead, the OSI Report stated that the investigation into whether [P]laintiff had violated D-130 was commenced based on an allegation that a May Day bakesale had taken place at PSC.**

102.    The OSI Report detailed how the investigation focused on the political activities of [P]laintiff, PSC employees, students, and family members, with a particular focus on whether anyone had attended May Day and/or Black Lives Matters rallies.

103.    The OSI Report ultimately determined that the OSI did not substantiate the initial allegation that [P]laintiff had violated D-130. Implicit in this finding was a chilling message to [P]laintiff that had the OSI determined that a May Day bakesale had taken place, it would have determined that [P]laintiff had violated D-130. This message was chilling because [P]laintiff has no way of knowing what other types of activities the DOE considers to be proscribed by D-130.

104.    Moreover, although the OSI investigation focused almost exclusively on the activist and civic activities of [P]laintiff, other PSC employees, students and their familes [sic], the OSI nonetheless substantiated that plaintiff was guilty of conduct that essentially amounted to three alleged clerical mistakes – not conduct that would merit the commencement of an OSI investigation or discipline.

105.    The OSI Report further noted that based on the OSI's findings, an investigation by the [Conflict of Interest Board] against [P]laintiff had been commenced.

106.    On October 3, 2017, as a result of the OSI Report, [P]laintiff was disciplined with a written reprimand.

(Id. ¶¶ 75, 85-86, 90, 101-06 (emphasis in original))[5]

## II.    <u>PROCEDURAL HISTORY</u>

The Complaint was filed on April 28, 2017, and asserts claims for retaliation under the First Amendment, Title VI, and the NYCHRL.  (Cmplt. (Dkt. No. 1))  On April 29, 2017, Plaintiff moved for a temporary restraining order and preliminary injunction enjoining the DOE's investigation of her pending the outcome of this case.  (Mot. (Dkt. No. 3))

On May 1 and May 3, 2017, this Court conducted a hearing on Plaintiff's application for injunctive relief.  (See May 1, 2017 Hearing Tr. (Dkt. No. 33); May 3, 2017 Hearing Tr. (Dkt. No. 36))  On May 3, 2017, the Court denied the application, finding that Plaintiff had not shown a likelihood of success or irreparable injury with respect to her retaliation claims under the First Amendment, Title VI, and the NYCHRL.  (See May 3, 2017 Hearing Tr. (Dkt. No. 36) at 37; see also Order (Dkt. No. 31))

On May 23, 2017, Plaintiff filed the Amended Complaint.  (Am. Cmplt. (Dkt. No. 39))  The Amended Complaint includes the causes of action originally pled, but also asserts that OSI's investigation violates Plaintiff's Due Process rights, because Regulation D-130 does not address Plaintiff's alleged conduct, and because the Regulation is unconstitutionally vague.  (Id.)

---

[5]  Certain paragraph numbers are mistakenly repeated in the SAC.  The material quoted from paragraph 90 above is from the first paragraph 90.  (See Proposed SAC (Dkt. No. 94-1) at 22)

On September 6, 2018, Defendants moved to dismiss Plaintiff's First Amendment and Title VI retaliation claims, and her Due Process claim. (Def. Mot. (Dkt. No. 77)) On September 24, 2019, this Court granted Defendants' motion. (Dkt. No. 89)

### A.     The September 24, 2019 Opinion

#### 1.     First Amendment Retaliation Claim

This Court found that Plaintiff failed to state a claim for First Amendment retaliation because the January 10, 2017 "email was sent pursuant to her duties as the principal of PSC, rather than as a citizen." (Id. at 22)

This Court recognized that "[a]nalyzing whether speech is protected by the First Amendment 'encompasses two separate sub-questions: (1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee.'" (Id. at 15 (quoting Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015) (citation and internal quotation marks omitted))) If the answer to either of those two sub-questions is no, the First Amendment retaliation claim fails. (Id. (citing Matthews, 779 F.3d at 172))

"A plaintiff speaks pursuant to her official job duties when the speech at issue 'owe[s] its existence' to those job duties" (id. at 16 (quoting Garcetti v. Ceballos, 547 U.S. 410, 421-22, 423 (2006))), "or when the speech is 'part-and-parcel of [the employee's] concerns about [her] ability to properly execute [her] duties.'" (Id. (quoting Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y., 593 F.3d 196, 203 (2d Cir. 2010) (citation and internal quotation marks omitted)))

Noting that Plaintiff had asserted that "'[i]t is part of a principal's . . . regular job duties to request sports teams of the [Public School Athletic League]'" (id. at (quoting

Bloomberg Supp. Aff. (Dkt. No. 21) ¶ 5)), this Court concluded that Plaintiff's January 10, 2017 email was sent in furtherance of her regular job duties and not as a citizen. (Id. at 17-18, 21) Accordingly, Plaintiff's First Amendment retaliation claim was dismissed. (Id. at 21-22)

### 2. Title VI Retaliation Claim

"To plead a claim for retaliation under Title VI, a plaintiff must 'plausibly allege: (1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'" (Id. at 23 (quoting Diaz v. City Univ. of New York, No. 15 Civ 1319 (PAC) (MHD), 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016) (internal quotation marks omitted)))

Title VI provides, however, that "'[n]othing contained in [it] shall be construed to authorize action under [Title VI] . . . with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment.'" (Id. at 23-24 (quoting 42 U.S.C. § 2000d-3)) "'[T]his section essentially "requires a logical nexus between the use of federal funds and the practice toward which [the] action is directed."'" (Id. at 24 (quoting Johnson v. Cty. of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006) (quoting Ass'n Against Discrimination in Emp., Inc. v. City of Bridgeport, 647 F.2d 256, 276 (2d Cir. 1981)))) "In the Title VI employment discrimination context, courts have construed Section 2000d-3 as imposing 'a threshold requirement . . . that the employer be the recipient of federal funds aimed primarily at providing employment.'" (Id. (quoting Ass'n Against Discrimination in Emp., 647 F.2d at 276 and citing Sulehria v. New York, No. 13-CV-6990 AJN, 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014)); see also Sulehria, 2014 WL 4716084, at *5 ("To state a claim under Title VI, a plaintiff must plausibly allege . . . that the

defendant was an entity receiving federal funding . . . [and] that the federal funds have been made available primarily for providing employment.'")

In moving to dismiss Plaintiff's Title VI claim in the Amended Complaint, Defendants argued that Plaintiff had not identified the primary objective of the federal funding DOE receives and had not demonstrated that the alleged retaliation was related to the primary objective of the federal funding DOE had received. (Def. Br. (Dkt. No. 78) at 22-23))

This Court concluded that Plaintiff is required to "plead a nexus between the use of federal funds and the alleged discriminatory practice about which Plaintiff allegedly complained, and for which complaint she allegedly suffered retaliation: discrimination in the PSAL's sports programs." (Dkt. No. 89 at 25) Noting that the Amended Complaint merely pled that "'the DOE was and is a recipient of federal funding for purposes of Title VI,'" and that the "'New York City DOE receives Federal Financial Assistance,'" this Court ruled that Plaintiff had not pled sufficient facts to demonstrate the requisite nexus. (Id. (quoting Am. Cmplt. (Dkt. No. 37) ¶¶ 23, 125)) Accordingly, Plaintiff's Title VI retaliation claim was dismissed. (Id.)

### 3. Due Process Claim

In connection with Plaintiff's Due Process claim, "'[t]he Amended Complaint asserts that Regulation D-130 [(1)] applies 'exclusively to partisan electoral politics,' and does not reach the conduct upon which the OSI investigation purportedly was predicated"; and (2) "'is void for vagueness.'" (Id. at 26 (quoting and citing Am. Cmplt. (Dkt. No. 39) ¶¶ 112-115, 119-20))

As to Plaintiff's first argument, this Court found "that Regulation D-130 unambiguously encompasses the reported conduct that instigated the OSI's investigation," as the "OSI received information alleging that Plaintiff was a 'member[] of a communist organization

known as the Progressive Labor Party,' and was 'actively recruiting students into the

organization during schools hours, . . .  invit[ing] students to participate in the organization's

activities.'"  (Id. at 27-28 (quoting Bloomberg Aff., Ex. 8 (Dkt. No. 10-8); Am. Cmplt. (Dkt. No.

39) ¶72))

        This Court rejected Plaintiff's effort to distinguish between ideological

organizations and those that are engaged in electoral partisan politics, noting that Regulation D-

130 "does not qualify or limit the scope of 'political organization/committee' . . . in the manner

Plaintiff proposes. . . . Plaintiff's distinction between 'ideological organizations which . . . do[]

not run candidates' and 'those engaged in electoral politics' is unclear and impractical," as

Plaintiff's distinction would lead to "an absurd result."  (Id. at 28-29)  An organization's status as

a "political organization/committee" would change with the election cycle, depending on

whether it was then engaged in electioneering.  (Id.)

        As to Plaintiff's "void for vagueness" argument, this Court noted that "'[a]

punitive enactment is unconstitutionally vague when it (1) does not allow a person of ordinary

intelligence a reasonable opportunity to know what is prohibited, or (2) lacks explicit standards,

thus permitting arbitrary or discriminatory enforcement.'"  (Id. at 26 (quoting Kramer v. New

York City Bd. of Educ., 715 F. Supp. 2d 335, 356 (E.D.N.Y. 2010)))  As to the second prong,

"'[a] statute or rule is inadequate . . . when it fails to provide sufficiently explicit standards for

those who apply it, and impermissibly delegates basic policy matters . . . for resolution on an ad

hoc and subjective basis.'"  (Id. (quoting Kramer, 715 F. Supp. 2d at 356 (internal quotation

marks omitted)))

        This Court concluded that Regulation D-130 "provides adequate notice of the

conduct it prohibits . . . [,] set[ting] forth a detailed list of prohibited and permissible conduct."

(Id. at 29)  Although the term "political organization" is not defined in Regulation D-130, "a reasonable person would surely understand that 'a communist organization known as the Progressive Labor Party' is a 'political organization.'"  (Id.)  And although Plaintiff suggested that Regulation D-130 was "enforced in an arbitrary and discriminatory manner, Plaintiff [did] not ple[a]d facts demonstrating that OSI ignored conduct comparable to that in which she allegedly engaged."  (Id.)

       Accordingly, this Court granted Defendants' motion to dismiss Plaintiff's Due Process claim.

## B.  The Proposed Second Amended Complaint

       On November 6, 2019, Plaintiff moved for leave to file a second amended complaint.  (Mot. (Dkt. No. 93); see also Mirer Aff. (Dkt. No. 94); SAC (Dkt. No. 94-1))  The proposed SAC alleges (1) a Due Process claim; (2) Title VI retaliation; and (3) retaliation in violation of the NYCHRL.[6]  (See generally SAC (Dkt. No. 94-1))

## DISCUSSION

## I.  LEGAL STANDARDS

       A party may amend a pleading with the court's leave, and the court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995) ("The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'" (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)))).  "Under this liberal standard, a motion to amend should be denied only if

---

[6]  The proposed SAC does not contain a claim for First Amendment retaliation.  (SAC (Dkt. No. 94-1))

the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). "'Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993) (per curiam)).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Id. (citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . [N]aked assertion[s] devoid of further factual enhancement, [are insufficient]" (citation and quotation marks omitted)).

## II.   ANALYSIS

### A.   Title VI Retaliation Claim

As discussed above, this Court dismissed the Amended Complaint's Title VI retaliation claim because of Plaintiff's failure "to plead a 'logical nexus between the use of federal funds and the practice to which [Plaintiff's] action is directed.'" (Dkt. No. 89 at 25 (quoting Johnson, 411 F. Supp. 2d at 175)) This Court ruled that "Plaintiff must plead a nexus between the use of federal funds and the alleged discriminatory practice about which Plaintiff allegedly complained, and for which complaints she allegedly suffered retaliation: discrimination in the PSAL's sports programs." (Id.)

The proposed SAC includes three new paragraphs regarding DOE's receipt of the federal funds:

23. . . . the DOE receives federal funds pursuant to Title I of the Elementary and Secondary Education Act which provides funds to schools which have a high percentage of families from impoverished backgrounds.

24. Schools qualify for Title I if a certain percentage of the students qualify for free or reduced lunch programs.

25. Because over 60% of the students at PSC qualified for free or reduced lunch programs, PSC receives Title I funds for school wide programs.

(Proposed SAC (Dkt. No. 94-1) ¶¶ 23-25; see also id. ¶¶ 154-56)

Defendants contend that these new factual allegations do not cure the pleading defect, because they do not show a link between federal funding and the sports programs at issue here. According to Defendants, Plaintiff has still not pled facts demonstrating a logical nexus between federal funds received by DOE and the sports programs allocated to PSC, in which Plaintiff alleges that discrimination took place. (Def. Br. (Dkt. No. 99) at 12)

Plaintiff responds that the new allegations in the proposed SAC "show[] [that] the students at PSC were beneficiaries of federal funds given to the school system." (Pltf. Reply Br. (Dkt. No. 104) at 4) Plaintiff also contends that if she were required to "show a logical nexus between federal funds received by the DOE and the sports programs allocated to PSC," such a requirement would be "program specific" and thus "prohibited by the Civil Rights Restoration Act of 1987." (Id. at 6 (citations and quotation marks omitted))

As discussed in the September 24, 2019 Opinion, this is not a case of Title VI employment discrimination in which "'a plaintiff must plausibly allege . . . that the defendant was an entity receiving federal funds . . . [and] that the federal funds have been made available primarily for providing employment.'" (Sept. 24, 2019 Opinion (Dkt. No. 89) at 24 (quoting Sulehria, 2014 WL 4716084, at *5)) But Plaintiff must show that the students at issue were the "intended beneficiaries of the federal funding." (Id. at 24-25) In other words, Plaintiff must show a link between the federal funds allotted to DOE and "the students whose discrimination

was the subject of Plaintiff's complaint." Verdi v. City of New York, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018).

Moreover, a Title VI plaintiff is required to plead program-specific federal funding. See, e.g., McCrudden v. E-Trade Fin. Corp., No. 13CV8837, 2014 WL 3952903, at *4 (S.D.N.Y. Aug. 12, 2014) ("A Title VI plaintiff must allege he is the intended beneficiary of a specific program or activity which receives federal financial assistance." (citing Kelly v. Rice, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005))); see also Kelly, 375 F. Supp. 2d. at 208-09 (finding that "plaintiff had not alleged that Westchester County . . . receiv[ed] federal funds in connection with any program to provide handicapped parking facilities," and that plaintiff's failure to plead such facts was "absolutely fatal to [plaintiff's] Title VI claim").

Verdi – discussed at length in the September 24, 2019 Opinion – is instructive here. The Verdi court found that it was not sufficient for plaintiff to allege that, "'[d]uring all relevant times, the DOE was and is a recipient of federal funding for the purposes and under the guise of Title VI"; that "'[t]he New York public school system clearly fits into this [federal assistance] category'"; and that "'[t]he New York City DOE receives Federal Financial Assistance.'" Verdi, 306 F. Supp. 3d at 546 (citations omitted). The court held that, instead, plaintiff was required to "provide detail regarding the DOE's federal funding," and to "allege facts from which the [c]ourt [could] infer that the discrimination that [the assistant principal] proposed was against individuals who were intended beneficiaries of that funding." Id.

Here, Plaintiff has pled facts demonstrating a link between federal funding and unspecified "school-wide programs" administered by the DOE. (See SAC (Dkt. No. 94-1) ¶¶ 23-25) But Verdi makes clear that this type of vague allegation that a school district receives federal funding is not sufficient. A Title VI plaintiff must plead facts showing a nexus between

18

the federal funding and the program at issue.  The proposed SAC does not plead facts showing a

nexus between the federal funding allotted to DOE and PSAL's sports programs.  Proof of the

"'require[d] . . . logical nexus between the use of federal funds and the practice toward which

[Plaintiff's complaints were] directed'" is still missing.  Johnson, 411 F. Supp. 2d at 175

(quoting Ass'n Against Discrimination in Emp., 647 F. 2d at 276)); see also Verdi, 306 F. Supp.

3d at 546.

      Because Plaintiff's Title VI retaliation claim remains defective, Plaintiff's motion

for leave to amend is denied as to this claim.  See Agerbrink, 155 F. Supp. 3d at 452.

### B.    Due Process Claim

      As discussed above, in the September 24, 2019 Opinion, this Court dismissed

Plaintiff's Due Process claim after determining that (1) "Regulation D-130 unambiguously

encompasses the reported conduct that instigated OSI's investigation"; and (2) Regulation D-130

is not void for vagueness, as it "sets forth a detailed list of prohibited and permissible conduct."

(Sept. 24, 2019 Opinion (Dkt. No. 89) at 27, 29)  The Court further noted that "[a]lthough the

Amended Complaint suggests that the Regulation is enforced in an arbitrary and discriminatory

manner, Plaintiff ha[d] not pled facts demonstrating that OSI ignored conduct comparable to that

in which she allegedly engaged."  (Id. at 29)

      As set forth above, the proposed SAC includes numerous allegations regarding

the OSI Report, in which OSI reports the results of its investigation of Plaintiff.  (SAC (Dkt. No.

94-1) ¶¶ 75, 85-86, 90, 101-06)  The proposed SAC also discusses two incidents involving

Mayor de Blasio's campaign, which Plaintiff claims demonstrates that Regulation D-130 is

enforced in an arbitrary and discriminatory manner.  (Id.  ¶¶ 113-22, 124-26, 143-44)

Defendants argue that Plaintiff's Due Process claim is moot because the DOE determined that the allegation that Plaintiff violated Regulation D-130 was unsubstantiated: "[P]laintiff has not been found to have violated D-130, she has not been disciplined for violating D-130, and, therefore, no case or controversy exists for plaintiff's Due Process claims." (Def. Br. (Dkt. No. 99) at 8)  Defendants further argue that Plaintiff has "failed to plead any facts demonstrating that OSI or DOE ignored conduct comparable to what she was alleged to have engaged in." (Id. at 11)

Plaintiff counters that the "finding that the charges against [her] under D-130 were not substantiated . . . does not eradicate the effects of the Defendants' actions or omissions, to wit:  the impact of the investigation and its aftermath on [her]." (Reply Br. (Dkt. No. 104) at 7-8 (emphasis in original))  "The effects of the violation of Plaintiff's Due Process rights under Regulation D-130 are ongoing even if she was found not to have violated it." (Id. at 8-9)

"A case becomes moot – and therefore no longer a Case or Controversy for purposes of Article III of the Constitution – when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 96 (2d Cir. 2020) (citation, quotation marks, and alteration marks omitted); see also Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 260 F.3d 114, 118-19 (2d Cir. 2001) (same (citing U.S. Const. art. III, § 2, cl. 1)).  In other words, "'[a] case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur.'" F.O. v. New York City Dep't of Educ., 899 F. Supp. 2d 251, 254 (S.D.N.Y 2012) (quoting Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998)).

An exception to this doctrine "exists for cases that are 'capable of repetition, yet evading review' – that is, cases where '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" Id. (quoting Van Wie v. Pataki, 267 F.3d 109, 114 (2d Cir. 2001)).

Here, the purpose of Plaintiff's lawsuit was to "prevent" what she alleged was a retaliatory OSI investigation. (SAC (Dkt. No. 94-1) ¶¶ 82, 101 and p. 39; Pltf. Reply Br. (Dkt. No. 104) at 8) Plaintiff sought "[i]njunctive relief temporarily, preliminarily, and permanently barring the retaliatory OSI investigation against [her]," (SAC (Dkt. No. 94-1) at 39) as well as "[i]njunctive relief preliminarily and permanently barring disciplinary action against [her] for opposing an illegal retaliatory OSI investigation." (Id.) The OSI investigation ended in August 2017, with a finding that the Regulation D-130 allegations alleged against Plaintiff were "unsubstantiated." (SAC (Dkt. No. 94-1) ¶125; see also id. ¶ 103) Because the OSI investigation that Plaintiff sought to enjoin has long since been completed, and because the allegations against Plaintiff were found by OSI to be "unsubstantiated," the controversy between the parties is no longer "live." See, e.g., Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 84-85 (2d Cir. 2005) (finding that plaintiff's challenge to removal of child from a public school and placement of the child in a private education facility "no longer present[ed] a live dispute[]," as the child had not been removed from public school, and thus the case was moot); id. at 86 (explaining that to "avoid a mootness dismissal, a 'reasonable expectation' of repetition must be more than a 'mere physical or theoretical possibility'" (citation omitted)). There is no dispute here that the OSI investigation was long since completed. (SAC (Dkt. No. 94-1) ¶¶ 101, 103)

While the proposed SAC pleads that – as a result of the OSI investigation – Plaintiff "was disciplined with a written reprimand," and "an investigation by the [Conflict of Interest Board] against [her was] commenced" (SAC (Dkt. No. 94-1) ¶¶ 3, 105-06, 132), the SAC provides no details concerning either the reprimand or the conflict of interest inquiry. Nor is there any suggestion in the proposed SAC that the reprimand or the conflict of interest inquiry are premised on Plaintiff's alleged violation of Regulation D-130.

To the extent, that Plaintiff asserts that an OSI investigation of her could happen again – i.e., that there is a reasonable expectation of recurrence – the proposed SAC does not plead sufficient facts to make this concern plausible.

In support of her reasonable expectation of recurrence argument, Plaintiff argues that Regulation D-130 is enforced in an arbitrary and discriminatory manner (see, e.g., id. ¶ 146), citing the following two incidents: a 2014 event for the Communications Workers of America at P.S. 66, at which Mayor de Blasio spoke, and a 2017 posting by a principal at a DOE school soliciting student support for the de Blasio campaign. (Id. ¶¶ 115-24, 143-44) SCI investigated the 2014 event and concluded that there was no violation of Regulation D-130, "because the Mayor's remarks were not 'overtly political.'" (Id.) As to the principal's posting, the proposed SAC alleges that "the DOE insisted that no rules were broken." (Id. ¶ 124)

These incidents do not support Plaintiff's claim of arbitrary and discriminatory enforcement, because the OSI investigation of Plaintiff, the SCI investigation of Mayor de Blasio's remarks, and the DOE's handling of the principal's posting, all concluded with a finding that Regulation D-130 had not been violated. (See id. ¶¶ 103, 118, 124, 143-44)

Leave to amend will be denied as to Plaintiff's Due Process claim, both because her claim is moot and because the claim alleged in the proposed SAC remains insufficiently pled.

Accordingly, the proposed amendment would be futile. See F.O., 899 F. Supp. 2d at 255 ("Mere speculation that the parties will be involved in a dispute over the same issues does not rise to the level of a reasonable expectation or demonstrated possibility of recurrence." (citation and quotation marks omitted)); Kramer, 715 F. Supp. 2d at 356; Agerbrink, 155 F. Supp. 3d at 452.

### C.    NYCHRL Retaliation Claim

The proposed SAC asserts a claim for retaliation under the NYCHRL. (See SAC (Dkt. No. 94-1) ¶¶ 166-168) Under 28 U.S.C. § 1367(a), "in any civil action of which the [federal] district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that . . . form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

However, a district court "may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); see also Sefovic v. Mem'l Sloan Kettering Cancer Ctr., No. 15 Civ. 5792 (PAC), 2017 WL 3668845, at *8 (S.D.N.Y. Aug. 23, 2017) ("'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims.'" (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988))); see also, e.g., Booker v. Soho Studio Corp., No. 17-CV-5426 (PKC) (SMG), 2020 WL 363912, at *8 (E.D.N.Y. Jan. 22, 2020) ("[I]n light of the Court's dismissal of all of Plaintiff's federal claims in this action, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL and NYCHRL claims, which are dismissed without prejudice to renew in state court.").

Because this Court concludes that amendment of Plaintiff's federal claims would be futile, it will not exercise supplemental jurisdiction over Plaintiff's NYCHRL retaliation claim.

## **CONCLUSION**

For the reasons stated above, Plaintiff's motion for leave to file a Second Amended Complaint (Dkt. No. 93) is denied. The Clerk of Court is directed to terminate the motion (Dkt. No. 93) and to close this case.

Dated: New York, New York
      September 23, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JILL BLOOMBERG,

               Plaintiff,

      - against -

THE NEW YORK CITY DEPARTMENT
OF EDUCATION and CARMEN FARINA,

               Defendants.

**ORDER**

17 Civ. 3136 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

       Plaintiff Jill Bloomberg – a high school principal at Park Slope Collegiate – brings this action against the New York City Department of Education (the "DOE") and its chancellor (collectively, "Defendants"). The Amended Complaint claims that a DOE investigation of Plaintiff's conduct – purportedly premised on her violation of a DOE regulation governing DOE employees' activity on behalf of political organizations – was retaliatory and in violation of her rights. (Am. Cmplt. (Dkt. No. 39) ¶¶ 1, 4-6) The Amended Complaint further pleads that the DOE regulation on which the investigation was premised does not apply to her alleged conduct and, in any event, is unconstitutionally vague. (Id. ¶¶ 88-89, 118-120)[1]

       The Amended Complaint pleads claims for a violation of Due Process, and for retaliation in violation of the First Amendment, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d-1 et seq., and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. (Id. ¶¶ 4-5, 111-51)

---

[1] The factual background of this case is discussed in greater detail in this Court's September 24, 2019 decision granting Defendants' motion to dismiss the Amended Complaint (Dkt. No. 89), and in this Court's September 23, 2021 order denying Plaintiff's motion for leave to file a second amended complaint (Dkt. No. 108).

Defendants moved to dismiss the Amended Complaint's First Amendment, Title VI, and Due Process claims. (Mot. (Dkt. No. 77); Am. Cmplt. (Dkt. No. 39) ¶¶ 111-51) On September 24, 2019, this Court granted Defendants' motion in its entirety (the "September 24, 2019 Opinion"). (Dkt. No. 89)

On November 6, 2019, Plaintiff moved for leave to file a Second Amended Complaint ("SAC"). (Dkt. No. 93) The proposed SAC alleges a Due Process claim and retaliation claims under Title VI and the NYCHRL. (See generally Proposed SAC (Dkt. No. 94-1)) On September 23, 2021, this Court denied Plaintiff's motion to amend her Due Process and Title VI retaliation claims and declined to exercise supplemental jurisdiction over her NYCHRL claim (the "September 23, 2021 Order"). (Dkt. No. 108)

Plaintiff has now moved pursuant to Local Rule 6.3 for reconsideration of the September 23, 2021 Order. Plaintiff seeks reconsideration only as to that portion of the September 23, 2021 Order that addresses her Title VI retaliation claim. (Reconsideration Mot. (Dkt. No. 111) at 1)[2] In that claim, Plaintiff alleges that she suffered retaliation at work after she complained that DOE was offering "racially separated . . . [and] unequal opportunities in [its] sports programs [for students at the schools sharing the John Jay Campus in Brooklyn]."[3] (Proposed SAC (Dkt. No. 94-1) ¶ 58; see also id. ¶¶ 64-81 ("Within six weeks of plaintiff's Title VI Complaint, [Defendants] . . . informed plaintiff that she was under investigation . . . .

---

[2] Citations to page numbers refer to the pagination generated by this District's Electronic Case Files ("ECF") system.

[3] Park Slope Collegiate is "one of four schools housed on the John Jay Campus in Brooklyn." (Proposed SAC (Dkt. No. 94-1) ¶ 3) The Public School Athletic League allocates "sports teams and resources" to New York City public schools, including the schools housed on the John Jay Campus. (See id. ¶ 27) Plaintiff alleges that she complained to DOE that the Public School Athletic League has a "policy of allowing segregated and unequal allocation of sports teams and resources" with respect to the schools located at the John Jay Campus. (Id.)

[P]laintiff believed, and still believes, that the [] investigation against her was retaliation for her complaint about the segregated sports programs.")

For the reasons stated below, Plaintiff's motion for reconsideration will be granted, but leave to amend the Title VI retaliation claim will be denied.

## BACKGROUND

### I. THIS COURT'S DISMISSAL OF PLAINTIFF'S TITLE VI RETALIATION CLAIM AND PLAINTIFF'S MOTION TO AMEND

In the September 24, 2019 decision dismissing, inter alia, Plaintiff's Title VI retaliation claim, this Court noted that 42 U.S.C. § 2000d-3 requires plaintiffs claiming employment discrimination under Title VI to plead "'a logical nexus between the use of federal funds and the practice toward which [the] action is directed.'" (September 24, 2019 Opinion (Dkt. No. 89) at 24 (quoting Johnson v. Cty. of Nassau, 411 F. Supp. 2d 171, 175 (E.D.N.Y. 2006))) This Court went on to dismiss the Amended Complaint's Title VI retaliation claim because Plaintiff did not "plead a nexus between the use of federal funds and the alleged discriminatory practice about which [she] allegedly complained, and for which complains she allegedly suffered retaliation: discrimination in the [Public School Athletic League]'s sports programs." (Id. at 25)

Relying on Verdi v. City of New York, 306 F. Supp. 3d 532 (S.D.N.Y. 2018), this Court found the Amended Complaint's factual allegations insufficient to plead the necessary nexus:

> The Amended Complaint alleges only that "[a]t all times relevant the DOE was and is a recipient of federal funding for purposes of Title VI," and "[t]he New York City DOE receives Federal Financial Assistance." (Am. Cmplt. (Dkt. No. 37) ¶¶ 23, 125) These allegations do not sufficiently plead the requisite "logical nexus." See Verdi, 306 F. Supp. 3d at 546 (dismissing Verdi's Title VI claim because his "allegations regarding federal funding are bare and conclusory and do not describe the federal funding the DOE

received, let alone link that funding to the students whose discrimination was the subject of Plaintiff's complaints").

(Id.)

In response to this Court's dismissal order, Plaintiff sought permission to file a second amended complaint that adds the following allegations concerning DOE's receipt of federal funds:

> 23. . . . the DOE receives federal funds pursuant to Title I of the Elementary and Secondary Education Act which provides funds to schools which have a high percentage of families from impoverished backgrounds.
>
> 24. Schools qualify for Title I if a certain percentage of the students qualify for free or reduced lunch programs.
>
> 25. Because over 60% of the students at [Park Slope Collegiate, Plaintiff's school,] qualified for free or reduced lunch programs, [Park Slope Collegiate] receives Title I funds for school wide programs.

(Proposed SAC (Dkt. No. 94-1) ¶¶ 23-25; see also id. ¶¶ 154-56)

## II. THE SEPTEMBER 23, 2021 ORDER DENYING PLAINTIFF LEAVE TO AMEND HER TITLE VI RETALIATION CLAIM

In her motion for leave to amend, Plaintiff argued that she was not required to "show a logical nexus between federal funds received by the DOE and the sports programs allocated to [Park Slope Collegiate]," because any such requirement would be "program specific" and thus "prohibited by the Civil Rights Restoration Act of 1987." (Pltf. Reply Br. (Dkt. No. 104) at 6) Plaintiff did not cite to any case law interpreting or applying the Civil Rights Restoration Act. (See id. at 4-7)

In the September 23, 2021 order denying Plaintiff leave to amend her Title VI retaliation claim, this Court acknowledged Plaintiff's argument that a "'program specific'" pleading requirement is "'prohibited by the Civil Rights Restoration Act of 1987.'" (September 23, 2021 Order (Dkt. No. 108) at 17 (quoting Pltf. Reply Br. (Dkt. No. 104) at 6)) But the Court nonetheless reaffirmed its holding that a plaintiff asserting a Title VI retaliation claim must

"plead facts showing a nexus between the federal funding and the program at issue." (Id. at 18-19)  This Court went on to deny Plaintiff's motion to amend, finding that – despite Plaintiff's new allegations – "[t]he proposed SAC does not plead facts showing a nexus between the federal funding allotted to DOE and [the Public School Athletic League]'s sports programs." (Id. at 19)  In so holding, this Court relied on Verdi's holding that a Title VI retaliation plaintiff "must show a link between the federal funds allotted to DOE and 'the students whose discrimination was the subject of Plaintiff's complaint.' Verdi v. City of New York, 306 F. Supp. 3d 532, 546 (S.D.N.Y. 2018)." (Id. at 17-18)

## III.    PLAINTIFF'S MOTION FOR RECONSIDERATION

On October 8, 2021, Plaintiff moved "pursuant to Local Rule 6.3 for an order reconsidering the [September 23, 2021 order denying Plaintiff leave to amend her Title VI retaliation claim]." (Reconsideration Mot. (Dkt. No. 111) at 1)

In her reconsideration motion, Bloomberg argues that this Court overlooked "[t]he clear language of the Civil Rights Restoration Act . . . prohibit[ting] the Court from requiring a plaintiff to show any kind of connection between the federal assistance a school system receives and a particular program or activity alleged to be discriminatory." (Id. at 8)  According to Plaintiff, this Court "committed clear error [in] denying Plaintiff's motion to amend her claim under Title VI" when it found that Bloomberg must "'plead facts showing a nexus between the federal funding and the program at issue.'" (Id. (quoting September 23, 2021 Order (Dkt. No. 108) at 13))

Defendants contend that the motion for reconsideration should be denied, because Plaintiff has not "demonstrate[d] that the Order [denying leave to amend the Title VI retaliation claim] was issued in clear error." (Def. Opp. (Dkt. No. 115) at 5)  According to Defendants,

Plaintiff's reconsideration motion merely repeats arguments previously rejected, and this Court did not overlook the Civil Rights Restoration Act (the "CRRA") in its September 23, 2021 order denying leave to amend. (Id. at 5-6) In supplemental briefing ordered by this Court, Defendants argue that the CRRA "did not alter the pleading standard applied in cases of this Circuit in connection with employment-based retaliation claims brought pursuant to Title VI." (Def. Supp. Br. (Dkt. No. 119) at 3). Defendant argues that Verdi was correctly decided and that – notwithstanding the CRRA's broad definition of "program or activity" – Bloomberg's proposed SAC remains deficient because it is "devoid of any allegation that participants in [Public School Athletic League] teams (i.e., the victims of the discrimination about which plaintiff complained) were the intended beneficiaries of the Title I funds received by DOE." (Id. at 4-5)

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Motions for Reconsideration

"Motions for reconsideration are governed principally by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Walsh v. Townsquare Media, Inc., 565 F. Supp. 3d 400, 402 (S.D.N.Y. 2021) (quotation marks and citations omitted). "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" In re Beacon Assocs. Litig., 818 F. Supp. 2d 697, 701 (S.D.N.Y. 2011) (quoting In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 256-57 (2d Cir.

1995). "The decision to grant or deny a motion for reconsideration is 'committed to the sound

discretion of the district court.'" <u>Sigmon v. Goldman Sachs Mortg. Co.</u>, 229 F. Supp. 3d 254,

257 (S.D.N.Y. 2017) (quoting <u>Wilder v. News Corp.</u>, 2016 WL 5231819, at *3 (S.D.N.Y. Sept.

21, 2016)).

### B.     Title VI Retaliation

To plead a Title VI retaliation claim, a plaintiff must "plausibly allege:

'(1) participation in a protected activity known to the defendants; (2) adverse action by the

defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed]

activity and defendants' adverse action.'" <u>Diaz v. City Univ. of New York</u>, 2016 WL 958684,

at *2 (S.D.N.Y. Mar. 8, 2016) (quoting <u>Williams v. CUNY</u>, 2014 WL 4207112, at *8 (E.D.N.Y.

2014)).

Title VI provides that "[n]othing contained in [it] shall be construed to authorize

action under [Title VI] . . . with respect to any employment practice of any employer . . . except

where a primary objective of the Federal financial assistance is to provide employment." 42

U.S.C. § 2000d-3.  As discussed in this Court's earlier decision in this action, "[i]n the Title VI

employment discrimination context, courts have construed Section 2000d-3 as imposing 'a

threshold requirement . . . that the employer be the recipient of federal funds aimed primarily at

providing employment.'" (September 24, 2019 Opinion (Dkt. No. 89) at 24 (quoting <u>Ass'n

Against Discrimination in Emp.</u>, 647 F.2d at 276 and citing <u>Sulehria v. New York</u>, No. 13-CV-

6990 AJN, 2014 WL 4716084, at *5 (S.D.N.Y. Sept. 19, 2014) ("To state a claim under Title VI,

a plaintiff must plausibly allege . . . that the defendant was an entity receiving federal funding . . .

[and] that the federal funds have been made available primarily for providing employment.")))

C.     **The Civil Rights Restoration Act of 1987**

   The Civil Rights Restoration Act of 1987 (the CRRA") amends various civil

rights laws to broaden the definition of "program or activity" as follows:

> [T]he term "program or activity" and the term "program" mean all of the
> operations of – (1)(A) a department, agency, special purpose district, or other
> instrumentality of a State or of a local government; or (B) the entity of such State
> or local government that distributes such assistance and each such department or
> agency (and each other State or local government entity) to which the assistance
> is extended, in the case of assistance to a State or local government; (2)(A) a
> college, university, or other postsecondary institution, or a public system of higher
> education; or (B) a local educational agency (as defined in section 198(a)(10) of
> the Elementary and Secondary Education Act of 1965), system of vocational
> education, or other school system. . . .

Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, § 6, 102 Stat. 28 (Mar. 22, 1988).

   Courts have recognized that the CRRA was enacted to overturn the Supreme

Court's narrow interpretation of "program or activity," which had required plaintiffs to plead

program-specific funding:

> In Grove City College v. Bell, 465 U.S. 555, 571-75 (1984) the Supreme Court
> considered the meaning of Title IX's phrase "education program or activity" and
> defined it narrowly, holding that by referring to particular activities or programs,
> Congress intended that Title IX apply only to the particular program receiving
> financial assistance.  Thus, in Grove City, the Court found that the receipt by
> students of federal grants did not trigger institution-wide Title IX coverage, but
> only coverage of the school's financial aid program.  Id. at 573-74.
>
> In response to the Court's interpretation of Title IX, as well as out of concern that
> the Grove City definition of "program or activity" would be applied to similar
> language contained in . . . Title VI of the Civil Rights Act of 1964, Congress
> passed the Civil Rights Restoration Act of 1987, . . . which amended each of the
> affected statutes, including Title IX, by adding a section broadly redefining the
> term "program or activity."
>
> Following the 1988 Amendment, courts have consistently interpreted Title IX to
> mean that if one arm of a university or state agency receives federal funds, the
> entire entity is subject to Title IX's proscription against sex discrimination.

O'Connor v. Davis, 126 F.3d 112, 117 (2d Cir. 1997); see also Franklin v. Gwinnett Cnty. Pub.

Sch., 503 U.S. 60, 73 (1992) ("Congress [] enacted the Civil Rights Restoration Act of 1987. . .

[w]ithout in any way altering the existing rights of action . . . under Title IX, Title VI, § 504 of

the Rehabilitation Act, and the Age Discrimination Act, [to] broaden the coverage of these

antidiscrimination provisions . . . [and] correct what it considered to be an unacceptable decision

on our part in Grove City College v. Bell.").

## II.   ANALYSIS

### A.   Whether Reconsideration Should Be Granted

Bloomberg argues that "[t]he clear language of the Civil Rights Restoration Act

. . . prohibits the Court from requiring a plaintiff to show any kind of connection between the

federal assistance a school system receives and a particular program or activity alleged to be

discriminatory." (Reconsideration Mot. (Dkt. No. 111) at 8)

As discussed above, in dismissing the Amended Complaint's Title VI retaliation

claim, this Court ruled that the Amended Complaint failed to "plead a nexus between the use of

federal funds and the alleged discriminatory practice about which Plaintiff allegedly complained,

and for which complaints she allegedly suffered retaliation:  discrimination in the [Public School

Athletic League's] sports programs."  (September 24, 2019 Opinion (Dkt. No. 89) at 25)  And in

denying Plaintiff leave to amend her Title VI retaliation claim, this Court found Plaintiff's new

allegations insufficient, because they did not show "a nexus between the federal funding allotted

to DOE and [the Public School Athletic League]'s sports programs."  (September 23, 2021 Order

(Dkt. No. 108) at 18-19)

In requiring that Plaintiff plead facts showing program-specific federal funding,

this Court erred.  As discussed above, the CRRA prohibits courts from requiring proof of

program-specific federal funding.  See O'Connor, 126 F.3d at 117 ("Out of concern that the

Grove City definition of 'program or activity' would be applied to similar language contained in

. . . Title VI of the Civil Rights Act of 1964, Congress passed the [CRRA], . . . broadly redefining the term "program or activity.").

This Court further concludes that a Title VI retaliation claim is adequately pled where plaintiff alleges that he or she complained about discrimination against the "intended beneficiaries" of a program that receives federal funding where the purported victims of discrimination are participating in a federally-funded "program or activity" for purposes of a direct Title VI discrimination claim.

Here, Bloomberg alleges in the proposed SAC that "[o]n January 10, 2017, [she] sent a damning complaint to [her DOE superiors], . . . accusing the DOE of race discrimination and segregation within the sports program in her building." (Proposed SAC (Dkt. No. 94-1) ¶ 58) The proposed SAC also alleges that "DOE receives federal funds pursuant to Title I of the Elementary and Secondary Education Act which provides funds to schools which have a high percentage of families from impoverished backgrounds," and that Park Slope Collegiate receives Title I funds. (Id. ¶¶ 23-25). Defendants do not dispute that Park Slope Collegiate students are among the "intended beneficiaries" of the federal funds DOE receives. If students at Park Slope Collegiate sued DOE alleging that they were excluded from a school sports team on the basis of their race in violation of Title VI and further pled that DOE – and not the Public Schools Athletic League – receives federal funding, they would have adequately pled their participation in a federally-funded "program or activity." See O'Connor, 126 F.3d at 117; Horner v. Kentucky High Sch. Athletic Ass'n, 43 F.3d 265, 272 (6th Cir. 1994) ("Simply put, it appears that Kentucky's school system receives substantial federal financial assistance."); Rogers v. Bd. of Educ. of Prince George's Cnty., 859 F. Supp. 2d 742, 752 (D. Md. 2012) ("The Complaints also sufficiently allege Title VI's 'any program or activity receiving Federal financial assistance'

10

requirement. The Board of Education of Prince George's County is a 'public board of education,' which qualifies as a 'local educational agency,' which in turn constitutes a 'program or activity' under Title VI.") (citations omitted).

In sum, the proposed SAC adequately alleges that the "victims of the discrimination about which [Bloomberg] complained" are the "intended beneficiaries" of a federally funded "program or activity" for purposes of Title VI. Verdi, 306 F. Supp. 3d. 532 at 545-46. Accordingly, Plaintiff's motion for reconsideration is granted.

**B.    Whether Plaintiff Should Be Granted Leave
       to Amend Her Title VI Retaliation Claim**

In addition to arguing that Bloomberg is required to plead facts showing program-specific federal funding, Defendants have argued that Plaintiff's Title VI retaliation claim is barred by 42 U.S.C. § 2000d-3, which provides that

> [n]othing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment.

42 U.S.C. § 2000d-3.[4] According to Defendants, Plaintiff's Title VI retaliation claim is barred because she has not and cannot plead that the "primary objective of the federal financial assistance that . . . DOE received" is to provide employment. (Def. MTD Br. (Dkt. No. 78) at 22-23 (noting that Plaintiff does not "plead the primary objective of the federal financial assistance that it is alleged DOE received or receives" and citing Moore v. City of New York, 2017 WL 35450, at *15 (S.D.N.Y. Jan. 3, 2017), report and recommendation adopted, 2017 WL

---

[4]  While the statute addresses department and agency action, the "primary objective" test applies to private causes of action as well. In Ass'n Against Discrimination in Emp., Inc., 647 F.2d at 276, the Second Circuit states that Section 2000d-3 "in effect requires a logical nexus between the use of federal funds and the practice toward which agency action is directed." The Second Circuit found "no indication [in the statute] that Congress would not have intended that the logical nexus requirement exist with respect to private actions as well as agency action." Id.

1064714 (S.D.N.Y. Mar. 20, 2017) ("[Plaintiff's] Title VI claims additionally fail because he has

not sufficiently pled that 'a primary objective of the Federal financial assistance is to provide

employment.'" (quoting 42 U.S.C. § 2000d-3)) and Acheampong v. New York City Health &

Hosps. Corp., 2015 WL 1333242, at *14 (S.D.N.Y. Mar. 25, 2015) ("'[F]or a claimant to recover

under Title VI against an employer for discriminatory employment practices, a threshold

requirement is that the employer be the recipient of federal funds aimed primarily at providing

employment.'" (quoting Ass'n Against Discrimination in Employment, 647 F.2d at 276)); see

also Def. Supp. Br. (Dkt. No. 119) at 3 ("The CRRA did not impact the provision of Title VI

which provides that '[n]othing contained in [it] shall be construed to authorize action under [Title

VI] . . . with respect to any employment practice of any employer . . . except where a primary

objective of the Federal financial assistance is to provide employment.'" (quoting 42 U.S.C.

§ 2000d-3)))

   This Court's prior orders endorsed Verdi's reasoning that retaliation claims such

as that brought by Plaintiff are permissible despite Section 2000d-3's language so long as

plaintiff has pled program-specific funding.  (See September 24, 2019 Opinion (Dkt. No. 89) at

24-25; September 23, 2021 Order (Dkt. No. 108) at 17-19)  Having concluded that it was error

for this Court to follow Verdi's holding that a Title VI retaliation plaintiff is required to plead

program-specific federal funding, this Court must revisit Verdi's dicta – on which this Court

likewise relied – that Plaintiff's Title VI retaliation claim is permissible under 42 U.S.C.

§ 2000d-3's "primary objective" test.

   With respect to Section 2000d-3, Verdi acknowledges that, "[f]or a claimant to

recover under Title VI against an employer for discriminatory employment practices, a threshold

requirement is that the employer be the recipient of federal funds aimed primarily at providing

employment." Verdi, 306 F. Supp. 3d at 544. Verdi draws a distinction between "retaliation claims affecting employment" and "straight retaliation claims," however:

> It is unsettled . . . whether retaliation claims affecting employment – in which an individual who voices concerns about discrimination against others is retaliated against with respect to his or her employment – should be treated the same as straight retaliation for employment discrimination claims. . . ."

(Id. at 544-45 (emphasis in original))

The Verdi court goes on to assert that

> [a]t the heart of a Title VI retaliation claim could be the very individuals whom the statutory scheme was intended to protect, so it is important to distinguish between garden variety retaliation-for-complaining-about-employment-discrimination claims, on the one hand, and retaliation claims in which the complainant's employment is affected based on complaints regarding non-employment discrimination against others, on the other. Section 2000d–3 "ma[d]e it clear that discrimination in employment which does not affect [the] intended beneficiaries of federal assistance is not within the reach of title VI." Carmi v. Metro. St. Louis Sewer Dist., 620 F.2d 672, 674 & n.4 (8th Cir. 1980) (citing United States v. Jefferson County Bd. of Educ., 372 F.2d 836, 882-83 (5th Cir. 1966) ), abrogated on other grounds by Consol. Rail Corp. v. Darrone, 465 U.S. 624 (1984)). In contrast, recognizing a retaliation claim based on harms to a claimant's employment where the complained-of discrimination was against the intended beneficiaries of the relevant federal funding would vindicate rather than undermine the intent and spirit of § 2000d-3. Accordingly, this Court finds that the "primary objective of providing employment" requirement does not apply when analyzing an employment-based retaliation claim where the victims of the discrimination about which the claimant complained (and for which complaining the claimant suffered retaliation) are the intended beneficiaries of the federal funding.

Verdi, 306 F. Supp. 3d at 545-46 (emphasis omitted).

Verdi's only support for this conclusion is the following footnote in Hickey v. Myers, 2010 WL 786459 (N.D.N.Y. Mar. 2, 2010)):

> Defendant argues that 42 U.S.C. § 2000d-3 precludes Plaintiff from recovering under [Title VI]. . . . Defendant misinterprets Plaintiff's allegations and argues that Title VI is inapplicable in the employment discrimination context. Plaintiff does not allege employment discrimination but instead alleges that he was retaliated against because he spoke out against racial discrimination in the school's admission policy. This argument does not implicate § 2000d–3.

13

<u>Hickey</u>, 2010 WL 786459, at *3 n.3.

      In asserting that employment-related retaliation claims are entirely divorced from employment-related discrimination claims, <u>Hickey</u> does not cite to any language in Section 2000d-3 or any case law suggesting that Congress intended to authorize employment-related Title VI retaliation claims in a context in which the "primary objective" of the federally-funded program is not to provide employment.

      Contrary to the suggestion in <u>Hickey</u> that retaliation in the employment context is completely divorced from discrimination in the employment context, such claims are closely related. Indeed, retaliation in the employment context is prohibited as "a form of 'discrimination[,]' because the complainant is being subjected to differential treatment." <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 173-74 (2005).

      While <u>Verdi</u> argues that "recognizing [an employment-based Title VI] retaliation claim . . . would vindicate rather than undermine the intent and spirit of § 2000d–3," <u>Verdi</u> 306 F. Supp. 3d at 545, statutory interpretation must "begin[] . . . with the statute's text," <u>Permanent Mission of India to the United Nations v. City of New York</u>, 551 U.S. 193, 197 (2007), and "[w]hen interpreting the meaning of a statutory provision, 'the best evidence of Congress's intent is the statutory text.'" <u>Grajales v. Comm'r of Internal Revenue</u>, 47 F.4th 58, 62 (2d Cir. 2022) (quoting <u>NFIB v. Sebelius</u>, 567 U.S. 519, 544 (2012)).

      Here, Section 2000d-3 broadly precludes a Title VI claim "with respect to any employment practice . . . except where a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. § 2000d-3. The Second Circuit has held that, "for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at

providing employment." <u>Ass'n Against Discrimination in Emp., Inc.</u>, 647 F.2d at 276; <u>id.</u> ("[Section 2000d-3] in effect requires a logical nexus between the use of federal funds and the practice toward which agency action is directed.").

There is no claim here that the Federal funding provided to DOE was for the purpose of providing employment. Accordingly, the issue under the plain language of the statute is whether Plaintiff's claim that she suffered a retaliatory adverse action in connection with her employment at DOE relates to "any employment practice" of DOE.

In Plaintiff's Title VI retaliation claim, she complains that DOE engaged in an unlawful "employment practice" – retaliation – when it opened an investigation into whether Plaintiff, a DOE employee, had violated "Chancellor's Regulation D-130 – a regulation designed to limit DOE employees from engaging in partisan electoral politics while on duty." (Proposed SAC (Dkt. No. 94-1) ¶ 3) Bloomberg has thus sued to vindicate her own rights with respect to her position as principal of Park Slope Collegiate, and has not sued to vindicate the rights of Park Slope Collegiate students. Bloomberg also seeks relief for herself – damages for her own "emotional distress, including reputational harm, that she has suffered because of DOE's [allegedly retaliatory investigation]" – and not for Park Slope Collegiate students (<u>Id.</u> ¶ 5)

In sum, Bloomberg's Title VI retaliation claim is premised on the assertion that DOE – in opening an investigation regarding a complaint that she had engaged in prohibited political activity at her school – engaged in an unlawful "employment practice." (<u>See</u> Proposed SAC (Dkt. No. 94-1) ¶¶ 66-77) Under the plain language of Section 2000d-3, such an action is not authorized unless the Federal funding DOE receives is for the purpose of providing employment. Because there is no such claim in this case, Bloomberg's Title VI retaliation claim cannot survive a motion to dismiss. <u>See</u> <u>Miller-Sethi v. City Univ. of New York,</u> 2023 WL

419277, at *8 (S.D.N.Y. Jan. 26, 2023) (dismissing an employment-based Title VI retaliation claim because "Plaintiff fails to plead that the federal funds that CUNY receives are aimed primarily at providing employment. Instead, Plaintiff alleges that CUNY is a publicly funded university system that receives federal funding and that its discriminatory employment practices negatively impact the intended beneficiaries of its programs, including faculty such as herself").

## CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration (Dkt. No. 109) is granted, but leave to amend is denied. The Clerk of Court is directed to close this case.

Dated: New York, New York
February 10, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge

## ADDENDUM B

**Issues on Appeal**

1.  This appeal raises important issues of a public employee's right to publicly oppose racially discriminatory policies. It addresses whether there is First Amendment protection from retaliation for speaking out on issues of public concern. Plaintiff alleges she should have been protected from retaliation for having raised a public protest regarding racially discriminatory policies of the Public School Athletic League in the allocation of sports teams to the schools in her building. Plaintiff claimed her conduct was protected speech under *Garcetti v. Caballos* 547 U.S. 418 (2010) and *Matthews v. City of New York,* 779 F. 3d 167 (2nd Cir 2015). The District Court judge disagreed and found Plaintiff's claim under the First Amendment not viable. Plaintiff alleges this ruling was erroneous as a matter of law. This Court is being asked to determine whether Plaintiff engaged in protected speech under the First Amendment such that she should not have been retaliated against by being investigated.

2.  Plaintiff alleges that the District Court erred as a matter of law in finding that the Defendants application of a NYCDOE Chancellor's regulation regarding political activity in school buildings applied to give Defendants a basis to open an investigation into her. Plaintiff's due process claim is based on the use of a regulation which should have been found to be Constitutionally invalid. This Court is being asked to determine if Plaintiff's due process rights were violated in the use of an inapposite regulation as a basis to investigate her.

3. The Plaintiff alleges the District Court erred as a matter of law in its analysis of her claim under Title VI of the Civil Rights Act. 42 U.S.C. 2000d. Plaintiff alleged she was retaliated against for speaking out for the rights of the Black and Latino students in the John Jay Campus schools not to be racially discriminated against by a section of the New York City Department of Education, in *inter alia* the disparate allocation of sports teams. There is no question that the NYCDOE receives Federal Financial Assistance. The District Court initially and correctly recognized that Plaintiff was claiming retaliation under Title VI and that the elements of a retaliation case under Title VI were articulated in *Verdi v. City of N.Y.,* 306 F. Supp. 3d 532, 539 (S.D.N.Y. 2018) and cases cited therein. The District Court, however, incorrectly claimed that Plaintiff had not sufficiently plead that federal financial assistance was connected to the sports programs at issue in the case and allowed her to seek to amend the complaint. Thereafter, the District Court erred, first in claiming Plaintiff had not sufficiently plead federal funds being "program specific" to the sports teams at issue, and then when realizing that the Civil Rights Reconstruction Act of 1987 removed the requirement for program specific pleading in a Title VI case, the District Court erroneously claimed Plaintiff's case was really a case for employment discrimination and the pleading standards under 42 U.S.C. 2000d-3 applied to require Plaintiff to show that the purpose of the federal financial assistance to the New York City Public Schools was to provide employment. This Court must consider whether it was error to apply 42 U.S.C. 2000d-3 standards to a retaliation case under Title VI of the Civil Rights Act.

**Standard of Review**

The standard of review of the granting of a Rule 12(b)(6) motion to dismiss is de novo. *See O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 128 (2d Cir. 2018).