# 23-343

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

JILL BLOOMBERG,

*Plaintiff-Appellant,*

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,
AND CARMEN FARINA,

*Defendants-Appellees.*

*On appeal from Order and Judgment of the U.S.*
*District Court for the Southern District of New York*
*Case No 1:17-cv-03136*

## OPENING BRIEF FOR PLAINTIFF-APPELLANT

**JULIEN MIRER SINGLA**
**& GOLDSTEIN PLLC**
1 Whitehall Street, 16th Floor
New York, New York 10004
(212) 231-2235
*Attorneys for Plaintiff-Appellant*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

JURISDICTIONAL STATEMENT ................................................................................. 1

STATEMENT OF ISSUE PRESENTED FOR REVIEW ......................................... 2

STATEMENT OF THE CASE........................................................................................ 4

    Facts Relevant to the Issues for Review ...................................................... 4

    Procedural History ............................................................................................. 7

        Defendants Motion to Dismiss the First Amended Complaint and the
        September 24, 2019 Opinion ...................................................................... 7

        The September 23, 2021 Opinion Denying Amendment ................................ 9

        The February 10, 2023 Reconsideration Decision ........................................ 10

SUMMARY OF ARGUMENT .......................................................................................... 11

ARGUMENT........................................................................................................................ 13

    I.     IT IS NOT DISPUTED THAT TITLE VI OF THE CIVIL RIGHTS
          ACT OF 1964 ALLOWS FOR A PRIVATE RIGHT OF ACTION
          FOR PERSONS WHO CLAIM TO HAVE BEEN RETALIATED
          AGAINST FOR PROTESTING INTENTIONAL RACIAL
          DISCRIMINATION ONE REASONABLY BELIEVES VIOLATES
          TITLE VI .......................................................................................................... 13

    II.    PLAINTIFF'S COMPLAINTS AND PROPOSED AMENDMENTS
          IN HER SAC SET FORTH A TITLE VI RETALIATION CLAIM......... 14

    III.   THE DISTRICT COURT'S SEPTEMEBER 24, 2019 OPINION
          AFTER REJECTING THE PRIMARY PURPOSE TEST
          ERRONEOUSLY REQUIRED PLAINTIFF TO STATE A
          LOGICAL NEXUS BETWEEN THE ACTION COMPLAINED OF
          AND THE FEDERAL FINANCIAL ASSISTANCE................................. 18

    IV.   THE DISTRICT COURT DID NOT ACCURATELY CONSIDER
          THE IMPACT OF THE CIVIL RIGHTS RESTORATION ACT OF

i

1987 IN ITS DISCUSSION OF THE PLEADING STANDARD FOR TITLE VI IN ITS SEPTEMBER 23, 2021 DECISION DENYING PLAINTIFF'S MOTION TO AMEND TO FILE THE SAC, HOLDING THAT PLAINTIFF HAD TO PLEAD THAT HER RETALIATION COMPLAINT WAS TIED TO PROGRAM SPECIFIC FEDERAL FUNDING................................................................ 19

V.     THE DISTRICT COURT COMMITTED REVESIBLE ERROR IN RECHARACTERIZING PLAINTIFF'S RETALIATION CLAIM AS ONE FOR EMPLOYMENT DISCRIMINATION IN ITS FEBRUARY 10, 2023 DECISION REQUIRING THE PLAINTIFF TO SHOW THE PRIMARY PURPOSE OF FEDERAL FINANCIAL ASSISTANCE WAS TO PROVIDE EMPLOYMENT ....... 23

CONCLUSION........................................................................................ 27

CERTIFICATE OF COMPLIANCE.......................................................... 29

# TABLE OF AUTHORITIES

**Cases:**

*Alexander v Sandoval,* 532 U.S. 275 (2001)................................................................. 13

*Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178 (8th Cir. 1998) ....................................................................................................................... 18

*Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256 (2d Cir. 1981) ......................................................................................... 19

*Bloomberg v. N.Y.C. Dep't of Educ.*, 410 F. Supp. 3d 608 (S.D.N.Y. 2019) ............. 14

*Bloomberg v. New York City Department of Education*, 2023 U.S. Dist. LEXIS 23200 (S.D.N.Y Feb. 10, 2023)..................................................................................... 18

*Carmi v. Metro. St. Louis Sewer Dist.*, 620 F.2d 672 (8th Cir. 1980) ......................... 16

*Conrail v. Darrone*, 465 U.S. 624, 104 S. Ct. 1248, 79 L. Ed. 2d 568 (1984)............ 17

*Diaz v. City Univ. of N.Y.*, No. 15 Civ. 1319 (PAC) (MHD), 2016 U.S. Dist. LEXIS 29859, 2016 WL 958684 (S.D.N.Y. Mar. 8, 2016)......................................... 14

*Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983) ......................................................................................................... 16

*Hickey v. Myers*, No. 09-CV-01307, 2010 U.S. Dist. LEXIS 18281, 2010 WL 786459 (N.D.N.Y. Mar. 2, 2010)................................................................................... 16

*Hickey v. Myers,* 852 F. Supp. 2d 257 (N.D.N.Y 2012)............................................... 13

*Johnson v. County of Nassau*, 411 F. Supp 2d 171 (E.D.N.Y. 2006)................... 18, 19

*Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192 (W.D.N.Y. 2013).. 14, 17, 24

*Peters v. Jenney*, 327 F.3d 307 (4th Cir. 2003) ..................................................... 13, 16

*United States v. Jefferson County Bd. of Educ.*, 372 F.2d 836 (5th Cir. 1966) ........... 17

*Verdi v. City of New York*, 306 F. Supp 3d 532 (S.D.N.Y 2018) ..................... *in passim*

**Statutes:**

§ 1291 ............................................................................................................................... 1

§ 2000d-3 ............................................................................................................. *in passim*

§ 2000e-3(a)................................................................................................................... 17

## JURISDICTIONAL STATEMENT

Jurisdiction in the District Court was based on there being federal questions at issue under 42 U.S.C 1983, the First Amendment and Title VI of the 1964 Civil Rights Act, 42 U.S.C. 2000d.  Plaintiff's complaint also alleged a violation of the New York City Human Rights Law (NYCHRL) as a pendent state claim. Defendants filed a motion to dismiss. [D.E. 77-79] The District Court granted the motion to dismiss but gave Plaintiff an opportunity to file a second amended complaint, especially with respect to her Title VI claim.  A.16-A.45 Plaintiff filed the motion to amend and provided a proposed Second Amended Complaint.  A.60-A.89 The District Court denied Plaintiff's motion to amend, on September 23, 2021.  A.118-A. 141. The District Court also at that time refused to exercise supplemental jurisdiction over the NYCHRL claim.  A.140-A.141. Plaintiff moved for reconsideration as to her Title VI claim.  A. 142- A. 154. On February 10, 2023 the District Court issued its order granting reconsideration but ultimately denying Plaintiff the right to file her Second Amended Complaint A.239-A.254. [D.E. 120]. By fully granting Defendants' Motion to Dismiss, the Court issued its final order from which Plaintiff timely appealed on March 10, 2023.  This court exercises jurisdiction, pursuant to 28 U.S.C.S. § 1291 as an appeal from a final order.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

In this case Plaintiff, the former principal at Park Slope Collegiate (PSC), a secondary school in Brooklyn, claims she was subjected to a retaliatory investigation and discipline shortly after she publicly complained about racial discrimination against the students in her school. This discrimination involved, *inter alia*, unequal access to Public School team sports through the NYCDOE's Public School Athletic League ("PSAL"). While all parties agree that Title VI provides for a private right of action for retaliation, the Second Circuit has not yet ruled on the level or type federal financial assistance required to be received for a Plaintiff to seek relief for retaliation claims under Title VI of the Civil Rights Act.

The District Court initially held that Plaintiff's claim was a retaliation claim, which affected her employment, as Plaintiff alleged. A.39-A.40. As a retaliation claim, as opposed to a claim for employment discrimination, the District Court recognized she need not plead that the primary purpose of the financial assistance to the New York City Department of Education (NYCDOE) was to provide employment. The District Court held, however, that Plaintiff needed to plead a "logical nexus" between the financial assistance given the NYCDOE and the sports programs about which she complained in order to state a claim for retaliation under Title VI. A. 40.

2

When Plaintiff proved to the District Court that under the Civil Rights Restoration Act of 1987 (CRRA of 1987) there was no requirement to plead "program specific" federal financial assistance in order to state a claim under Title VI, and thus no requirement for her to plead that the sports programs in the NYCDOE received federal financial assistance in order to support a Title VI claim, rather than applying the language and logic of CRRA of 1987 to her retaliation claim and eliminate any program specific pleading, the District Court recharacterized Plaintiff's complaint as one challenging an illegal employment practice under Section d-3 of Title VI which expressly includes "primary purpose" language—requiring the primary purpose of the federal funds received by NYCDOE to be used for employment. Based on that clear mischaracterization of Plaintiff's complaint as action under Title VI Section d-3 rather than under the implied retaliation clause of Title VI, which in concert with the CRRA bars program any program specific pleading requirement, the Court denied Plaintiff the right to file her SAC, as futile for failure to plead primary purpose.

Based on above, the main issue for review in this case is did the District Court err in characterizing Plaintiff's case—which alleges retaliation against her in her employment for protesting racial discrimination against her students as beneficiaries of federal financial assistance—as one for employment discrimination thereby requiring her to prove that the primary purpose of the

federal financial assistance was to provide employment in order for her protest of this discrimination to be protected under Title VI of the Civil Rights Act.

The specific issue for review is what is the proper pleading standard to be applied to state a viable Title VI retaliation claim where a Plaintiff claims Defendants retaliated against her in a manner affecting her employment in retaliation for protesting racially discriminatory actions against the students at the school where she was the principal.

## STATEMENT OF THE CASE

### Facts Relevant to the Issues for Review

Plaintiff's complaint filed on April 28, 2017 sought injunctive relief to prevent an investigation by the Office of Special Investigations (OSI) into her in retaliation for her openly protesting racial discrimination against the Black and Latino students at the Park Slope Collegiate (PSC) the secondary school where she was the principal. [D.E 1] She was not successful in seeking injunctive relief and the investigation took place. Plaintiff filed an amended complaint as of right on May 19, 2017 [D.E.38] addressing some of the issues raised during the hearing on the motion for injunctive relief. The first amended complaint (FAC) alleged the retaliatory investigation which negatively impacted her reputation and chilled her right to speak out against racial discrimination. She alleged Defendants violated her rights under the due process clause of the Fourteenth Amendment, under Title

VI of the Civil Rights Act of 1964, as well as under the First Amendment.  She

further alleged a violation of the anti- retaliation provisions of the New York City

Human Rights Law.  Plaintiff filed a proposed Second Amended Complaint

alleging removing her First Amendment claim and providing additional details

regarding Defendants receipt of federal funds.

Plaintiff's protest to the unequal allocation of sports teams to PSC with a

very high Black and Latino student body, in comparison to Millenium," which had

an almost predominately White student body and which shared the John Jay

Campus with PSC.  Plaintiff also protested segregation of the teams in the same

building, which prevented the PSC teams from including any Millenium students

and vice versa.  Plaintiff also alleged that this complaint of discriminatory

treatment of her students in sports would have gone to Attorney Robin Greenfield,

the Executive Deputy Counsel for Employment and General Practice within the

Office of the General Counsel, whose office also oversees the office of special

investigations (OSI).   Plaintiff alleges that shortly after her protest regarding racial

discrimination in the sports program, OSI started an investigation into the Plaintiff

on a complaint that had arisen the almost a year prior, but for which it was claimed

there was new information.

Plaintiff has alleged the adverse actions of subjecting her and many faculty

staff and students to an investigation which turned out to not have any supporting

evidence to sustain the charges, was humiliating and harmful to her reputation. It further led to emotional distress and a letter of reprimand for matters unrelated to the reasons for the investigation. Plaintiff also suffered significant emotional distress regarding this investigation as set forth in the complaint, as well as ongoing harassment by the DOE continuing to support the faculty member who brought forward the unsupported complaints. The investigation after the protest of race discrimination was the type of adverse action which would dissuade a reasonable principal from reporting discrimination.

None of the elements of the retaliation claim are the basis of Defendants' opposition to Plaintiff's motion to amend, The only issue is the federal funds prong. Plaintiff recites the facts of the claim above for the purpose of making clear the retaliation theory: that Plaintiff was subjected to a retaliatory investigation after engaging in acts protected under Title VI of protesting unequal allocation of sports teams to PSC based on race.

## Procedural History

## Defendants Motion to Dismiss the First Amended Complaint and the September 24, 2019 Opinion

On September 6, 2018, based on the District Court Judge's "bundling rules" Defendants filed all papers associated with Defendants motion to dismiss Plaintiff's FAC.   On September 24, 2019 the Court issued its opinion (the September 24, 2019 Opinion). A.16-A.45. See, *Bloomberg v New York City Department of Education*, 410 F. Supp 3d 608 (S.D.N.Y. 2019).  The September 24, 2019 Opinion dismissed Plaintiff's First Amendment and Due Process claims, neither of which are at issue here. With respect to Plaintiff's Title VI claim, the District Court cited *Verdi v City of New York*, 306 F. Supp 3d 532 (S.D.N.Y 2018) for the proposition that retaliation claims based on harms to a Plaintiff's employment where the complained of discrimination was against the intended beneficiaries of the federal financial assistance, were not employment discrimination claims which required allegations that the primary purpose of the federal financial assistance was to provide employment under 42 U.S.C 2000d-3. The Court did claim Plaintiff needed to plead more specific information regarding the federal funding and the actions complained of.

Because the dismissal of Plaintiff's Title VI retaliation claim was based on deficient pleading, Plaintiff filed a motion to amend the complaint to address the

alleged deficiency.   This motion to amend, along with the affirmation of counsel

and the proposed second amended complaint (SAC) were filed on November 6,

2019. [D. E.. 93, 94 and 94-1].  A.46 -A.89.  In Plaintiff's proposed SAC she stated

specifically:

> 23. ... the DOE receives federal funds pursuant to Title I of the
> Elementary and Secondary Education Act which provides
> funds to schools which have a high percentage of families
> from impoverished backgrounds.
>
> 24.  Schools qualify for Title I if a certain percentage of the
> students qualify for free or reduced lunch programs.
>
> 25.  Because over 60% of the students at [Park Slope
> Collegiate, Plaintiffs school,] qualified for free or reduced lunch
> programs, [Park Slope Collegiate] receives Title I funds for
> school wide programs.  A.55

This pleading Plaintiff asserted was specific enough to show that the

students at PSC were beneficiaries of federal assistance received by the NYCDOE.

Crucially, Plaintiff argued in her motion that her revised pleading was sufficient as

pleading as pleading "program specific" use of federal monies for sports programs

run through the PSAL of the NYCDOE, as the recipient of federal funds was not

required, and, in fact, specifically is prohibited under the Civil Rights Restoration

Act of 1987.

The proposed SAC also provided the written result of the OSI investigation,

which found the allegations against Plaintiff unsubstantiated.  More specifically,

the report stated that in March of 2017 the confidential sources for the allegations against Plaintiff were interviewed and they had no evidence to support their claims. Thus, there was no reason that the NYCDOE needed to go forward with this investigation except to be punitive to Plaintiff and the school for protesting its discriminatory treatment.

**The September 23, 2021 Opinion Denying Amendment**

On September 23, 2021 the Court denied Plaintiff's motion to amend and file the SAC. [D.E. 108] The Court specifically stated:  As discussed in the September 24, 2019 Opinion, this is not a case of Title VI employment discrimination in which a plaintiff must plausibly allege . . . that the defendant was an entity receiving federal funds . . . [and] that the federal funds have been made available primarily for providing employment.'" (Sept. 24, 2019 Opinion (D.E. 108) A. 134. (quoting *Sulehria,* 2014 WL 4716084, at *5)) Yet in denying Plaintiff's motion to amend the Court held:  program specific pleading is necessary and"[t]he proposed SAC does not plead facts showing a nexus between the federal funding allotted to DOE and [the Public School Athletic League]'s sports programs." (September 24, 2019 Opinion. at 19) A. 134-136.

**Plaintiff's Motion For Reconsideration Based On the CRRA of 1987**

On October 8, 2021 Plaintiff filed a timely motion for reconsideration of the Court's ruling of September 23, 2021 as to the Title VI claim, arguing the Court's order violated the Civil Rights Restoration Act of 1987 by requiring Plaintiff to plead "program specific" federal financial assistance in order to state a claim under Title VI.    [D.E. 109,110, 111]. A.142 -A.154.  On December 20, 2022 the Court asked for supplemental briefing regarding several cases.  [D.E 117] A.169-A. 171.

**The February 10, 2023 Reconsideration Decision.**

On February 10, 2023 the Court granted the motion for reconsideration but denied Plaintiff's motion to file her SAC.  See, *Bloomberg v New York City Department of Education*, 2023 U.S. Dist. LEXIS 23200 (S.D.N.Y Feb. 10, 2023). It held:  "**In requiring that Plaintiff plead facts showing program-specific federal funding, this Court erred[…]** " Feb. 10, 2023 decision p. 9. A. 247.  The Court went on to state: "In sum, the proposed SAC adequately alleges that the "victims of the discrimination about which [Bloomberg] complained" are the "intended beneficiaries" of a federally funded "program or activity" for purposes of Title VI. *Verdi,* 306 F. Supp. 3d. 532 at 545-46.  Accordingly, Plaintiffs motion for reconsideration is granted." February 10, 2023 decision p.11 A. 249.  Next the court went on to consider Defendants' argument that "Plaintiff's Title VI retaliation claim is barred by 42 U.S.C. § 2000d-3" and

denied the motion to amend by recasting Plaintiff's complaint as one for employment discrimination under 42 U.S.C. 2000d-3. That is, after twice finding Plaintiff was only alleging retaliation against her for protesting racial discrimination against the students in her school in the sports program, and holding that under these circumstances there was no requirement to plead the "primary purpose" of the federal financial assistance was employment, the Court reversed itself without explanation, and held that Plaintiff was really attacking an "unlawful employment practice". The Court concluded that because Bloomberg's Title VI retaliation claim is premised on the assertion that DOE engaged in an unlawful employment practice the plain language of Section 2000d-3, required Plaintiff to allege and prove that primary purpose of the federal assistance the NYC DOE receives is providing employment. Because Plaintiff had neither plead nor shown evidence of such primary purpose of the federal financial assistance to the NYCDOE was to provide employment, Plaintiff's motion to amend was denied. Such requirement, Plaintiff argues, was in error.

## SUMMARY OF THE ARGUMENT

The question raised by this case is whether, when the retaliation takes the form of harm to the person in their employment, are they prevented from

11

vindicating their right not to be retaliated against if the primary purpose of the federal financial assistance was not to provide employment.

This is a question of first impression for this Circuit. There is no dispute that Title VI provides a private right of action to persons who are retaliated against for opposing race discrimination against beneficiaries of programs which receive federal financial assistance. There is no dispute that the NYCDOE receives federal financial assistance. Plaintiff will reiterate the case law in support of a private right of action and the allegations necessary to set forth a claim for retaliation.

Plaintiff argues that in the context of retaliation, where, as here, the Plaintiff is retaliated against in her employment by being subject to an unwarranted investigation which caused humiliation, injury to reputation and discipline or threat of discipline, Plaintiff is not required to plead or show that the primary purpose of the federal financial assistance to the employer is to provide employment.

Plaintiff also argues that based on the Civil Rights Restoration Act of 1987 (CRRA) as long as the New York City Department of Education receives federal financial assistance, Plaintiff's claim for retaliation for protesting the racial discrimination against her students in the discriminatory allocation of sports teams and other discriminatory conditions is viable under Title VI without having to show that the federal financial assistance was program specific to NYCDOE's sports teams.

Plaintiff argues the District Court erred in failing to allow Plaintiff to move forward on her Title VI complaint under the SAC, as she properly plead a case for retaliation under Title VI against an entity which receives federal financial assistance. In doing so, the District Court committed reversible error by wrongly mischaracterizing Plaintiff's complaint as one for employment discrimination and applying the "primary purpose" requirement of 42 U.S.C.§ 2000d-3 to Plaintiff's retaliation claim.

## ARGUMENT

I.  **IT IS NOT DISPUTED THAT TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 ALLOWS FOR A PRIVATE RIGHT OF ACTION FOR PERSONS WHO CLAIM TO HAVE BEEN RETALIATED AGAINST FOR PROTESTING INTENTIONAL RACIAL DISCRIMINATION ONE REASONABLY BELIEVES VIOLATES TITLE VI.**

"It is well established that "private individuals may sue to enforce . . . Title VI and obtain both injunctive relief and damages." *Alexander v Sandoval,* 532 U.S. 275, (2001) A plaintiff may bring a claim under Title VI for retaliation for opposing practices that one reasonably believes constitute intentional discrimination under Title VI, *Peters v Jenney* 326 F.3d 307 (4th Cir 2003). *Hickey v Myers,* 852 F. Supp. 2d 257,266, 267. (N.D.N.Y 2012)

The District Court Judge also recognized this private right of action, holding:

"Title VI prohibits intentional discrimination based on race in any program that receives federal funding." *Verdi*, 306 F. Supp. 3d at 542 (internal [**29] quotation marks and citation omitted). "Title VI does not contain an explicit anti-retaliation provision, but courts have generally construed the statute as creating an implied private right of action for retaliation." *Palmer v. Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 199 (W.D.N.Y. 2013) (collecting cases). *Bloomberg v. N.Y.C. Dep't of Educ.*, 410 F. Supp. 3d 608, 624 (S.D.N.Y. 2019).

Defendants herein do not contest Plaintiff has such a private right of action for

retaliation for protesting discrimination.

## II.  PLAINTIFF'S COMPLAINTS AND PROPOSED AMENDMENTS IN HER SAC SET FORTH A TITLE VI RETALIATION CLAIM

Defendants do not contest the District Court's formulation a claim for

retaliation under Title VI.   As the Court stated:

 A plaintiff must "plausibly allege: '(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff; and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action.'"  *Diaz v. City Univ. of N.Y.*, No. 15 Civ. 1319 (PAC) (MHD), 2016 U.S. Dist. LEXIS 29859, 2016 WL 958684, at *2 (S.D.N.Y. Mar. 8, 2016).  Id. 624.

The allegations in Plaintiff's original complaint, the FAC and the proposed

SAC all meet this formulation as she alleges that her protests of racial

discrimination against her students with respect to sports teams were protected

activity, which was known to Defendants, and to a member of Defendants' legal

department which oversees the office of special investigations (OSI).  Plaintiff

alleges she was subjected to an unwarranted investigation by OSI which impacted

her adversely in her reputation and her employment record, caused her emotional

distress chilled her in her desire to make further protests of racism. Plaintiff further alleged that the short time between her protest and the announcement of the investigation against her shows a causal connection between her protests and the adverse actions to establish the causal relationship.

The issue in this case is not whether Plaintiff's complaints sufficiently plead a plausible claim for retaliation. The issue before the Court is whether Plaintiff's pleading that the NYC DOE received federal financial assistance and/or the students at PSC received federal financial assistance was adequately plead to state a claim for such retaliation under Title VI or whether Plaintiff was required to satisfy the primary purpose pleading requirement of Title VI, 42 U.S.C. 2000d-3 in a retaliation case. Plaintiff argues she does not.

The District Court's decision of September 24, 2021 again recognized that Plaintiff alleged a retaliation claim. The Court also did not question that Plaintiff plead and supported the elements of a retaliation claim. The District Court also, rejected the Defendants' argument to apply the "employment discrimination" pleading requirements for federal funding, that the primary purpose of the federal financial assistance for employment. That is, employment discrimination cases under Title VI are subject to 42 U.S.C. 2000d-3. This section of Title VI states:

> Nothing contained in this subchapter shall be construed to authorize action under this title by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except

where a primary objective of the Federal financial assistance is to provide employment.

In rejecting the application of pleading federal financial assistance requirements in Title VI employment discrimination cases to retaliation cases the District Court adopted the reasoning of the Court in *Verdi v City of New York, supra,* which relied on *Hickey v Myers* supra. The Court stated:

Although the Second Circuit has yet to consider this question, a [**15] few district courts have. *Hickey v. Myers*, for example, involved a college dean who had been removed from his position for opposing an allegedly racially-discriminatory admissions policy. No. 09-CV-01307, 2010 U.S. Dist. LEXIS 18281, 2010 WL 786459, at *1-2 (N.D.N.Y. Mar. 2, 2010). The *Hickey* court rejected the defendant's argument that the plaintiff must prove that a primary objective of the school's federal funding was to provide employment: "Plaintiff does not allege employment discrimination but instead alleges that he was retaliated against because he spoke out against racial discrimination in the school's admission policy. This argument does not implicate § 2000d-3." 2010 U.S. Dist. LEXIS 18281, [WL] at *3 n.1 (N.D.N.Y. Mar. 2, 2010).

This Court agrees with *Hickey* because its approach effectuates the well-established precedent of providing "an implied private right of action to enforce [Title VI's] core prohibition of discrimination in federally-financed programs." *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) (citing *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 610-611, 103 S. Ct. 3221, 77 L. Ed. 2d 866 (1983)).

At the heart of a Title VI retaliation claim could be the very individuals whom the statutory scheme was intended to protect, so it is important to distinguish between garden variety retaliation-for-complaining-about-employment-discrimination claims, on the one hand, and retaliation claims in which the complainant's employment is affected based on complaints regarding nonemployment [**16] discrimination against others, on the other. Section 2000d-3 "ma[d]e it clear that discrimination in employment which does not affect [the] intended beneficiaries of federal assistance is not within the reach of title VI," *Carmi v. Metro. St. Louis Sewer Dist.*, 620 F.2d 672, 674 & n.4 (8th Cir.

1980) (citing *United States v. Jefferson County Bd. of Educ.*, 372 F.2d 836, 882-83 (5th Cir. 1966)), *abrogated on other grounds by CONRAIL v. Darrone*, 465 U.S. 624, 104 S. Ct. 1248, 79 L. Ed. 2d 568 (1984). In contrast, recognizing a retaliation claim based on harms to a claimant's employment where the complained-of discrimination *was* against the intended beneficiaries of the relevant federal funding would vindicate rather than undermine the intent and spirit of § 2000d-3. Accordingly, this Court finds that the "primary objective of providing employment" requirement does not apply when analyzing an employment-based retaliation claim where the victims of the discrimination about which the claimant [*546] complained (and for which complaining the claimant suffered retaliation) are the intended beneficiaries of the federal funding. *Verdi* supra at 545, 546

This reasoning makes absolute sense. Typically, in the employment discrimination context, a person claiming retaliation for engaging in protected activity would be protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C 2000e. They would not need to resort to Title VI unless they had failed to exhaust administrative remedies.

This fact was noted in *Palmer v. Penfield Cent. Sch. Dist., supra* where the court held that the plaintiff could not state a claim for retaliation under Title VII where the protected activity is not a complaint about a discriminatory employment practice. The Court, in rejecting the Plaintiff's Title VII retaliation case, specifically stated:

> "Protected activity" includes opposition to a discriminatory employment practice or participation in any investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). Courts have repeatedly held, however, that a teacher's complaints about alleged discrimination directed

17

against a student do not constitute opposition to an
unlawful *employment* practice. *See, e.g., Artis v. Francis Howell North Band
Booster Ass'n, Inc.*, 161 F.3d 1178, 1183 (8th Cir. 1998) (teacher's
complaints that school principal had treated black student less favorably than
white student were not protected by Title VII); (collected cases) Id. 196.


**III.    THE DISTRICT COURT'S SEPTEMEBER 24, 2019 OPINION
         AFTER REJECTING THE PRIMARY PURPOSE TEST
         ERRONEOUSLY REQUIRED PLAINTIFF TO STATE A
         LOGICAL NEXUS BETWEEN THE ACTION COMPLAINED OF
         AND THE FEDERAL FINANCIAL ASSISTANCE**

While the District Court in its September 24, 2019 decision found the reasoning

in *Verdi* to be persuasive, the decision mischaracterizes what the Court held in

*Verdi* regarding the pleading standard as to federal financial assistance.  In *Verdi,*

the Court rejected mere conclusory allegations regarding federal financial

assistance.  In the District Court's September 24, 2019 decision, after finding *Verdi*

persuasive the Court stated:

> "but that reasoning does not obviate the need for Plaintiff to plead a "logical
> nexus between the use of federal funds and the practice to which [the] action
> is directed." *Johnson*, 411 F. Supp. 2d at 175 (internal quotation marks and
> citation omitted). Accordingly, [*626] Plaintiff must plead a nexus between
> the use of federal funds and the alleged discriminatory practice about which
> Plaintiff allegedly complained, and for which complaints she allegedly
> suffered retaliation: discrimination in the PSAL's sports programs.
> *Bloomberg v. N.Y.C. Dep't of Educ.*, 410 F. Supp. 3d 608, 625-26 (S.D.N.Y.
> 2019)

In referring to *Johnson v County of Nassau*, 411 F. Supp 2d 171 (E.D.N.Y.

2006) and adopting the logical nexus requirement the District Court was erroneously

reintroducing the pleading standards for employment discrimination into retaliation claims. That is, *Johnson* was an employment discrimination case under 2000d-3 in which Plaintiff was required to show that the primary objective of the federal assistance was to provide employment to the County    It is in the context of employment discrimination cases under 42 U.S.C 2000d-3 that the Court first used the term "logical nexus" between the federal assistance and the practice toward which the agency action is directed. The court in *Johnson* was citing to § 2000d-3 when it said:

> This section [2000d-3] essentially "requires a logical nexus between the use of federal funds and the practice toward which agency action is directed." *Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 276 (2d Cir. 1981). Although the statute speaks only of agency action, the Second Circuit has held that the logical nexus requirement [**6] applies to private actions as well. *Id.* "Thus, for a claimant to recover under Title VI against an employer for discriminatory employment practices, a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment." Id, 175.

All cases cited in the District Court's September 24, 2019 decision to support the "logical nexus" requirement were employment discrimination cases which arise only out of 2000d-3 and with requirements of that statute.

IV.    **THE DISTRICT COURT DID NOT ACCURATELY CONSIDER THE IMPACT OF THE CIVIL RIGHTS RESTORATION ACT OF 1987 IN ITS DISCUSSION OF THE PLEADING STANDARD FOR TITLE VI IN ITS SEPTEMBER 23, 2021 DECISION DENYING PLAINTIFF'S MOTION TO AMEND TO FILE THE SAC, HOLDING THAT PLAINTIFF HAD TO PLEAD THAT HER**

**RETALIATION COMPLAINT WAS TIED TO PROGRAM SPECIFIC FEDERAL FUNDING**

While the Court in *Verdi supra*, did hold that conclusory allegations regarding receipt of federal assistance were not sufficient to state whether the discrimination the plaintiff opposed was against the intended beneficiaries of the federal funding, there was no mention in the *Verdi* decision of a logical nexus requirement. Nor did the Court discuss the impact of Civil Rights Restoration Act of 1987 on the specificity necessary in pleading the receipt of federal assistance by the New York City Department of Education. Indeed, it appears from the pleadings that no one raised the issue of the Civil Rights Restoration Act of 1987 in *Verdi*.

When Plaintiff filed her motion to amend her FAC to file a proposed SAC, she alleged at paragraphs 23-25 that the NYC DOE receives federal funds pursuant the Title I of the Elementary and Secondary Education Act which provides funds to schools which have a high percentage of families from impoverished backgrounds. She further alleged that schools qualify for Title I funds if a certain percentage of the students qualify for free or reduced lunch programs, and that because over 60% of the students at [Park Slope Collegiate, Plaintiff's school,] qualified for free or reduced lunch programs, [Park Slope Collegiate] receives Title I funds for school wide programs. These facts showed the discrimination Plaintiff opposed was against the students at PSC who were intended beneficiaries of the federal funding as the Court in *Verdi* had stated.

In the motion amend to file the SAC, Plaintiff referred the Court to the Civil Rights Restoration Act of 1987 and argued that a logical nexus test was a requirement that the federal funds be "program specific" in order to support a Title VI claim and that the CRRA removed the requirement for "program specific" pleading. The District Court, however, again recognizing Plaintiff's case was one for retaliation and not employment discrimination, denied Plaintiff's motion to amend alleging that a Title VI plaintiff is required to plead program specific federal funding. Decision page 18, A.135.

In 1987, Congress passed the Civil Rights Restoration Act in part because the Supreme Court had made various rulings regarding the reach of Title VI and other laws where federal financial assistance had created rights against discrimination. The Congressional findings included:

> The Congress finds that --
> (1) certain aspects of recent decisions and opinions of the Supreme Court have unduly narrowed or cast doubt upon the broad application of title IX of the Education Amendments of 1972, section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and title VI of the Civil Rights Act of 1964; and
> (2) legislative action is necessary to restore the prior consistent and long-standing executive branch interpretation and broad, institution-wide application of those laws as previously administered.
>
> CIVIL RIGHTS RESTORATION ACT OF 1987, 1988 Enacted S. 557, 100 Enacted S. 557, 102 Stat. 28, 32-29, 100 P.L. 259, 1988 Enacted S. 557, 100 Enacted S. 557
>
> As to Title VI, the act states:

For the purposes of this title, the term **'program or activity' and the term 'program' mean all of the operations of** --

"(1)(A) a department, agency, special purpose district, or other instrumentality of a State or of a local government; or

"(B) the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government;

"(2)(A) a college, university, or other postsecondary institution, or a public system of higher education; or

**"(B) a local educational agency (as defined in section 198(a)(10) of the Elementary and Secondary Education Act of 1965), system of vocational education, or other school system;**

"(3)(A) an entire corporation, partnership, or other private organization, or an entire sole proprietorship --

"(i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or

"(ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation; or

"(B) the entire plant or other comparable, geographically separate facility to which Federal financial assistance is extended, in the case of any other corporation, partnership, private organization, or sole proprietorship; or

"(4) any other entity which is established by two or more of the entities described in paragraph (1), (2), or (3);

any part of which is extended Federal financial assistance.".

Based on the clear language of the Civil Rights Restoration Act of 1987,

Plaintiff argued on reconsideration that the District Court erred in the September

23, 2021 ruling that Plaintiff was required to show program specific funding of the

NYCDOE sports programs before she could have a viable claim for Title VI

retaliation. Specifically, the Civil Rights Restoration Act of 1987 prohibits the

Court from requiring a plaintiff to show any kind of connection between the

federal assistance a school system receives and a particular program or activity

alleged to be discriminatory or protested as discriminatory.  Federal funding to the

School District prohibits discrimination in all operations of the school system,

from sports to arts.    Indeed, it is precisely this sort of narrow reading of

"program" or "activity" which lead to the passage of the Civil Rights Restoration

Act in the first instance.  By the District Court requiring Plaintiff to allege program

specific federal assistance to NYC DOE's sports programs, the District Court's

September 23, 2021 ruling contravened the CRRA of 1987.

**V.    THE DISTRICT COURT COMMITTED REVESIBLE ERROR IN RECHARACTERIZING PLAINTIFF'S RETALIATION CLAIM AS ONE FOR EMPLOYMENT DISCRIMINATION IN ITS FEBRUARY 10, 2023 DECISION REQUIRING THE PLAINTIFF TO SHOW THE PRIMARY PURPOSE OF FEDERAL FINANCIAL ASSISTANCE WAS TO PROVIDE EMPLOYMENT**

From the time Plaintiff filed her complaint in April of 2017 to the present

she has never characterized her complaint as one for employment discrimination.

She was not challenging an "employment practice".    The District Court in both

its decisions of September 24, 2019 and September 23, 2021 agreed she was not

alleging employment discrimination or attacking an "employment practice", and as

such Plaintiff need not plead the primary purpose of the federal financial assistance

to NYCDOE was providing employment.

In both the District Court's decisions of September 24, 2019 and September

23, 2021, the District Court recognized Plaintiff was seeking redress under Title VI

for the imposition of a retaliatory investigation into her activities in the school in

retaliation for her protesting intentional race discrimination against her Black and Latino students in the denial of their equal opportunities to participate in sports programs at the NYCDOE. The investigation against her was meant to and did cause Plaintiff humiliation, reputational harm, and emotional distress. It was designed to and did silence her from being outspoken against such discrimination. Her claim letter to the NYC DOE was not to vindicate her own rights but those of the students, who were deprived on the basis of race equal access to sports programs. Her complaint to the Court seeks redress for the retaliation she suffered which was aimed at silencing her protests of discrimination against Black and Latino the students.

Plaintiff has never alleged that she was subject to discriminatory disparate treatment based on her race, age, sex, religion or national origin any other protected category with respect to the decision to investigate her. At no time did Plaintiff invoke Title VII for employment discrimination. Indeed, had she tried to invoke the anti-retaliatory provisions of Title VII for her case, she would have been found not to have stated a claim as these anti retaliation provisions apply only to complaints about discriminatory employment of Title VII refer only to protests of discriminatory employment actions, *cf. Palmer v Penfield Cent. School Dist.*, s*upra.*

The facts and theories in this case have not changed since 2017. What did change was Plaintiff arguing successfully that the Civil Rights Restoration Act as to Title VI applies to all programs and activities of an educational institution which receives federal financial assistance, and a Title VI Plaintiff is not required to plead program specific federal financial assistance to support a Title VI discrimination claim. Even though it is uncontested that a plaintiff may bring a claim under Title VI for retaliation for opposing practices that one reasonably believes constitute intentional discrimination under Title VI, there is no basis in law to distinguish between the federal financial assistance necessary for a violation of Title VI and federal financial assistance necessary to support a claim for retaliation for protesting a violation of Title VI. The fact that the retaliatory act implicates a Plaintiff's employment does not magically turn her retaliation claim into an employment discrimination claim or an attack on an unlawful employment practice just because the retaliation impacts aspects of her employment.

The reason Title VI implies a right not to be retaliated against for protesting race discrimination against intended beneficiaries of federal financial assistance is to ensure protests of discrimination are not stymied by retaliatory actions which dissuade employees from reporting or protesting what they reasonably believe are acts of discrimination against beneficiaries of federal financial assistance. Yet in the District Court's February 10, 2023 decision, the Court without reasoned

explanation reversed course and claimed Plaintiff's retaliation case is really one for employment discrimination governed by 42 U.S.C. 2000d-3. This action effectively closed the Court door to Plaintiff as she did not plead, and, in reality, cannot plead that the primary purpose of the federal financial assistance to the NYCDOE is to provide employment.

The Court's claim that she is suing to vindicate her rights and not the rights of the students, has no basis in fact. It was for the students she sought an end to unequal allocation of sports teams. It was for the students that she sought an end to segregated sports teams. She paid a heavy price for doing so.

The rationales stated in *Hickey v Myers, supra*, and *Verdi v New York City supra*, that retaliation which affects a protester's employment is not governed by the "primary purpose" of federal financial assistance being to provide employment, is consistent with the purpose of protecting those who protest discrimination from being retaliated against by allowing them the ability to seek redress for such retaliation. The District Court provided no explanation for abandoning those rationales, except to say that 2000d-3 relates to employment and the retaliation against Plaintiff affected her employment, when she allegedly claimed the investigation into her was an "illegal employment practice". However, nowhere in her complaint does Plaintiff claim that investigations *per se* are "illegal employment actions."

26

Text may not be divorced from context. In light of Congress's decision to not allow any federal funds to be used by institutions for racial discrimination in any programs created by those institutions, by not requiring program specific pleading as to the discrimination, so too must the law prevent retaliation against those who report, or protest against such discrimination be able to sue for retaliation without program specific pleading or pleading regarding the "primary purpose" of the federal assistance to be for employment. The District Court having blocked Plaintiff from seeking redress for retaliation Plaintiff submits was reversible error.

## CONCLUSION

For the foregoing reasons, Plaintiff requests this Court reverse the District Court's holding that Plaintiff must plead that the primary purpose of federal financial assistance to the NYCDOE was for employment in order to state a viable claim for Title VI retaliation. Plaintiff requests the Court find there can and should be no program specific pleading requirement as to federal funds to the NYCDOE for Plaintiff to have a viable claim for Title VI retaliation just as there would be no program specific pleading requirement for a Title VI claim itself. Plaintiff further requests the Court instruct the District Court to allow Plaintiff to file her SAC and move forward with her case.

27

Dated:  August 23, 2022

                        Respectfully Submitted,

                        **JULIEN MIRER SINGLA & GOLDSTEIN PLLC**

                        /s/ Jeanne Mirer

                        _____

                        By:  Jeanne Mirer
                        1 Whitehall Street, 16th Floor
                        New York, New York 10004
                        (212) 231-2235
                        jmirer@workingpeopleslaw.com
                        *Attorneys for Plaintiff-Appellant*

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B). As measured by Microsoft Word 2013, the word-processing system used to prepare it, this brief contains 6,563 words.

## CERTIFICATE OF SERVICE

I hereby certify that one ( 1) copy of the following:

APPELLANT'S BRIEF AND APPELLANTS' APPENDIX

was served upon Appellee's counsel via the Court's ECF System, as indicated, this 23rd day of June, 2023, upon the following:

Date: June 23, 2023

/s/ Jeanne Mirer

_____

Jeanne Mirer
*Attorney for Appellant*