# 23-343

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

JILL BLOOMBERG,

Plaintiff-Appellant

v.

THE NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARINA,

Defendants-Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
APPELLANT URGING REVERSAL

_____

DAMIAN WILLIAMS
  United States Attorney

DAVID J. KENNEDY
BENJAMIN H. TORRANCE
ADAM M. GITLIN
  Assistant United States Attorneys
  U.S. Attorney's Office
  Southern District of New York
  86 Chambers Street
  3rd Floor
  New York, NY 10007

KRISTEN CLARKE
  Assistant Attorney General

NICOLAS Y. RILEY
NOAH B. BOKAT-LINDELL
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 598-0243

## TABLE OF CONTENTS

**PAGE**

INTEREST OF THE UNITED STATES .................................................. 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE ............................................................. 3

    *1.*    *Statutory Background* ........................................................ 3

    *2.*    *The Present Controversy* .................................................. 4

SUMMARY OF ARGUMENT ........................................................... 7

ARGUMENT

    I      THIS COURT SHOULD EXPLICITLY HOLD THAT
             TITLE VI ENCOMPASSES RETALIATION CLAIMS .................. 9

    II     SECTION 604 DOES NOT APPLY TO CLAIMS OF
             RETALIATION AGAINST AN EMPLOYEE FOR
             COMPLAINING ABOUT NON-EMPLOYMENT-RELATED
             DISCRIMINATION COVERED BY TITLE VI ............................. 16

           *A.*     *Section 604 Applies Only Where A Retaliation Plaintiff's*
                 *Protected Activity Concerns Race Discrimination In The*
                 *Defendant's Employment Practices* ........................................ 16

           *B.*     *Section 604 Reaches Only Employment Practices*
                 *Encompassed By Title VII* ...................................................... 22

           *C.*     *Section 604 Does Not Apply To Title VI Claims*
                 *Concerning Discriminatory Employment Practices*
                 *That Would Subject Primary Beneficiaries Of Federal*
                 *Funding To Discrimination* .................................................... 25

CONCLUSION ................................................................................ 27

**TABLE OF CONTENTS (continued):**

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITES

**CASES:**                                                      **PAGE**

*Ahern* v. *Board of Educ. of City of Chi.*, 133 F.3d 975 (7th Cir. 1998) ........... 25-26

*Association Against Discrimination in Emp., Inc.* v. *City of Bridgeport*,
    647 F.2d 256 (2d Cir. 1981), cert. denied, 455 U.S. 988 (1982) .................17

*Azar* v. *Allina Health Servs.*, 139 S. Ct. 1804 (2019)..............................................23

*Barker* v. *Riverside Cnty. Off. of Educ.*, 584 F.3d 821 (9th Cir. 2009)...................14

*Beckel* v. *Wal-Mart Assocs., Inc.*, 301 F.3d 621 (7th Cir. 2002)............................16

*Bird* v. *Regents of New N.M. State Univ.*,
    619 F. App'x 733 (10th Cir. 2015)....................................................................9

*Caulfield* v. *Board of Educ. of City of N.Y.*, 583 F.2d 605 (2d Cir. 1978) ..............25

*Caulfield* v. *Board of Educ. of City of N.Y.*, 632 F.2d 999 (2d Cir. 1980),
    cert. denied, 450 U.S. 1030 (1981)............................................................ 25-26

*CBOCS W., Inc.* v. *Humphries*, 553 U.S. 442 (2008)...............................................12

*Cooper* v. *New York State Dep't of Lab.*,
    819 F.3d 678 (2d Cir. 2016) (per curiam) ....................................... 20, 22, 24

*DT* v. *Somers Cent. Sch. Dist.*, 348 F. App'x 697 (2d Cir. 2009) ...........................11

*Estate of Landers* v. *Leavitt*, 545 F.3d 98 (2d Cir. 2008),
    cert. denied, 557 U.S. 937 (2009)....................................................................13

*Farrukh* v. *University of S. Fla. Bd. of Trs.*, No. 21-13345,
    2022 WL 3973703 (11th Cir. Sept. 1, 2022)....................................................9

*Franklin* v. *Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992)...................................14

*Galper* v. *JP Morgan Chase Bank, N.A.*, 802 F.3d 437 (2d Cir. 2015) .................17

**CASES (continued):**                                                    **PAGE**

*Garland* v. *Aleman Gonzalez*, 142 S. Ct. 2057 (2022) .............................................19

*Gomez-Perez* v. *Potter*, 553 U.S. 474 (2008) ..........................................................12

*Gordon* v. *Softech Int'l, Inc.*, 726 F.3d 42 (2d Cir. 2013),
    cert. denied, 571 U.S. 1129 (2014)..................................................................21

*Greathouse* v. *JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015) ....................................13

*Hickey* v. *Myers*, No. 09-cv-01307, 2010 WL 786459
    (N.D.N.Y. Mar. 2, 2010) ........................................................ 11, 19

*Holcomb* v. *Iona Coll.*, 521 F.3d 130 (2d Cir. 2008) .............................................21

*Jackson* v. *Birmingham Bd. of Educ.*, 544 U.S. 167 (2005)........................... *passim*

*Johnson* v. *Transportation Agency*, 480 U.S. 616 (1987) ............................ 3, 21-22

*Jones* v. *Southern Univ.*, 834 F. App'x 919 (5th Cir. 2020)....................................9

*Junhao Su* v. *East Ill. Univ.*, 565 F. App'x 520 (7th Cir. 2014)...............................9

*Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
    716 F.3d 10 (2d Cir. 2013) ............................................................16

*Linza* v. *Saul*, 990 F.3d 243 (2d Cir. 2021) .........................................................19

*Mayers* v. *Campbell*, 87 F. App'x 467 (6th Cir. 2003),
    cert. denied, 543 U.S. 582 (2004)..................................................25

*McCormick ex rel. McCormick* v. *School Dist. of Mamaroneck*,
    370 F.3d 275 (2d Cir. 2004) ...................................................... 26-27

*McCullough* v. *Board of Regents of the Univ. Sys. of Ga.*,
    623 F. App'x 980 (11th Cir. 2015)..................................................11

*Morales* v. *New York State Dep't of Lab.*, No. 5:06-cv-899,
    2010 WL 11681390 (N.D.N.Y. Apr. 21, 2010) ..............................................11

**CASES (continued):** **PAGE**

*Moyo* v. *Gomez*, 40 F.3d 982 (9th Cir. 1994),
  cert. denied, 513 U.S. 1081 (1995)....................................................24

*Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998) ...........................23

*Palmer* v. *Penfield Cent. Sch. Dist.*,
  918 F. Supp. 2d 192 (W.D.N.Y. 2013)........................................................20

*Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d 81 (2d Cir. 2011) ...........................................................15

*Peters* v. *Jenney*, 327 F.3d 307 (4th Cir. 2003)....................................9, 15

*Ross* v. *Michigan State Univ. Bd. of Trs.*, No. 11-2278,
  2012 WL 3240261 (6th Cir. June 20, 2012).....................................................9

*Sauers* v. *Salt Lake Cnty.*, 1 F.3d 1122 (10th Cir. 1993)........................................16

*Sebelius* v. *Auburn Reg'l Med. Ctr.*, 568 U.S. 145 (2013) .......................................15

*Sewell* v. *Monroe City Sch. Bd.*, 974 F.3d 577 (5th Cir. 2020) ...............................11

*Shi* v. *Carlson*, 399 F. App'x 254 (9th Cir. 2010) ........................................9

*Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229 (1969)............................. 12, 18

*T.S. ex rel. T.M.S.* v. *Heart of CarDon, LLC*, 43 F.4th 737 (7th Cir. 2022) ..........27

*University of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338 (2013) .................. 12, 18

*Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015)..... 11-12, 15

*Vengalattore* v. *Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) ......................................10

*Verdi* v. *City of New York*, 306 F. Supp. 3d 532 (S.D.N.Y. 2018).........................19

*Weber* v. *Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000) .................................14

**CASES (continued):**                                                          **PAGE**

*Whitfield* v. *Notre Dame Middle Sch.*, 412 F. App'x 517 (3d Cir. 2011)................9

*Wilbanks* v. *Ypsilanti Cmty., Schs.*, 742 F. App'x 84 (6th Cir. 2018)....................14

*Williams* v. *City Univ. of N.Y.*, 633 F. App'x 541 (2d Cir. 2015) ...........................9

*Wimmer* v. *Suffolk Cnty. Police Dep't*, 176 F.3d 125,
    cert. denied, 528 U.S. 964 (1999)....................................................................24

*Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012)....................3, 11

**STATUTES:**

Civil Rights Act
    Title VI
                42 U.S.C. 2000d ........................................................ 2-3, 11
                42 U.S.C. 2000d-1 ..................................................... 1-2, 4
                42 U.S.C. 2000d-3 ................................................... *passim*
                42 U.S.C. 2000d-4a ................................................. 14, 26
                42 U.S.C. 2000d-5 .........................................................14
                42 U.S.C. 2000d-6 .........................................................14
                42 U.S.C. 2000d-7 .........................................................14

    Title VII
                42 U.S.C. 2000e-2 .........................................................22
                42 U.S.C. 2000e-2(a)(1) .............................................. 22-23
                42 U.S.C. 2000e-2(b)-(d) ...............................................22
                42 U.S.C. 2000e-2(*l*) .....................................................23
                42 U.S.C. 2000e-3 .........................................................22
                42 U.S.C. 2000e-3(a) .....................................................23
                42 U.S.C. 2000e-3(b) .....................................................23

42 U.S.C. 1981 ...............................................................................12

42 U.S.C. 1982 ...............................................................................12

Civil Rights Restoration Act of 1987,
    Pub. L. No. 100-259, § 6, 102 Stat. 31 (1988) ...............................14

**STATUTES (continued):**                                                             **PAGE**

Elementary and Secondary Education Amendments of 1966,
  Pub. L. No. 89-750, Tit. I, Pt. H, § 182, 80 Stat. 1209...................................14

Elementary and Secondary Education Amendments of 1969,
  Pub. L. No. 91-230, § 2, 84 Stat. 121 (1970) .................................................14

Rehabilitation Act Amendments of 1986,
  Pub. L. No. 99-506, Tit. X, § 1003, 100 Stat. 1845 ......................................14

**REGULATIONS:**

3 C.F.R. 177 (1965 Supp.), Exec. Order 11,247.......................................13

3 C.F.R. 298 (1981), Exec. Order No. 12,250 ...........................................1

28 C.F.R. 0.51 ...............................................................................................1

34 C.F.R. Pt. 100............................................................................................2

34 C.F.R. 100.3(c)(3) ...................................................................................26

34 C.F.R. 100.7(e)......................................................................................4, 13

45 C.F.R. 80.7(e) ..........................................................................................13

29 Fed. Reg. 16,295 (Dec. 4, 1964) ...........................................................13

29 Fed. Reg. 16,298 (Dec. 4, 1964) ...........................................................13

29 Fed. Reg. 19,293 (Dec. 31, 1964) .........................................................13

29 Fed. Reg. 19,302 (Dec. 31, 1964) .........................................................13

30 Fed. Reg. 299 (Jan. 9, 1965) .................................................................13

30 Fed. Reg. 315 (Jan. 9, 1965) .................................................................13

30 Fed. Reg. 309 (Jan. 9, 1965) .................................................................13

**REGULATIONS (continued):** **PAGE**

31 Fed. Reg. 10,267 (July 29, 1966)......................................................13

45 Fed. Reg. 30,922 (May 9, 1980) .......................................................13

68 Fed. Reg. 10,907 (Mar. 6, 2003).......................................................13

**LEGISLATIVE HISTORY:**

110 Cong. Rec. 11,615 (1964) .........................................................22-23

**RULE:**

Fed. R. App. P. 29(a) ................................................................... 2

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

———————————

No. 23-343

JILL BLOOMBERG,

Plaintiff-Appellant

v.

THE NEW YORK CITY DEPARTMENT OF EDUCATION,
CARMEN FARINA,

Defendants-Appellees

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
APPELLANT URGING REVERSAL

———————————

**INTEREST OF THE UNITED STATES**

This appeal concerns the interpretation of Title VI of the Civil Rights Act of

1964 and the scope of liability for retaliation claims under that statute. The

Department of Justice (DOJ) has authority to enforce Title VI in federal court, see

42 U.S.C. 2000d-1, and coordinates the implementation and enforcement of Title

VI by federal agencies, see Exec. Order No. 12,250, 3 C.F.R. 298 (1981); 28

C.F.R. 0.51. Additionally, the Department of Education (ED) ensures compliance

with Title VI in the operation of programs and activities that receive its financial

- 2 -

assistance, such as public schools and colleges and universities.  See 42 U.S.C. 2000d-1.  And like other funds-granting agencies, ED promulgates regulations interpreting Title VI.  See 34 C.F.R. Pt. 100.  The United States thus has a significant interest in the resolution of this appeal.

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

Title VI provides:  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. 2000d.  Section 604 of the Act limits Title VI liability "with respect to any employment practice of any employer."  42 U.S.C. 2000d-3.  The United States will address the following questions:

1.  Whether retaliation claims are cognizable under Title VI.

2.  Whether Section 604 applies to a Title VI claim of retaliation for making a complaint about race discrimination when the complaint does not concern an "employment practice" within the meaning of Title VII and could not give rise to a Title VII claim.[1]

---

[1]  The United States takes no position on any issue not addressed herein.

- 3 -

# STATEMENT OF THE CASE

*1.    Statutory Background*

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. 2000d.  "Public educational institutions that receive federal funds are subject to this mandate." *Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 664 (2d Cir. 2012).

In crafting the Civil Rights Act of 1964, Congress sought "to clarify that 'it was not intended that [T]itle VI would impinge on [T]itle VII,'" which sets out its own procedures and standards for addressing employment discrimination. *Johnson* v. *Transportation Agency*, 480 U.S. 616, 628 n.6 (1987) (alterations in original; citation omitted).  Congress therefore added Section 604 to the Act. *Ibid.*  This provision states:  "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. 2000d-3.

Congress also required each federal funds-granting agency to implement Title VI's non-discrimination principle "by issuing rules, regulations, or orders of

- 4 -

general applicability."  42 U.S.C. 2000d-1.  Using that authority, ED adopted a

regulation that prohibits retaliation "for the purpose of interfering with any right or

privilege secured by section 601 of the Act," or because someone "has made a

complaint, testified, assisted, or participated in any manner in an [agency]

investigation, proceeding or hearing."  34 C.F.R. 100.7(e).

2.    *The Present Controversy*[2]

a.  Plaintiff Jill Bloomberg was the principal of Park Slope Collegiate, one of

several secondary schools located on the John Jay Campus in Brooklyn.  Doc. 94-

1, at 2.  In January 2017, Bloomberg emailed the CEO of the New York City

Department of Education's (DOE) sports programs and the Superintendent of the

New York City Public Schools accusing DOE of race discrimination in the

formulation of its sports programs.  Doc. 94-1, at 6, 13.  Despite being housed in

the same building as the other John Jay Campus schools, the selective Millennium

Brooklyn High School operated a separate sports program from Park Slope

Collegiate and the other three schools on the John Jay Campus.  Doc. 94-1, at 13.

Millennium Brooklyn instead played exclusively on teams with Millennium High

School, its sister school in Manhattan.  Doc. 94-1, at 13.  Bloomberg complained

that the schools in the John Jay Campus sports program had significantly higher

---

[2]  The following alleged facts are taken from the Proposed Second Amended
Complaint.  See Doc. 94-1.  "Doc. __" refers to the docket entry of documents
filed in the district court, No. 1:17-cv-03136 (S.D.N.Y.).

- 5 -

enrollment than those in the Millennium High School sports program, with a far higher percentage of Black and Hispanic students, and yet had been allocated far fewer sports teams. Doc. 94-1, at 13-14. Bloomberg "sought [the athletic league's] help in uniting and thereby desegregating and equalizing the teams." Doc. 94-1, at 13.

In March 2017, within six weeks of receiving Bloomberg's complaint, DOE informed Bloomberg that she was under investigation for engaging in prohibited political activities on school grounds. Doc. 94-1, at 15-16. Specifically, DOE informed her, the investigation was based on a confidential complaint filed ten months earlier accusing her of recruiting students to a communist organization during school hours. Doc. 94-1, at 16-17.

DOE's investigation ended in August 2017. Doc. 94-1, at 24. In its report, DOE admitted that it had known by March 2017 that the complainant lacked any evidence to support the communist-recruitment claim. Doc. 94-1, at 24. In fact, DOE acknowledged, it really had investigated Bloomberg based on allegations that she had held an unsanctioned May Day bake sale. Doc. 94-1, at 24. But it found that these charges were similarly unsupported and determined that Bloomberg had only committed what "amounted to three alleged clerical mistakes." Doc. 94-1, at 25. Bloomberg later received a written reprimand. Doc. 94-1, at 25.

- 6 -

b.  In April 2017, while the investigation was still ongoing, Bloomberg sued DOE and its then-chancellor (collectively, DOE), alleging violations of Title VI, the First Amendment, and the New York City Human Rights Law.  Doc. 1, at 3, 16-20.  The following month, she filed an amended complaint, adding a due process claim.  Doc. 39, at 24-26.

The district court dismissed the complaint in September 2019.  Doc. 89.  As to the Title VI claim, it found "persuasive" the reasoning of another district court, which held that Section 604 does not bar retaliation claims by an employee for complaining about race discrimination against intended beneficiaries of federal funding even when the recipient achieves the retaliation using its authority as an employer.  Doc. 89, at 25.[3]  But the court nevertheless dismissed Bloomberg's Title VI claim for failing to plead a "nexus" between the "use of federal funds" and the sports programs about which she complained.  Doc. 89, at 25.

Bloomberg then sought leave to file a Proposed Second Amended Complaint (PSAC) (Doc. 94-1), which the district court denied (Doc. 108).  The court held that the PSAC still failed to plead a nexus between federal funding and the sports programs.  Doc. 108, at 18.

---

[3]  This brief uses the phrase "race discrimination" as a shorthand for any of the forms of discrimination Title VI prohibits.

Bloomberg moved for reconsideration and again sought leave to file the PSAC. Doc. 109. Reexamining Bloomberg's Title VI claim, the court acknowledged that the Civil Rights Restoration Act of 1987 (CRRA) "prohibits courts from requiring proof of program-specific federal funding" and admitted that it had erred by requiring such a showing. Doc. 120, at 9. But the court again denied leave to file the PSAC. Doc. 120, at 16. In a direct reversal of its prior ruling, the court reasoned that Section 604 barred the Title VI claim because Bloomberg "complains that DOE engaged in an unlawful 'employment practice'— retaliation—when it opened an investigation into whether" she had violated employment regulations. Doc. 120, at 15. Bloomberg timely appealed. Doc. 121.

## SUMMARY OF ARGUMENT

As the district court correctly recognized, Title VI authorizes retaliation claims against recipients of federal financial assistance. Title VI's text is indistinguishable from that of Title IX and other anti-discrimination laws that the Supreme Court has already held prohibit retaliation. Administrative regulations, too, have banned retaliation across federal funds-granting agencies since Title VI's inception, and Congress has ratified these government-wide regulations by amending Title VI repeatedly without contradicting them. This Court should hold that Title VI contains a cause of action for retaliation and lay out its elements for district courts to apply, including the district court here on remand.

- 8 -

The district court erred, however, in holding that Section 604 precludes Bloomberg from asserting a valid Title VI retaliation claim merely because DOE used its status as Bloomberg's employer to engage in retaliation. Section 604 applies to Title VI claims only when those claims "respect" an "employment practice." 42 U.S.C. 2000d-3. But retaliation can give rise to a Title VI claim only when the victim was punished for engaging in protected activity (*e.g.*, filing a complaint) regarding race discrimination by a federal funds recipient. It is therefore the underlying protected activity, and not the retaliatory act, that is the focus of Section 604's inquiry. As a result, Section 604 does not bar retaliation claims in which the plaintiff's underlying complaint concerned *non-employment-related* race discrimination.

Section 604's text and history, as well as its connection to Title VII, further indicate that Section 604 does not apply when the complaint of race discrimination that triggered the retaliation does not involve an "unlawful employment practice" within the meaning of Title VII. Because Bloomberg complained about race discrimination against students in the composition of DOE's sports leagues—a non-employment-related issue that could not give rise to a Title VII claim—the district court erred in finding that her Title VI retaliation claim fell within Section 604's restrictions.

- 9 -

## ARGUMENT

## I

## THIS COURT SHOULD EXPLICITLY HOLD THAT TITLE VI ENCOMPASSES RETALIATION CLAIMS

The district court correctly recognized that plaintiffs may bring retaliation claims under Title VI. See, *e.g.*, Doc. 120, at 7. However, this Court has yet to issue a published opinion recognizing that Title VI retaliation claims are cognizable. The Fourth Circuit, by contrast, has expressly held that "Title VI provides a cause of action for retaliation based upon opposition to practices that Title VI forbids." *Peters* v. *Jenney*, 327 F.3d 307, 310 (4th Cir. 2003). This Court should hold the same.[4]

---

[4] The Third and Eleventh Circuits have recognized that such claims are cognizable, but only in unpublished opinions. See, *e.g.*, *Whitfield* v. *Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011); *Farrukh* v. *University of S. Fla. Bd. of Trs.*, No. 21-13345, 2022 WL 3973703, at *3 (11th Cir. Sept. 1, 2022). The Fifth Circuit has issued numerous opinions stating that it "assume[s] without deciding that Title VI encompasses a retaliation claim." *E.g.*, *Jones* v. *Southern Univ.*, 834 F. App'x 919, 923 n.3 (5th Cir. 2020). And this Court, like the Sixth, Seventh, Ninth, and Tenth Circuits, has implicitly assumed in unpublished decisions that Title VI retaliation claims are cognizable, but has never explicitly held that they are. See, *e.g.*, *Williams* v. *City Univ. of N.Y.*, 633 F. App'x 541, 542-543 (2d Cir. 2015); *Ross* v. *Michigan State Univ. Bd. of Trs.*, No. 11-2278, 2012 WL 3240261, at *3 (6th Cir. June 20, 2012); *Junhao Su* v. *East Ill. Univ.*, 565 F. App'x 520, 521-522 (7th Cir. 2014); *Shi* v. *Carlson*, 399 F. App'x 254, 255 (9th Cir. 2010); *Bird* v. *Regents of N.M. State Univ.*, 619 F. App'x 733, 762 (10th Cir. 2015). No circuit has held that Title VI does *not* encompass retaliation claims.

- 10 -

1.  The Supreme Court's decision in *Jackson* v. *Birmingham Board of Education*, 544 U.S. 167 (2005), establishes that retaliation claims must be cognizable under Title VI.  In *Jackson*, the Court held that the materially identical language of Title IX—which "broadly prohibits a funding recipient from subjecting any person to [intentional] 'discrimination' 'on the basis of sex'"— encompasses retaliation claims.  *Id.* at 173 (citation omitted).  The Court determined that "[r]etaliation is, by definition, an intentional act" that "is a form of 'discrimination' because the complainant is being subjected to differential treatment."  *Id.* at 173-174 (citation omitted).  And the Court explained that "retaliation is discrimination 'on the basis of sex,'" even if the retaliation itself is not sex-based, "because it is an intentional response to the nature of the complaint: an allegation of sex discrimination."  *Id.* at 174.  Therefore, the Court concluded that "when a funding recipient retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX."  *Ibid.*

*Jackson*'s reasoning applies equally to Title VI.  "Title IX's prohibition was patterned after that in Title VI," and aside from each statute's basis for discrimination and the defendants to which each applies, Title VI and Title IX are generally "identical in scope and thrust."  *Vengalattore* v. *Cornell Univ.*, 36 F.4th 87, 102-103 (2d Cir. 2022).  As a result, "the Supreme Court has applied parallel

- 11 -

analyses to claims brought under Title IX and Title VI," *Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 n.9 (2d Cir. 2012), and this Court has similarly applied Title IX principles to Title VI claims, see *id.* at 664-665 & n.9; *DT* v. *Somers Cent. Sch. Dist.*, 348 F. App'x 697, 699 n.2 (2d Cir. 2009).

*Jackson*'s rule is no different. Just as "retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint," *Jackson*, 544 U.S. at 174, retaliation is discrimination "on the ground of race" under Title VI when it is an intentional response to an allegation of race discrimination in a federally funded program, 42 U.S.C. 2000d. And as the alleged victim of retaliation for making a Title VI complaint, Bloomberg is a proper Title VI retaliation plaintiff. See *Jackson*, 544 U.S. at 179-181. Several courts, including some district courts in this circuit, have recognized that *Jackson* authorizes retaliation claims under Title VI.[5]

Indeed, this Court already has applied *Jackson* to authorize Fourteenth Amendment retaliation claims. See *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80 (2d Cir. 2015). The *Vega* Court quoted much of *Jackson*'s analysis

---

[5] See, *e.g.*, *McCullough* v. *Board of Regents of the Univ. Sys. of Ga.*, 623 F. App'x 980, 982 (11th Cir. 2015); *Morales* v. *New York State Dep't of Lab.*, No. 5:06-cv-899, 2010 WL 11681390, at *7 (N.D.N.Y. Apr. 21, 2010); *Hickey* v. *Myers*, No. 09-cv-01307, 2010 WL 786459, at *4 (N.D.N.Y. Mar. 2, 2010); see also *Sewell* v. *Monroe City Sch. Bd.*, 974 F.3d 577, 586 n.4 (5th Cir. 2020) (assuming without deciding that Title VI "encompasses retaliation claims" because *Jackson* held that Title IX does).

- 12 -

and followed its conclusion that "retaliation is a form of discrimination," including in employment discrimination cases brought under the Equal Protection Clause. *Id.* at 82. If *Jackson*'s logic reaches the Fourteenth Amendment, which uses significantly different wording, then it plainly controls as to Title VI, which provided the model for Title IX.

2. While *Jackson* alone resolves the issue, *Jackson* is also part of a longer line of Supreme Court decisions finding that broadly worded anti-discrimination statutes encompass retaliation claims. See, *e.g.*, *Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969) (holding that 42 U.S.C. 1982 allows for retaliation suits); *Gomez-Perez* v. *Potter*, 553 U.S. 474, 481 (2008) (same for Age Discrimination in Employment Act's federal-sector provision); *CBOCS W., Inc.* v. *Humphries*, 553 U.S. 442, 451 (2008) (same for 42 U.S.C. 1981). Together, these cases stand for a "general proposition that Congress' enactment of a broadly phrased antidiscrimination statute may signal a concomitant intent to ban retaliation against individuals who oppose that discrimination, even where the statute does not refer to retaliation in so many words." *University of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 355 (2013). That general proposition applies to Title VI, as well.

3. Reading Title VI to prohibit retaliation also is consistent with nearly six decades' worth of consistent, government-wide administrative interpretations. See

- 13 -

*Greathouse* v. *JHS Sec. Inc.*, 784 F.3d 105, 115 (2d Cir. 2015) (deriving support

from agencies' longstanding interpretation of statute). The Department of Health,

Education, and Welfare (HEW), ED's predecessor, issued regulations

implementing Title VI in December 1964, months after the law's passage. See 29

Fed. Reg. 16,298-16,305 (Dec. 4, 1964). One of these provisions prohibited

retaliation. *Id.* at 16,301 (45 C.F.R. 80.7(e)). That same regulation was later

transferred to ED, 45 Fed. Reg. 30,922 (May 9, 1980), and it remains in force to

this day, see 34 C.F.R. 100.7(e). HEW's regulations were part of an executive-

wide effort to "adopt[] uniform and consistent regulations implementing Title VI."

Exec. Order 11,247, 3 C.F.R. 177 (1965 Supp.). Since then, many other agencies

have adopted identical anti-retaliation regulations.[6] This "longstanding,"

"consistent," government-wide interpretation of Title VI "is entitled to a great deal

of persuasive weight." *Estate of Landers* v. *Leavitt*, 545 F.3d 98, 107-108 (2d Cir.

2008), cert. denied, 557 U.S. 937 (2009).[7]

---

[6] Among many examples, see 30 Fed. Reg. 315 (Jan. 9, 1965) (Department
of State); *id.* at 309 (Department of Commerce); *id.* at 299 (Small Business
Administration); 29 Fed. Reg. 19,302 (Dec. 31, 1964) (Veterans Administration);
*id.* at 19,293 (Department of Defense); 29 Fed. Reg. 16,295 (Dec. 4, 1964)
(Department of Interior); *id.* at 16,285 (Department of Labor); *id.* at 16,277
(Department of Agriculture); see also 68 Fed. Reg. 10,907 (Mar. 6, 2003)
(Department of Homeland Security); 31 Fed. Reg. 10,267 (July 29, 1966)
(Department of Justice).

[7] Other circuits have held that the Rehabilitation Act "incorporates the anti-
retaliation provision of Title VI"—referring to ED's Title VI retaliation regulation.

- 14 -

All the more so because Congress has ratified the agencies' regulations. Congress has revisited Title VI several times in the decades since its passage, adding four new sections and significantly expanding its coverage.[8]  Yet it "made no effort to restrict the right of action" under Title VI or to override agencies' universal determination that Title VI encompasses retaliation.  *Franklin* v. *Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 73 (1992) (discussing Rehabilitation Act Amendments of 1986 and CRRA).  "[W]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the congressional failure to revise or repeal the agency's interpretation is persuasive

---

*Barker* v. *Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 825 (9th Cir. 2009); accord *Wilbanks* v. *Ypsilanti Cmty. Schs.*, 742 F. App'x 84, 86 (6th Cir. 2018).  And the First Circuit, in conducting a standing analysis under the Rehabilitation Act, has stated that ED's "broadly protective anti-retaliation regulation is firmly grounded in the enforcement provisions of Title VI."  *Weber* v. *Cranston Sch. Comm.*, 212 F.3d 41, 48 (1st Cir. 2000).

[8]  See Elementary and Secondary Education Amendments of 1966, Pub. L. No. 89-750, Tit. I, Pt. H, § 182, 80 Stat. 1209-1210 (42 U.S.C. 2000d-5) (requiring prompt hearings before deferring action on funding applications by local educational agencies); Elementary and Secondary Education Amendments of 1969, Pub. L. No. 91-230, § 2, 84 Stat. 121 (1970) (42 U.S.C. 2000d-6) (requiring uniform nationwide application of the "guidelines and criteria established pursuant to title VI" dealing with racial segregation in schools); Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, Tit. X, § 1003, 100 Stat. 1845 (42 U.S.C. 2000d-7) (abrogating state sovereign immunity and providing for equal remedies against States as against other defendants in Title VI suits); Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, § 6, 102 Stat. 31 (1988) (42 U.S.C. 2000d-4a) (broadening definition of "program or activity" in Title VI to include entire entity any part of which receives federal funding).

- 15 -

evidence that the interpretation is the one intended by Congress." *Sebelius* v. *Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 159 (2013) (alteration in original; citation omitted).

4. Because the district court rejected Bloomberg's Title VI claim on threshold grounds, it did not examine the elements of a Title VI retaliation claim and determine whether Bloomberg plausibly alleged a claim. Rather than deciding the merits of Bloomberg's claim in the first instance, this Court can simply reverse the district court's error, see Part II, *infra*, and remand for the district court and the parties to evaluate the merits in the first instance.

However, the Court should first lay out the basic elements of a Title VI retaliation claim for the district court and the parties to apply on remand. Title VI retaliation claims should be evaluated under the same standards as for Title VII retaliation claims, just as this Court evaluates retaliation claims under Title IX, *Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011), and the Equal Protection Clause, *Vega*, 801 F.3d at 88; see *Peters*, 327 F.3d at 320 (applying Title VII retaliation standards to Title VI retaliation claims). To plead a claim of retaliation under Title VI, a complaint must allege: "(1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse * * * action; and (4) a causal connection between the protected activity and the adverse action." *Papelino*, 633 F.3d at 91. A "complaint may

- 16 -

qualify as protected activity, satisfying the first element of this test, 'so long as the [complainant] has a good faith, reasonable belief that the underlying challenged actions of the [funds recipient] violated" Title VI. *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (citation omitted). And an adverse action may be taken either in response to past protected activity or with intent to deter future such activity. See *Beckel* v. *Wal-Mart Assocs., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002); *Sauers* v. *Salt Lake Cnty.*, 1 F.3d 1122, 1128 (10th Cir. 1993).

## II

### SECTION 604 DOES NOT APPLY TO CLAIMS OF RETALIATION AGAINST AN EMPLOYEE FOR COMPLAINING ABOUT NON-EMPLOYMENT-RELATED DISCRIMINATION COVERED BY TITLE VI

The district court determined that Section 604, which limits Title VI's applicability in employment discrimination cases, barred Bloomberg's retaliation claim. Doc. 120, at 14-16. This was error. Because Bloomberg alleges that DOE retaliated against her for complaining about *non-employment-related* race discrimination, Section 604 does not preclude Bloomberg's Title VI claim.

A.    *Section 604 Applies Only Where A Retaliation Plaintiff's Protected Activity Concerns Race Discrimination In The Defendant's Employment Practices*

Statutory text and purpose indicate that Section 604 does not apply to Title VI retaliation claims where the defendant retaliated against the plaintiff for complaining about race discrimination concerning something other than an

- 17 -

employment practice.  This analysis does not change just because the defendant made use of its status as the plaintiff's employer to take the retaliatory act.

Section 604 provides:  "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. 2000d-3.  As the plain text indicates, Title VI enforcement does not even trigger the statute's "primary objective" test unless the "action"—*i.e.*, the administrative enforcement effort or lawsuit at issue—is taken "with respect to an[] employment practice." *Ibid.*[9]  And "a claim is 'with respect to' a [covered] subject matter when it concerns that subject matter." *Galper* v. *JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015) (discussing preemption).  Hence, Title VI actions can be said to be "with respect to" employment practices, and thereby trigger Section 604, only when they "*concern*" the defendant's employment practices. *Ibid.*

Title VI retaliation claims concern employment practices when the plaintiff's protected activity—here, the discrimination complaint that triggered

---

[9]  Though Section 604 on its face applies only to agency action, this Court has held that it also applies to private suits. *Association Against Discrimination in Emp., Inc.* v. *City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981), cert. denied, 455 U.S. 988 (1982).

- 18 -

DOE's allegedly retaliatory conduct—involves an employment practice.  This conclusion flows from the very nature of a Title VI retaliation claim.  Retaliation only violates Title VI "because it is an intentional response to the nature of the complaint:  an allegation of [race] discrimination." *Jackson* v. *Birmingham Bd. Of Educ.*, 544 U.S. 167, 174 (2005).  It is the plaintiff's underlying complaint of race discrimination, rather than the defendant's retaliatory acts, that makes something a *Title VI* claim instead of some other form of retaliation claim.  See, *e.g.*, *id.* at 176-177 ("Retaliation for Jackson's advocacy of the rights of the girls' basketball team in this case is 'discrimination' 'on the basis of sex [in violation of Title IX],' just as retaliation for advocacy on behalf of a black lessee in *Sullivan* was discrimination on the basis of race [in violation of Section 1982].").  In particular, the nature of the underlying complaint of discrimination is what separates a Title VI claim from a Title VII retaliation claim, which involves "employer retaliation on account of an employee's having opposed, complained of, or sought remedies for, *unlawful workplace discrimination*." *University of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338, 342 (2013) (emphasis added).  When a person faces retaliation for complaining about race discrimination in a federally funded program, that person "is punished for trying to vindicate the rights of minorities protected by" Title VI. *Sullivan* v. *Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969).

- 19 -

As with any other Title VI claim, then, a Title VI retaliation claim is concerned with—that is, made "with respect to"—the underlying discriminatory practice alleged when the plaintiff engages in protected activity. If the plaintiff suffered retaliation for complaining about or participating in the investigation of a discriminatory employment practice, then Section 604 often requires an inquiry into whether "a primary objective of the Federal financial assistance is to provide employment." 42 U.S.C. 2000d-3. If not, then not. See *Verdi* v. *City of New York*, 306 F. Supp. 3d 532, 544-545 (S.D.N.Y. 2018) (distinguishing between these two forms of retaliation claims for Section 604 purposes); *Hickey* v. *Myers*, No. 09-cv-01307, 2010 WL 786459, at *3 n.1 (N.D.N.Y. Mar. 2, 2010) (similar); see also Part II.C, *infra* (explaining that Section 604 also does not apply where the plaintiff had alleged discrimination in employment practices that would subject primary beneficiaries of federal funding to discrimination).

Moreover, Section 604 is an "exception" to Congress's "general statement of policy" in Section 601 and must be read "narrowly in order to preserve the primary operation of th[at] provision." *Linza* v. *Saul*, 990 F.3d 243, 248 (2d Cir. 2021) (citation omitted); accord *Garland* v. *Aleman Gonzalez*, 142 S. Ct. 2057, 2068 n.6 (2022). "Congress enacted Title [VI] not only to prevent the use of federal dollars to support discriminatory practices, but also 'to provide individual citizens effective protection against those practices.'" *Jackson*, 544 U.S. at 180 (citation

- 20 -

omitted).  Employees of federally funded entities are among the most likely to

witness discrimination by those entities.  Employees also "are often in the best

position to vindicate the rights of" those discriminated against—particularly in the

educational context, where "sometimes adult employees are 'the only effective

adversar[ies]' of discrimination."  *Id.* at 181 (alteration in original; citation

omitted).  To read Section 604 as barring retaliation claims whenever the defendant

retaliates by affecting the plaintiff's employment—as the district court read the

statute here (see Doc. 120, at 15)—would give employers ample means to punish

employees who report Title VI violations without fear of repercussion.

More troublingly, when the employee's initial discrimination complaint does

not itself involve employment practices encompassed by Title VII, the employer

likewise would be safe from retaliation liability under Title VII.  See *Cooper* v.

*New York State Dep't of Lab.*, 819 F.3d 678, 681 (2d Cir. 2016) (per curiam).

"Courts have repeatedly held," for instance, "that a teacher's complaints about

alleged discrimination directed against a student do not constitute opposition to an

unlawful *employment* practice" and so cannot give rise to Title VII retaliation

liability.  *Palmer* v. *Penfield Cent. Sch. Dist.*, 918 F. Supp. 2d 192, 196 (W.D.N.Y.

2013) (citing cases).  And though an employer's retaliatory act may sometimes

constitute its own adverse employment action, which theoretically could give rise

to its own direct Title VII discrimination claim, the employee likely would be

- 21 -

unable to bring such a claim because the employer rarely would have taken the adverse action because of *that employee's* race, gender, or other protected status. See *Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138-139 (2d Cir. 2008). Put simply, under the reading adopted by the district court, the employee would have no recourse under either Title VI *or* Title VII. Congress could not have intended that employees—those in the best position to oppose discrimination, see *Jackson*, 544 U.S. at 181—would be left without any remedies under the Civil Rights Act where others could raise Title VI claims. "If recipients were permitted to retaliate freely" in this way, then "Title [VI's] enforcement scheme would unravel." *Id.* at 180.

If any doubt remained as to Congress's meaning, "the broader context and primary purpose of the statute," as reflected in "the legislative history," would quiet it. *Gordon* v. *Softech Int'l, Inc.*, 726 F.3d 42, 48 (2d Cir. 2013) (citation omitted), cert. denied, 571 U.S. 1129 (2014). Congress added Section 604 to assuage certain senators' "concern that the receipt of any form of financial assistance might render an employer subject to the commands of Title VI rather than Title VII." *Johnson* v. *Transportation Agency*, 480 U.S. 616, 627 n.6 (1987). Section 604's sponsor, Senator John Sherman Cooper, explained that he drafted Section 604 to ensure that Title VI would not "extend to the employment practices of firms and individuals who may be engaged in work, under private contracts but in connection with some Government program, when that type of employment is

- 22 -

properly the subject of [T]itle VII." 110 Cong. Rec. 11,615 (1964). In short, Section 604 "was designed to clarify that 'it was not intended that [T]itle VI would impinge on [T]itle VII.'" *Johnson*, 480 U.S. at 627 n.6 (alterations in original; citation omitted). Where, as here, the discrimination about which a Title VI plaintiff complained does not concern employment practices, the resulting Title VI retaliation claim could not possibly "impinge on" Title VII. *Ibid.* (citation omitted). Such a claim thus does not fall within section 604's reach.

B.   *Section 604 Reaches Only Employment Practices Encompassed By Title VII*

For a Title VI claim to be "with respect to any employment practice," 42 U.S.C. 2000d-3, and thus to fall within Section 604's ambit, it must at least allege discrimination in the sorts of employment conditions that Title VII encompasses.

Section 604 does not itself define "employment practice." However, Congress debated and passed Title VI as part of the same legislation as Title VII, which does lay out what constitutes an "unlawful employment practice." Indeed, Title VII "defines the term 'unlawful employment practice' with characteristic exactitude," *Cooper*, 819 F.3d at 681, proscribing discriminatory conduct while exempting specific employment practices from liability under certain circumstances, see 42 U.S.C. 2000e-2, 2000e-3. The core of Title VII's definition of "unlawful employment practice" refers to discrimination with respect to an employee's "compensation, terms, conditions, or privileges of employment," 42

- 23 -

U.S.C. 2000e-2(a)(1), "evinc[ing] a congressional intent to strike at the entire spectrum of disparate treatment  *  *  *  in employment," *Oncale* v. *Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (citation omitted).[10]

The "normal presumption" is "that, when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar* v. *Allina Health Servs.*, 139 S. Ct. 1804, 1812 (2019).  And there is no basis for departing from that presumption here.  On the contrary, Section 604 uses the same phrase as Title VII precisely *because* Title VII used that phrase.  See 110 Cong. Rec. 11,615 (1964) (statement of Sen. Cooper) (stating that Section 604 was meant to stop agencies from applying Title VI to "employment practices— practices of the kind which are properly the subject of title VII").

Title VI retaliation claims therefore do not constitute actions "with respect to any employment practice" when the retaliation is for opposing violations of Title VI that do not also implicate Title VII.  Hence, if the plaintiff could not at least "have reasonably believed" "that there was unlawful discrimination with respect to the terms and conditions of [her] employment," then that plaintiff's "opposition

---

[10]  Title VII also specifies that discrimination by employment agencies or labor organizations, discrimination in training programs and job advertisements, and discriminatory use of test scores in hiring or promotion constitute unlawful employment practices.  42 U.S.C. 2000e-2(b)-(d) and (*l*), 2000e-3(b).  Retaliation for opposing unlawful employment practices is itself an unlawful employment practice.  42 U.S.C. 2000e-3(a).

- 24 -

was not directed at an unlawful *employment practice* of [her] employer," and any "claim of retaliation is not cognizable under Title VII." *Wimmer* v. *Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135-136 (2d Cir.), cert. denied, 528 U.S. 964 (1999); see also *Cooper*, 819 F.3d at 681. Section 604 would not apply to a Title VI retaliation claim in such circumstances.

Bloomberg's allegations could not plausibly have implicated Title VII and thus did not concern an employment practice under Section 604. She does not allege facts to suggest that DOE discriminated against her "because [s]he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. 2000e-3(a). Nor does she allege that she was required, "as a condition of [her] employment, to discriminate" against others. *Moyo* v. *Gomez*, 40 F.3d 982, 985 (9th Cir. 1994) (holding that corrections officer could "state[] a retaliation claim" based on allegation that he "was discharged for refusing to carry out or otherwise protesting the defendants' alleged policy of denying showers to black inmates after work shifts"), cert. denied, 513 U.S. 1081 (1995). She does not even allege that the discrimination against *her students* affected the terms or conditions of *her* employment in a manner that could be cognizable under Title VII: Bloomberg's job "d[id] not include appealing to the DOE to change [the district athletic league's] discriminatory policy or practice[s]" (Doc. 94-1, at 5-6), and she does not otherwise allege that the athletic league's discrimination affected or

interfered with her job duties.  Her Title VI claim thus cannot be said to be "with respect to any employment practice" under Section 604.  42 U.S.C. 2000d-3.

C.    *Section 604 Does Not Apply To Title VI Claims Concerning Discriminatory Employment Practices That Would Subject Primary Beneficiaries Of Federal Funding To Discrimination*

Even some Title VI claims in which the protected activities *do* revolve around employment practices can fall outside Section 604's reach.  This is so even where none of the "primary objective[s] of the Federal financial assistance is to provide employment."  42 U.S.C. 2000d-3.  Like several other appellate courts, this Court has held that plaintiffs still may bring Title VI employment discrimination suits against employers in such circumstances if the alleged employment discrimination would in turn subject the primary beneficiaries of the federal funding to discrimination.  See *Caulfield* v. *Board of Educ. of City of N.Y.*, 632 F.2d 999, 1005 (2d Cir. 1980), cert. denied, 450 U.S. 1030 (1981); *Caulfield* v. *Board of Educ. of City of N.Y.*, 583 F.2d 605, 611 (2d Cir. 1978); accord *Mayers* v. *Campbell*, 87 F. App'x 467, 471 (6th Cir. 2003), cert. denied, 543 U.S. 582 (2004); *Ahern* v. *Board of Educ. of City of Chi.*, 133 F.3d 975, 977-978 (7th Cir. 1998) (citing cases).  For instance, even though most federal funding for school districts is granted with the objective of aiding students rather than with a primary objective of providing employment, "Title VI enforcement procedures apply to" school boards' "teacher hiring and assignment practices" because "faculty integration is

- 26 -

essential to student integration." *Caulfield*, 632 F.2d at 1005. Likewise, ED

regulations apply Title VI standards to employment discrimination when it "tends,

on the ground of race, color, or national origin, to" subject non-employees to

discrimination. 34 C.F.R. 100.3(c)(3); see *Ahern*, 133 F.3d at 977 (recognizing

that ED's regulation takes "the correct view" and that Section 604 was "never

intended as a limitation on desegregation of schools") (citation omitted).

Bloomberg's claim likely would fall within these bounds. Even if

Bloomberg's protected activity (*i.e.*, the complaint submitted to DOE) concerned

an employment practice under Title VII, it still would be covered under Title VI

and its implementing regulations because taking adverse action against employees

for complaining of alleged race inequities among students in school sports leagues

would tend to perpetuate the alleged discrimination against students of color. But

since Bloomberg's complaint clearly does not concern employment practices

within the meaning of Section 604, the Court need not reach this issue or address

the precise circumstances under which plaintiffs may bring parallel Title VI and

Title VII retaliation claims.[11]

---

[11] The district court rightly reversed its initial rulings requiring Bloomberg (or any other Title VI plaintiff) to "plead a nexus between the use of federal funds and the alleged * * * discrimination in the [district's] sports programs." Doc. 120, at 9 (citation omitted). The CRRA added a new provision to Title VI, 42 U.S.C. 2000d-4a, clarifying that "if any part of an * * * institution received federal funds, the institution as a whole must comply with Title [VI]'s provisions," *McCormick ex rel. McCormick* v. *School Dist. of Mamaroneck*, 370 F.3d 275, 287

- 27 -

## CONCLUSION

This Court should hold that Title VI retaliation claims are cognizable,

reverse the district court's erroneous ruling, and remand for further proceedings.

Respectfully submitted,

DAMIAN WILLIAMS
  United States Attorney

DAVID J. KENNEDY
BENJAMIN H. TORRANCE
ADAM M. GITLIN
  Assistant United States Attorneys
  U.S. Attorney's Office
  Southern District of New York
  86 Chambers Street
  3rd Floor
  New York, NY 10007

KRISTEN CLARKE
  Assistant Attorney General

s/ Noah B. Bokat-Lindell
NICOLAS Y. RILEY
NOAH B. BOKAT-LINDELL
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C. 20044-4403
  (202) 598-0243

---

(2d Cir. 2004). The CRRA thus "reliev[es] a would-be plaintiff from establishing his direct connection to the part of a covered entity's operations receiving federal financial assistance." *T.S. ex rel. T.M.S.* v. *Heart of CarDon, LLC*, 43 F.4th 737, 746 (7th Cir. 2022).

## CERTIFICATE OF COMPLIANCE

I certify that the attached BRIEF FOR THE UNITED STATES AS

AMICUS CURIAE IN SUPPORT OF APPELLANT URGING REVERSAL:

(1) complies with the type-volume limitation of Federal Rule of Appellate

Procedure 32(a)(7)(B) because it contains 6290 words, excluding the parts of the

brief exempted by Federal Rule of Appellate Procedure 32(f); and

(2) complies with the typeface requirements of Federal Rule of Appellate

Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate

Procedure 32(a)(6) because it has been prepared in a proportionally spaced

typeface using Microsoft Word for Microsoft 365, in 14-point Times New Roman

font.

s/ Noah B. Bokat-Lindell
NOAH B. BOKAT-LINDELL
Attorney

Date: June 30, 2023

## CERTIFICATE OF SERVICE

I certify that on June 30, 2023, I electronically filed the foregoing BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF APPELLANT URGING REVERSAL with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Noah B. Bokat-Lindell
NOAH B. BOKAT-LINDELL
 Attorney