# 23-343

## United States Court of Appeals
## for the Second Circuit

JILL BLOOMBERG,

*Plaintiff-Appellant,*

*against*

THE NEW YORK CITY DEPARTMENT OF EDUCATION and
CARMEN FARINA,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of New York

**BRIEF FOR APPELLEES**

HON. SYLVIA O. HINDS-RADIX
*Corporation Counsel*
*of the City of New York*
Attorney for Appellees
100 Church Street
New York, New York 10007
212-356-2490 or -2502
jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
   *of Counsel*

September 22, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................iii

PRELIMINARY STATEMENT .............................................................. 1

ISSUES PRESENTED FOR REVIEW ................................................... 3

STATEMENT OF THE CASE ................................................................ 4

    A. The anonymous complaints concerning Bloomberg's alleged political activities at Park Slope Collegiate ................. 4

    B. Bloomberg's email regarding the sports programs at her school ......................................................................................... 6

    C. OSI's reopened investigation into Bloomberg ........................... 7

    D. The district court's dismissal of Bloomberg's amended complaint and denial of leave to further amend ..................... 10

SUMMARY OF ARGUMENT AND STANDARD OF REVIEW ........... 14

ARGUMENT ........................................................................................ 17

POINT I

    THE PLAIN TEXT OF § 2000d-3 BARS BLOOMBERG'S CLAIM ............................................................................................ 17

POINT II

    UNDER ANY STANDARD, BLOOMBERG DID NOT PLEAD A VIABLE TITLE VI RETALIATION CLAIM ............... 22

    A. Bloomberg has not pled that the defendants would reasonably have understood her email to be a Title VI complaint.................................................................................. 24

i

# TABLE OF CONTENTS (cont'd)

**Page**

B.  Bloomberg has not pled a plausible causal connection
    between her email and the investigation. .................................. 29

C.  This Court need not remand for the district court to
    consider the sufficiency of Bloomberg's complaint ................... 31

CONCLUSION .......................................................................... 34

CERTIFICATE OF COMPLIANCE .......................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval,*
532 U.S. 275 (2001) ................................................................24

*AmBase Corp. v. City Inv. Co. Liquidating Tr.,*
326 F.3d 63 (2d Cir. 2003) ....................................................23

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................15

*Ass'n against Discrimination in Employment, Inc. v. City of Bridgeport,*
647 F.2d 256 (2d Cir. 1981) ...........................................17, 18

*Balintulo v. Ford Motor Co.,*
796 F.3d 160 (2d Cir. 2015) ..................................................14

*Barnes v. Gorman,*
536 U.S. 181 (2002) ................................................................21

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................31

*Bostock v. Clayton County,*
140 S. Ct. 1731 (2020) ...........................................................20

*Chandamuri v. Georgetown Univ.,*
274 F. Supp. 2d 71 (D.D.C. 2003) ........................................27

*Connelly v. County of Rockland,*
61 F.4th 322 (2d Cir. 2023) ...................................................22

*Cummings v. Premier Rehab Keller, P.L.L.C.,*
142 S. Ct. 1562 (2022) ...........................................................21

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,*
136 F.3d 276 (2d Cir. 1998) ..................................................27

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Hurlman v. Rice,*
  927 F.2d 74 (2d Cir. 1991) ................................................. 33

*Jackson v. Birmingham Bd. of Educ.,*
  544 U.S. 167 (2005) .......................................................... 20

*Johnson v. Transp. Agency,*
  480 U.S. 616 (1987) .......................................................... 21

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs,*
  *P.C.,*
  716 F.3d 10 (2d Cir. 2013) ................................................. 25

*Marblegate Asset Mgmg., LLC v. Educ. Mgmt. Fin. Corp.,*
  846 F.3d 1 (2d Cir. 2017) .................................................. 18

*Pennhurst State School & Hospital v. Halderman,*
  451 U.S. 1 (1981) ............................................................ 21

*Peters v. Jenney,*
  327 F.3d 307 (4th Cir. 2003) .......................... 22, 24, 25, 27

*Rojas v. Roman Catholic Diocese of Rochester,*
  660 F.3d 98 (2d Cir. 2011) ................................................ 27

*Saks v. Franklin Covey Co.,*
  316 F.3d 337 (2d Cir. 2003) .............................................. 17

*United States v. Am. Soc'y of Composers, Authors &*
  *Publishers,*
  627 F.3d 64 (2d Cir. 2010) ................................................ 20

*University of Tex. Sw. Med. Ctr. v. Nassar,*
  570 U.S. 338 (2013) .......................................................... 20

*Vega v. Hempstead Union Free Sch. Dist.,*
  801 F.3d 72 (2d Cir. 2015) ........................................... 29, 31

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Verdi v. City of New York,*
   306 F. Supp. 3d 532 (S.D.N.Y. 2018) ........................................... 25, 33

*Washington v. County of Rockland,*
   373 F.3d 310 (2d Cir. 2004) (Sotomayor, J.) ..................................... 29

*Whitfield v. Notre Dame Middle Sch.,*
   412 F. App'x 517 (3d Cir. 2011) ..................................................... 23, 25

*Yusuf v. Vassar College,*
   35 F.3d 709 (2d Cir. 1994) ................................................................. 19

*Zann Kwan v. Andalex Grp. LLC,*
   737 F.3d 834 (2d Cir. 2013) .............................................................. 29

**Statutes**

42 U.S.C. § 2000d ..................................................................................... 24

42 U.S.C. § 2000d-3 ...................................................................... *passim*

**Other Authorities**

N.Y.C. Dep't of Educ., *Regulation of the Chancellor A-830:*
   *Anti-Discrimination Policy and Procedures for Filing*
   *Internal Complaints of Discrimination* (Aug. 21, 2013) ................... 28

N.Y.C. Dep't of Educ., *Non-Discrimination Policy* ................................ 28

1990 Mayoral Exec. Order 11 ..................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff Jill Bloomberg, a public school principal, brought this action against the New York City Department of Education (DOE), asserting a series of claims concerning an investigation into her alleged violation of employment rules. Bloomberg has since abandoned all her claims save one—a retaliation claim under Title VI of the Civil Rights Act of 1964, which prohibits intentional race-based discrimination in federally funded programs. The United States District Court for the Southern District of New York (Gardephe, J.) dismissed the claim and denied Bloomberg leave to amend her complaint a second time.

This Court should affirm. Based on complaints filed with an independent agency in May and December of 2016, referred to DOE, Bloomberg was investigated for violations of the rules governing DOE employees' conduct. Separately, in January 2017, Bloomberg emailed DOE employees about the allocation of athletic teams. Her school, Park Slope Collegiate, shared a number of teams with other schools at the same campus in Brooklyn. One newer school located at that campus, Millennium Brooklyn, instead shared teams with its Manhattan sister

school. Bloomberg's email claimed the allocation was inequitable, but made no reference to intentional race-based discrimination.

Bloomberg now characterizes her email as a Title VI complaint, and contends that the investigation into her misconduct was undertaken in retaliation for her email. But, as the district court found, Bloomberg's claim is barred by the plain language of 42 U.S.C. § 2000d-3, which authorizes lawsuits "with respect to any employment practice" *only* "where a primary objective of the Federal financial assistance is to provide employment." Bloomberg has never argued that she can satisfy the primary-objective test. So the only question is whether she brought this action "with respect to" an employment practice. She clearly did: this lawsuit is a direct challenge to an allegedly adverse employment action—an investigation into her potential violation of employment rules. While the United States, as amicus, raises policy concerns about this statutory bar, the law is the words on the page, and the statutory language bars Bloomberg's Title VI claim.

But this Court could also affirm on alternative grounds. Even setting aside the statutory bar, while the district court did not reach the question, Bloomberg has not plausibly pled that the defendants could

have understood her email to oppose a practice that Title VI forbids, where the email itself identifies non-discriminatory reasons for the allocation of teams and, at best, alludes to disparate impact—not any form of intentional discrimination covered by Title VI. Nor can Bloomberg show a plausible causal link between the email and the investigation, which was premised on complaints received well before her email, and were referred to DOE by an independent agency. And there is nothing to suggest that anyone DOE involved in investigation also knew about Bloomberg's email. Accordingly, with or without the statutory bar, Bloomberg's Title VI claim fails.

## ISSUES PRESENTED FOR REVIEW

1.    Did the district court properly find that this action is barred by 42 U.S.C. § 2000d-3, where it was brought "with respect to [an] employment practice" and Bloomberg had never alleged that "a primary objective of the Federal financial assistance is to provide employment"?

2.    In the alternative, does Bloomberg's Title VI claim fail because she has not plausibly pled that (a) the defendants would have understood her to have opposed something forbidden by Title VI, or

(b) there is a causal connection between her alleged protected activity and the third-party-initiated investigation she challenges?

### STATEMENT OF THE CASE

**A. The anonymous complaints concerning Bloomberg's alleged political activities at Park Slope Collegiate**

Plaintiff, Jill Bloomberg, was the principal of Park Slope Collegiate (PSC), a secondary school in Brooklyn (Appellant's Appendix ("A") 52).[1] In May 2016, the Special Commissioner of Investigation (SCI) for the New York City School District received an anonymous complaint alleging that Bloomberg "actively recruit[ed] students into the [Progressive Labor Party] during school hours, and that [she had] invited students to participate in marches for Communism," in violation of Chancellor's Regulation D-130 (A66–67; *see also* S.D.N.Y. Dkt. 13 ¶ 11). A day after receiving the complaint, SCI referred it to the Office

---

[1] Despite the dictates of Federal Rule of Appellate Procedure 30(b)(1), Bloomberg did not contact appellees to determine the contents of the appendix nor serve a designation of the record entries she intended to include. For that reason, the appendix is missing relevant documents appellees would have designated for inclusion, such as the answer and, indeed, the full text of the email that Bloomberg complains she was retaliated against for sending. We refer to the district court's docket entries for those materials. *See* Fed. R. App. P. 30(a)(2).

of Special Investigations (OSI) (A64–67; S.D.N.Y. Dkt. 13 ¶ 5, 12).[2] OSI is an internal DOE investigatory unit overseen by DOE's Office of General Counsel and "has the primary function of investigating alleged violations of the Chancellor's Regulations," including allegations referred to the DOE by SCI (A65; S.D.N.Y. Dkt. 13 ¶ 7). A few days later, OSI "marked the complaint as closed pending additional information" because it concluded that there was insufficient information to pursue it, and OSI could not seek additional information because the complaint was submitted anonymously (S.D.N.Y. Dkt. 13 ¶ 13; A67).

On December 20, 2016, the anonymous complainant provided additional information to SCI (A67–69; S.D.N.Y. Dkt. 13 ¶ 14). The complainant reported that Bloomberg's husband was the president of the Len Ragozin Foundation, an organization associated with the Progressive Labor Party; that her husband included images of students and staff in a documentary he filmed for the Foundation, without the

---

[2] SCI is an investigatory agency independent of the DOE. 1990 Mayoral Exec. Order 11; S.D.N.Y. Dkt. 13 ¶ 6. Its function is to investigate allegations of corruption, conflicts of interest, and other misconduct in the DOE. 1990 Mayoral Exec. Order 11 § 3. SCI may refer matters involving unethical conduct or misconduct to the DOE for investigation. *Id.*; S.D.N.Y. Dkt. 13 ¶ 8.

students' and staff's authorization; and that this documentary had been screened at the school with a $20 admission fee (A69).

## B. Bloomberg's email regarding the sports programs at her school

PSC is located at the "John Jay Campus," which houses PSC and three other schools: the Secondary School for Journalism, the John Jay School for Law, and Millennium Brooklyn High School (A52, 63; S.D.N.Y. Dkt. 10-3 at 2). Bloomberg describes Millennium Brooklyn as an "offshoot" of the Millennium High School in Manhattan (A17, 57). At the time of the complaint, the John Jay Campus operated two sports programs: one for students at PSC, Journalism, Law, and a neighboring school—Brooklyn High School of the Arts—and the second for students at the two Millennium schools (A63; S.D.N.Y. Dkt. 10-3 at 2).

On January 10, 2017, Bloomberg sent an email to, among others, Eric Goldstein, then-Chief Executive Officer of the Office of School Support Services, and Michael Prayor, then-High School Superintendent for PSC's district (A56, 63). Bloomberg's email asks for "assistance in uniting the [Public Schools Athletic League] sports teams on the John Jay campus" (S.D.N.Y. Dkt. 10-3 at 2). The email notes that

the Millennium schools collectively had 17 teams and the other schools at the John Jay campus collectively had 9 teams (*id.*). The email argues in favor of uniting the two sports programs, and complains that they are "separate and unequal" (*id.*) The email includes a table with information about each school. While, in addition to a column listing the overall number of students at each school, there is a column indicating the "% Black & Hispanic" for each school, Bloomberg's email makes no direct allegation that the disparity is the result of intentional discrimination (*id.*).

Ultimately, the Executive Director of the Public Schools Athletic League, who had been copied on Bloomberg's email, granted an additional five teams to the schools, but did not combine the programs with those at the Millennium Schools (S.D.N.Y. Dkt. 21 ¶¶ 7, 10).

### C. OSI's reopened investigation into Bloomberg

Following the December submission of additional information by the complainant, SCI referred that new information to OSI on January 25, 2017, just over two weeks after Bloomberg sent her email about sports programs (A68). OSI re-opened its investigation and assigned an investigator (A65, 68; S.D.N.Y. Dkt. 13 ¶¶ 18, 21). OSI's investigator

7

interviewed the complainant, whose identity had been determined at that point, and also informed Bloomberg that she was under investigation (A65; S.D.N.Y. Dkt. 13 ¶ 19).

Bloomberg's counsel then sent a letter alleging the investigation was retaliatory and demanding that DOE cease and desist (A66; S.D.N.Y. Dkt. 10-5 at 4). DOE responded that the complaint that OSI was investigating was unrelated to her email about school sports programs and that the complaint was "filed in May 2016, long before Ms. Bloomberg lodged a complaint about the sports teams on the John Jay Campus" (S.D.N.Y. Dkt. 10-6 at 2). The letter also explained that OSI had no previous knowledge of any complaint that Bloomberg lodged about the sports teams (*id.*).

The investigation was ultimately concluded in August 2017 (S.D.N.Y. Dkt. 83-4 at 2). The report finds that the original complainant's allegations of political activities and recruitment of students could not be corroborated and thus that those allegations were unsubstantiated (*id.* at 19). The report substantiated the allegation that students and faculty were filmed at the school for a documentary

without prior approval or any filming agreements, consent forms, or waivers (*id.* at 20).

The report also substantiated two violations that came to the attention of the investigator in the course of the investigation. First, an individual who worked at the school, covering a class for a teacher who was out on paternity leave, lacked "proper authorization or security clearance" and was not an active DOE employee (*id.* at 20–21). Second, the school offered a "Brooklyn History" course in fulfillment of a DOE and State requirement that students take a one-unit participation-in-government course. The course was not approved to fulfill that requirement, and offering it to do so "violated New York City DOE and New York State Education Department academic policies" (*id.* at 21).[3] Bloomberg alleges that she received a written reprimand (A75). It does not appear she ever challenged the reprimand in any further proceeding.

---

[3] The report also considered allegations that Bloomberg's potential solicitation of donations for a legal defense fund and her dealings with the Len Ragozin Foundation in screening the documentary were conflicts of interest (S.D.N.Y. Dkt. 83-4 at 22–23). The report concluded that resolution of those allegations would require further inquiry and a determination by the Conflicts of Interest Board (*id.* at 23).

**D. The district court's dismissal of Bloomberg's amended complaint and denial of leave to further amend**

While the investigation was ongoing, Bloomberg filed a complaint alleging retaliation in violation of the First Amendment and Title VI, and a violation of the New York City Human Rights Law (S.D.N.Y. Dkt. 1). She moved for a temporary restraining order and preliminary injunction enjoining the investigation (*id.*). The district court denied those motions (S.D.N.Y. Dkt. 31).

After she amended her complaint to add a due process claim, the defendants moved to dismiss. The district court granted the motion to dismiss. The court began by dismissing Bloomberg's First Amendment retaliation claim on the basis that she was speaking as part of her official responsibilities in requesting the combination of the teams at the two sets of schools, not as a private citizen (A31–36). In addition, the district court rejected her argument that she was speaking on a policy matter because she opposed "a racially discriminatory condition" (A33 (quotation marks omitted)). Instead, the court explained that, whatever her "intentions or motivations may have been in composing her email," Bloomberg's "alleged 'primary' concern about racial

10

discrimination and segregation is not made manifest in the email" (A34). At most, she included a "chart listing the percentage of Black or Hispanic students at each school in the two sports programs," but her "email does not address these statistics in any fashion" (*id.*). While she points out alleged "inequities," she did not "assert that they are the product of racial discrimination or a desire to segregate sports teams" (*id.*).

The court also dismissed Bloomberg's Title VI retaliation claim because, it reasoned, she was obligated to plead a "logical nexus" between federal funds received by the defendants and the alleged discriminatory practice about which she complained—namely, alleged inequities in the school sports programs (A40).

Lastly, the court rejected Bloomberg's due process claim because the Chancellor's regulation prohibiting the use of school facilities, equipment, and supplies for political groups "unambiguously encompasses the reported conduct that instigated OSI's investigation" (A42). The court also found that the regulation was not void for vagueness (A44).

11

The court's order permitted Bloomberg to move for leave to file a second amended complaint (A45), which she did (A46). As relevant here, Bloomberg added several allegations regarding the defendants' federal funding (A48).

Later, the district court denied Bloomberg's motion for leave to file a second amended complaint (A119). The court found that, as to her Title VI retaliation claim, Bloomberg failed to show that there was a "nexus between the federal funding allotted to DOE" and the public schools' sports programs (A136). The court found that Bloomberg's due process claim was moot, because the allegation against her for violating the regulation regarding political activity was not substantiated, and concluded it was still insufficiently pled (A139). And the court declined to exercise supplemental jurisdiction over her remaining New York City Human Rights Law claim (A141).

Bloomberg moved for reconsideration solely on the Title VI retaliation claim (A142). The district court granted reconsideration on the basis that the Civil Rights Restoration Act of 1987 "prohibits courts from requiring proof of program-specific federal funding" (A247). Instead, a Title VI retaliation claim is "adequately pled where plaintiff

alleges that he or she complained about discrimination against the 'intended beneficiaries' of a program that receives federal funding" (A248). Because the students at PSC are "among the 'intended beneficiaries' of the federal funds DOE receives," a complaint about their treatment met the pleading standard in light of the Civil Rights Restoration Act (*id.*).

However, the court went on to conclude that Bloomberg's claim was barred by 42 U.S.C. § 2000d-3, which precludes a Title VI action with respect to "any employment practice of any employer … except where a primary objective of the Federal financial assistance is to provide employment" (A249 (quotation marks omitted)). The court reasoned that "Bloomberg's Title VI retaliation claim is premised on the assertion that DOE—in opening an investigation regarding a complaint that she had engaged in prohibited political activity at her school—engaged in an unlawful 'employment practice'" (A253). Under § 2000d-3, "such an action is not authorized unless the Federal funding DOE receives is for the purpose of providing employment" (*id.*). Because the funding DOE receives is not primarily for employment purposes, her

retaliation claim could not survive a motion to dismiss and, therefore, the court denied leave to amend (*id.*).

## SUMMARY OF ARGUMENT
## AND STANDARD OF REVIEW

On de novo review, *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015), this Court should affirm. The plain text of 42 U.S.C. § 2000d-3 bars a lawsuit under Title VI "with respect to any employment practice" unless the defendant receives federal funds and the "primary objective" of the federal funds is "to provide employment." 42 U.S.C. § 2000d-3. Bloomberg's lawsuit challenges the DOE's investigation into her, unquestionably an employment practice, and seeks redress for that allegedly unlawful employment practice. And she does not dispute that DOE's federal funding is not primarily aimed at providing employment.

Bloomberg and the federal government as amicus, raise a number of arguments as to why Title VI retaliation claims should not be subject to § 2000d-3's bar. But neither has a persuasive argument as to why the statute's text supports their favored interpretation. The plain text of the provision answers the question, and their objections to its scope are better directed at Congress, not this Court.

Regardless of the proper scope of § 2000d-3, Bloomberg's proposed amendment to her complaint was futile because her proposed complaint does not have "sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Bloomberg's Title VI retaliation claim requires her to plead that she engaged in a protected activity known to the defendants, that the defendants took an adverse action against her, and that there is a causal connection between the her protected activity and the adverse action. But she cannot show that she engaged in protected activity known to the defendants, and she has only "naked assertions" as to causation that stop "short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).

Bloomberg alleges that her protected activity was her emailed complaint. But she cannot allege that the DOE understood, or could reasonably have understood, that her email was directed at conduct Title VI prohibits. As the district court explained in the course of dismissing her First Amendment retaliation claim, Bloomberg's email does not raise any specific allegation of racial discrimination. The only

reference to race is a chart listing the percentage of Black and Hispanic students at each school. That is not enough. To show retaliation, Bloomberg must allege she opposed a practice barred by Title VI, and Title VI covers only intentional discrimination. At the absolute most, through strained inference, her email could be read to make a disparate-impact allegation, but because Title VI does not permit disparate-impact liability in private suits, it also does not permit a claim for retaliation for making a disparate-impact complaint.

The context of her complaint further reinforces that DOE could not reasonably have known she was complaining about Title VI discrimination. She did not treat her email as though it was a discrimination complaint, as she did not immediately file it with the Office of Equal Opportunity, as the relevant regulations required her to do. The text and context of Bloomberg's email doom her complaint.

Nor can Bloomberg satisfy the causation element. The complaint against her, referred to DOE by an independent agency, predated her email and thus could not have been motivated by retaliation. And her implausible assertion that a lawyer in DOE's Office of the General Counsel, which also oversees OSI, must have received her complaint

16

and then directed a retaliatory investigation rests on a far too rickety chain of inferences to meet the plausibility requirement.

## ARGUMENT

### POINT I

### THE PLAIN TEXT OF § 2000d-3 BARS BLOOMBERG'S CLAIM

"Every exercise in statutory construction must begin with the words of the text." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 345 (2d Cir. 2003). As the district court found, the plain text of 42 U.S.C. § 2000d-3 bars Bloomberg's claim. The statute provides that no "action" lies under Title VI "with respect to any employment practice" unless the "primary objective" of federal financial assistance received by the defendant is to "provide employment." 42 U.S.C. § 2000d-3. Bloomberg filed this suit, an "action," to challenge alleged retaliation against her in the form of a purportedly retaliatory investigation into her, an "employment practice." *Id.*[4] The statute's plain text bars her suit, and this Court need not resort to other tools of statutory interpretation

_____

[4] While § 2000d-3 refers to an action by "any department or agency," this Court has read it to apply to "private rights of action as well." *Ass'n against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 276 (2d Cir. 1981).

unless the "plain text alone fails to resolve the question." *Marblegate Asset Mgmg., LLC v. Educ. Mgmt. Fin. Corp.*, 846 F.3d 1, 6 (2d Cir. 2017).

The federal government's textual argument is largely in agreement (Brief for the United States as Amicus Curiae ("Amicus Br.") 17; *see also* Brief for Appellant ("App. Br.") 23–27)). The government agrees that Bloomberg's lawsuit alleging retaliation is an "action" (Amicus Br. 17). And it agrees that § 2000d-3 applies when the "action," *i.e.* this lawsuit, "is taken with respect to an employment practice" (*id.* (quotation marks and alterations omitted)). The government then goes on to argue that a claim is "with respect to" a subject matter if it "concerns" that subject matter, and, therefore, a suit only triggers § 2000d-3's carveout if it "concerns" the defendant's employment practices (*id.*).

But that is precisely the case here. Bloomberg's claim is that she was wrongfully subjected to an unlawful *employment* practice, in the form of an investigation and, ultimately, a written reprimand (A64–68, 75). Her suit challenges an employment practice, as the federal government itself defines the term (Amicus Br. 22–23), and seeks

18

redress for alleged injuries caused by that employment practice. Regardless of the formulation, her suit is "with respect to"—or "concerns"—an allegedly unlawful employment practice. *Cf. Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994) (identifying "discipline" as an "employment practice").

To avoid this conclusion, the federal government contends that the court should look to the underlying protected activity, not the form of the alleged retaliation, to determine whether the suit concerns an employment practice (Amicus Br. 18). But, as it admits, this distinction flows not from the text of § 2000d-3, but from the purported "nature of a Title VI retaliation claim" (*id.*). In its telling, the underlying discrimination is what distinguishes a "Title VI claim" from "some other form of retaliation claim" (*id.*). But the government's argument presupposes that Bloomberg's complaint must fit in somewhere, failing to acknowledge the possibility that she simply has no claim cognizable

19

under federal statutes as enacted.[5] And, equally importantly, its argument hinges on a redirection from the statute's plain text.

Beyond the text of the statute, the federal government articulates both policy reasons and portions of the legislative history that go some way toward supporting its position (Amicus Br. 20–22). But "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020); *see also United States v. Am. Soc'y of Composers, Authors & Publishers*, 627 F.3d 64, 72 (2d Cir. 2010) ("When the language of a statute is unambiguous, judicial inquiry is complete." (quotation marks omitted)). The text bars a lawsuit filed with respect to an employment practice where, as is undisputed here, the defendant's federal funding is not primarily for employment purposes. If Bloomberg or the Department of Justice wishes to incorporate these types of claims into Title VI, they must do through the "legislative process reserved for the people's representatives." *Bostock*, 140 S. Ct. at 1738.

---

[5] The federal government's reliance on *Jackson* and *Nassar* is of minimal value as the statutes at issue in those cases lack the carveout provision at issue here. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013).

And, while the federal government argues that § 2000d-3's carveout should be read narrowly (Amicus Br. 19–20), it ignores that Title VI was passed under Congress's Spending Clause powers, *Barnes v. Gorman*, 536 U.S. 181, 185–86 (2002), and is thus subject to the clear-notice doctrine of *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981). For that reason, DOE must have had clear notice of the "scope of conduct" for which it "may be held liable for money damages." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1570 (2022) (quotation marks omitted). But, as the convoluted history of this case shows, § 2000d-3 creates at least significant doubt as to whether the DOE's alleged conduct here is actionable. Indeed, the federal government is obliged to make the unsupported analytical leap from the statutory text to the "true nature" of a Title VI claim to bring DOE's alleged conduct outside the scope of § 2000d-3.[6] *Pennhurst* bars the imposition of liability in such murky circumstances.

---

[6] In that respect, Title VI should be construed more narrowly than Title VII, because Title VII was enacted "pursuant to the commerce power to regulate purely private decisionmaking," rather than under Congress's Spending Clause powers. *Johnson v. Transp. Agency*, 480 U.S. 616, 627 n.6 (1987). Thus, Title VII is not subject to the same clear-statement rule.

**POINT II**

**UNDER ANY STANDARD, BLOOMBERG DID NOT PLEAD A VIABLE TITLE VI RETALIATION CLAIM**

While Bloomberg's and the federal government's arguments as to the scope of 42 U.S.C. § 2000d-3 are flawed, this Court need not even reach them because, even accepting entirely Bloomberg's and the federal government's proposed analytical framework, this Court should affirm on the alternative ground that Bloomberg's complaint fails to state a claim on which relief may be granted.

A retaliation claim under Title VI requires the plaintiff to plead: "(1) participation in a protected activity known to the defendants; (2) adverse action by the defendants against the plaintiff;[7] and (3) a causal connection between the plaintiff's protect[ed] activity and defendants' adverse action" (A38 (quotation marks omitted)); *see also Peters v.*

---

[7] For purposes of this appeal, DOE assumes that the investigation or Bloomberg's reprimand constitute an adverse employment action, recognizing that "[r]eprimands or negative evaluation letters may … constitute adverse employment action, and whether they do so is typically a [question of] fact for the jury." *Connelly v. County of Rockland*, 61 F.4th 322, 326 (2d Cir. 2023) (quotation marks omitted)

*Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011).[8]

Because Bloomberg's complaint does not make allegations sufficient to meet either the first or the third elements, this Court should affirm dismissal. Though defendants concededly did not specifically argue below that Bloomberg's Title VI retaliation claim should be dismissed based on its failure to adequately plead these elements, this Court should still affirm on that basis if it holds in Bloomberg's favor on the scope of § 2000d-3. *See AmBase Corp. v. City Inv. Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003) (appellate court may affirm dismissal on any ground for which there is record support). Whether her email qualifies as a protected activity and whether she can plausibly allege causation are questions that can be answered as a matter of law. And the deficiencies in her complaint cannot be corrected through amendment. No further amendment to the complaint will alter the text of her email. And, after two amendments, she has not been able

---

[8] The federal government sets forth the same elements in its brief, though it breaks out the "known to the defendants" aspect of the first element into a separate element (*see* Amicus Br. at 15 (citing *Pepelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)).

23

to provide anything more than rank speculation that would support a causation finding.

### A. Bloomberg has not pled that the defendants would reasonably have understood her email to be a Title VI complaint.

To meet the "protected activity" element of a retaliation claim, Bloomberg must plead that she opposed a practice that violated 42 U.S.C. § 2000d, which forbids discrimination on the basis of "race, color, or national origin," in programs or activities that receive federal funds, and that defendant was aware of her opposition. *Peters*, 327 F.3d at 320. And it is settled that § 2000d prohibits only intentional discrimination, not practices that are alleged to have resulted in a "disparate impact" on protected classes. *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001); *see also Peters*, 327 F.3d at 319 ("It is clear after *Sandoval* that Congress, in enacting § [2000d], did not forbid unintentional disparate impact practices but merely forbade intentional discrimination."). Finally, as this Court has held, "implicit in the requirement that the [defendant] have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by

24

[Title VI].” *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013) (quotation marks omitted).[9] Thus, the correct inquiry is whether the defendants could reasonably have understood from her email that Bloomberg's purpose was to oppose practices that "constituted intentional discrimination" in violation of Title VI. *Id.*

Bloomberg's claim fails out of the gate. She alleges that her "protected activity" was her "written complaint to DOE officials" (A55). Thus, DOE must have been able to infer from her email that she was complaining about intentional racial discrimination. But nothing in Bloomberg's email suggests that she is complaining about intentional racial discrimination. Her complaint, on its face, is about Millennium High School Brooklyn sharing its athletic teams with its sister school, the Millennium High School in Manhattan, instead of merging with the other schools at the John Jay Campus (S.D.N.Y. Dkt. 10-3 at 2). Indeed,

---

[9] As the federal government points out, the elements of a Title VI retaliation claim have been held to be congruent with Title VII and Title IX retaliation claims (Amicus Br. 15); *see also, e.g.*, *Peters*, 327 F.3d at 320; *Whitfield*, 412 F. App'x at 522; *Verdi v. City of New York*, 306 F. Supp. 3d 532, 542 (S.D.N.Y. 2018). Thus, like the federal government, this brief refers to this Court's cases applying the elements of Title VII and Title IX retaliation claims.

Bloomberg herself points to nondiscriminatory reasons for the existing setup—including "logistical difficulties that may arise" from uniting the Millennium Brooklyn teams with the other John Jay Campus teams (*id.*).

As the district court noted, there is no reference to intentional discrimination in her email (A34). At most, she included a "chart listing the percentage of Black or Hispanic students at each school in the two sports programs," but her "email does not address these statistics in any fashion" (*id.*). While she points out alleged "inequities," she did not "assert that they are the product of racial discrimination or a desire to segregate sports teams" (*id.*).

Though she now alleges that the sports programs were segregated "based on race" (A64), her email does not say anything so direct. She merely writes that her school and the others in the same grouping have more students and less overall teams than the combined Brooklyn/Manhattan Millennium schools and makes an at-best oblique reference to the programs being "separate and unequal" (S.D.N.Y. Dkt. 10-3 at 1–3). Whatever her intent in sending the email, it does not unambiguously inform the recipient she is intending to make a Title VI

26

complaint of intentional racial discrimination. *See Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (holding that "generalized" complaints are insufficient to provide knowledge that plaintiff was complaining about prohibited conduct); *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 84 (D.D.C. 2003) (complaints that student was treated "unfairly" and "differently than other students" not sufficient). There was "nothing in her protests" that "could reasonably have led" DOE to understand that her objections were to a purported Title VI violation, *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998), particularly in light of Title VI's limitation to intentional discrimination.

At the absolute most, the inclusion of the percentages of Black and Hispanics and the reference to "separate and unequal" teams could arguably raise an inference that she was making a complaint that the decision not to combine the two groups of sports teams created a disparate impact. But no cause of action lies for retaliation based on opposition to a policy with an allegedly disparate impact. *Peters*, 327 F.3d at 319.

27

The context of Bloomberg's email further bolsters the conclusion that she was not engaged in a protected activity known to the defendants. As she alleges, her email was to the CEO of the DOE's sports program and the superintendent of her school district (A63). But, if she believed her complaint to be one alleging discrimination, she was obligated by Chancellor's Regulation A-830 to immediately file an online complaint with the Office of Equal Opportunity,[10] and she makes no allegation that she ever did so. As the DOE's non-discrimination policy explains, the procedures outlined in that regulation are intended to cover complaints under Titles VI, VII, and IX, among other statutes.[11] For those reasons, she has failed to meet the first element of her retaliation claim.

---

[10] N.Y.C. Dep't of Educ., *Regulation of the Chancellor A-830: Anti-Discrimination Policy and Procedures for Filing Internal Complaints of Discrimination* § II.B (Aug. 21, 2013). Notably, the regulation requires that notice of the policy and complaint and reporting procedures be provided to all DOE employees annually. *Id.* § IV.

[11] N.Y.C. Dep't of Education, *Non-Discrimination Policy*, *available at* https://perma.cc/MX4T-HB9T.

**B. Bloomberg has not pled a plausible causal connection between her email and the investigation.**

Bloomberg's claim also requires her to make a plausible allegation that retaliation was a "but-for" cause of the employer's alleged adverse action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015). In other words, she must show that the "adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013). And a plaintiff must "aver some tangible proof" that her protected activity animated the allegedly retaliatory action; she "may not rely on conclusory assertions of retaliatory motive." *Washington v. County of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004) (Sotomayor, J.) (quotation marks omitted). Accepting Bloomberg's non-conclusory allegations as true, she cannot meet that requirement.

To start, as a matter of logic, for OSI's investigation to have been retaliatory, someone involved in the investigation must have known about Bloomberg's complaint. But there is nothing to suggest that anyone involved in the investigation had any knowledge of her January 2017 email. Her allegations on this point rely on a chain of implausible

29

inferences. She alleges, on "information and belief" that: (1) "all Title VI complaints made to DOE officials are immediately referred to the Office of Civil Rights"; (2) the person who would have responded to such a complaint is Robin Greenfield, "the Executive Deputy Counsel for Employment and General Practice, within the Office of the General Counsel"; and (3) the Office of the General Counsel "also oversees" OSI (A64). According to Bloomberg, these allegations plausibly support the conclusion that Greenfield would have had knowledge of her email before the investigation started (A68).

But Bloomberg's chain of inferences falls apart at every link. Even assuming her email was immediately referred to Greenfield, the mere fact that Greenfield worked within the Office of the General Counsel, and that OSI is also a part of the Office of the General Counsel, does not support an inference that Greenfield would have had any connection to the referral from SCI to investigate Bloomberg. Moreover, Bloomberg does not allege that Greenfield had any ability or authority to direct OSI to instigate an investigation, and, indeed, she did not have any such authority (*see* S.D.N.Y. Dkt. 13 ¶¶ 5, 7, 9, 29). Bloomberg's unsupported speculation is insufficient to push her claims "[a]cross the

line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Further, the timing of events and the role of an undisputedly independent agency also breaks any causal chain. The allegation against Bloomberg was first levied to SCI in May 2016, which referred it to OSI (S.D.N.Y. Dkt. 13 at ¶ 11), eight months before she sent her email. While that complaint was closed due to insufficient information upon which to conduct an investigation, the complainant provided additional information in December 2016, again before Bloomberg sent her email (*id.* at ¶ 14). SCI once again referred the allegation to OSI, which had a responsibility to investigate (*id.* at ¶ 31). Because the complaints occurred before Bloomberg sent her email, and because OSI would have investigated the allegation referred to it by SCI regardless, Bloomberg cannot show that retaliation was a "but-for" cause of OSI's investigation. *Vega*, 801 F.3d at 90–91.

### C. This Court need not remand for the district court to consider the sufficiency of Bloomberg's complaint.

Contrary to Bloomberg's argument (App. Br. 15), the district court never found that she had sufficiently alleged all of the elements of a

31

Title VI retaliation claim. Instead, it found that she was required to, and did not, show that the federal funds DOE receives are primarily for the purpose of providing employment, but it made no ruling on any other element of her claim (A234; *see also* Amicus Br. 15 (noting that the district court "did not examine the elements of a Title VI retaliation claim and determine whether Bloomberg plausibly alleged a claim")). At the same time, the court's discussion of Bloomberg's First Amendment retaliation claim strongly implies that it would have found she did not meet the protected activity element (*see* A34). The federal government, for its part, suggests that this Court should remand for the district court to consider the claim in the first instance (Amicus Br. 15).

But, even assuming that this Court holds that her claim is not barred by § 2000d-3, there is no need to remand. The email on which Bloomberg premises her retaliation claim is part of the record, and its content will not change (S.D.N.Y. Dkt. 10-3). Whether it could reasonably put the defendants on notice that she was opposing the kind of intentional discrimination forbidden by Title VI can be decided as a matter of law, and the district court has already presaged what the outcome will be in its discussion of her since-abandoned First

Amendment retaliation claim. Likewise, Bloomberg's inability to plausibly allege causation is plain from the face of her complaint. There is no need to "remand to the district court for the ritual articulation of the obvious." *Hurlman v. Rice*, 927 F.2d 74, 82 (2d Cir. 1991).[12] This is especially so in light of the fact that this case has been pending for more than six years and remains at the pleading stage.

---

[12] At a minimum, the case should be dismissed as to defendant Carmen Fariña. "Title VI does not provide for individual liability." *Verdi*, 306 F. Supp. 3d at 542 (citing *Milione v. City Univ. of New York*, 950 F. Supp. 2d 704, 708-09 (S.D.N.Y. 2013); *Kelly v. Rice*, 375 F. Supp. 2d 203, 208 (S.D.N.Y. 2005), *aff'd*, 567 F. App'x 38 (2d Cir. 2014)).

## CONCLUSION

This Court should affirm.


Dated:  New York, NY
        September 22, 2023

                              Respectfully submitted,

                              HON. SYLVIA O. HINDS-RADIX
                              *Corporation Counsel*
                              *of the City of New York*
                              Attorney for Appellee


                        By:   ___/s/ Jamison Davies___
                              JAMISON DAVIES
                              Assistant Corporation Counsel

                              100 Church Street
                              New York, NY 10007
                              212-356-2490
                              jdavies@law.nyc.gov

RICHARD DEARING
DEVIN SLACK
JAMISON DAVIES
   *of Counsel*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief was prepared using Microsoft Word, and according to that software, it contains 6,424 words, not including the table of contents, table of authorities, this certificate, and the cover.

<u>              /s/ Jamison Davies            </u>
JAMISON DAVIES