23-343-cv
Bloomberg v. N.Y.C. Dep't of Educ.

# United States Court of Appeals
# For the Second Circuit

August Term, 2023

(Argued: January 25, 2024         Decided:  October 3, 2024)

Docket No. 23-343-cv

────────────────────────────────

JILL BLOOMBERG,

*Plaintiff-Appellant*,

v.

THE NEW YORK CITY DEPARTMENT OF EDUCATION, CARMEN FARINA,

*Defendants-Appellees*.

────────────────────────────────

Before:

    LOHIER, LEE, PÉREZ, *Circuit Judges*.

    Jill Bloomberg, a former public school principal, brought this Title VI action against the New York City Department of Education ("DOE") and its former chancellor, Carmen Farina.  Bloomberg has conceded that Farina was properly dismissed from this case, but she continues to claim that the DOE retaliated against her after she complained about racially segregated sports teams at her school.  With exceptions not relevant here, Title VI does not provide a cause of action "with respect to any employment practice."  The District Court held that Bloomberg could not state a Title VI claim because her challenge was to an employment practice.  This was error.  Bloomberg's retaliation claim is not an action "with respect to any employment practice" under Title VI because her underlying protected activity was unrelated to the DOE's employment practices.

We therefore **AFFIRM** in part, **VACATE** in part, and **REMAND** for further proceedings.

> JEANNE MIRER, Julien Mirer Singla & Goldstein PLLC, New York, NY, *for Plaintiff-Appellant*.
>
> JAMISON DAVIES (Richard Dearing, Devin Slack, *on the brief*), *for* Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees*.
>
> NOAH B. BOKAT-LINDELL (Kristen Clarke, Nicolas Y. Riley, Department of Justice, Civil Rights Division; Damian Williams, David J. Kennedy, Benjamin H. Torrance, Adam M. Gitlin, United States Attorney's Office for the Southern District of New York, New York, NY, *on the brief*), Department of Justice, Civil Rights Division, Washington, DC, *for Amicus Curiae United States*.

LOHIER, *Circuit Judge*:

Title VI of the Civil Rights Act of 1964 prohibits federally funded programs from discriminating on the basis of race, color, or national origin and provides an implied private right of action. 42 U.S.C. § 2000d. An important limitation appears in Section 604, which bars a Title VI claim "with respect to any employment practice of any employer . . . except where a primary objective of the Federal financial assistance is to provide employment." *Id.* § 2000d-3. The question presented is whether a claim that an employer retaliated against an

2

employee for complaining about *non*-employment-related race discrimination is an action "with respect to any employment practice" within the meaning of Section 604.

Jill Bloomberg is a former principal of a public school in Brooklyn, New York. She brought suit against the New York City Department of Education ("DOE") and former DOE Chancellor Carmen Farina, alleging that the defendants retaliated against her for complaining that her students, predominantly of color, were victims of systemic race discrimination. The District Court held that Bloomberg's retaliation claim was an action "with respect to an[] employment practice" of the DOE and that the primary objective of the federal funds that the DOE received was not to provide employment. The District Court therefore concluded that Bloomberg could not state a Title VI claim.

This was error. A claim of retaliation for complaining about non-employment-related race discrimination is not an action "with respect to any employment practice" within the meaning of Title VI. Insofar as the District Court held otherwise, we **VACATE** the judgment in part and **REMAND** for further proceedings consistent with this opinion. At oral argument, Bloomberg

3

conceded that defendant Farina should be dismissed from the case. We accordingly **AFFIRM** the District Court's judgment in part, insofar as it dismissed Bloomberg's claim against Farina.

## BACKGROUND

### I. Factual Background

The following facts, which we assume to be true for purposes of this appeal, are drawn from Bloomberg's proposed Second Amended Complaint. *See Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Bloomberg is the former principal of Park Slope Collegiate, one of four public schools housed at the John Jay Campus in Park Slope, Brooklyn. Park Slope Collegiate receives federal financial assistance under Title I of the Elementary and Secondary Education Act, which funds schools with a high percentage of low-income families. As of 2014, Park Slope Collegiate's student body was 85 percent "Black and Latino." App'x 56.

In 2010 the DOE announced that Millennium Brooklyn, an affiliate of the "predominantly White" Millennium High School in Manhattan, App'x 57, would join the John Jay Campus. Fearing that Millennium Brooklyn would become a "White enclave" within the campus, App'x 57, Bloomberg publicly opposed the

4

move and advocated against discrimination and segregation at Park Slope Collegiate. Bloomberg's statements drew several informal reprimands from the DOE. Ultimately, Bloomberg's opposition failed and Millennium Brooklyn joined the John Jay Campus.

Years later, on January 10, 2017, Bloomberg emailed the CEO of the DOE's sports program and the Superintendent of her school district regarding the allocation of sports teams at John Jay. She noted that Millennium Brooklyn, which shared its athletic program with its Manhattan sister school, had separate sports teams from (and almost twice as many as) the other John Jay schools. "These separate sports programs," she wrote, "offer vastly unequal opportunities to students." Dist. Ct. Docket No. 10-3, at 2. Bloomberg included a chart showing the number of sports teams for Millennium Brooklyn versus the rest of John Jay, the total enrollment at each school, and the percentage of Black and Hispanic students at each school. She then described the sports programs as "separate and unequal." Bloomberg claims to have never received a "meaningful response" to her email. App'x 64.

Two months later, on March 2, 2017, an investigator from the DOE Office of Special Investigations informed Bloomberg that she was under investigation.

5

Bloomberg later discovered that the investigation was spurred by an anonymous allegation, lodged in May 2016, that Bloomberg had tried to recruit students to a communist organization. The investigation was initially closed for lack of information, but on December 20, 2016, the complainant supplied more information. So on or about January 25, 2017, two weeks after Bloomberg complained about race discrimination and segregation in the sports teams at John Jay, the Office of Special Investigations reopened its investigation.

On August 25, 2017, the Office of Special Investigations issued its final report, determining that it could not substantiate the allegations against Bloomberg. Although the investigation resulted in no disciplinary action other than a written reprimand, Bloomberg alleges that it damaged her reputation.

## II. Procedural History

Bloomberg's lawsuit claims that the DOE instigated its investigation in retaliation for her complaint about racial discrimination and segregation in the athletic programs at John Jay.[1] The District Court dismissed the Title VI claim on the ground that Bloomberg failed to allege a "logical nexus" between the DOE's use of federal funds and the alleged discrimination.

---

[1] Bloomberg brought several other claims before the District Court, none of which she presses on appeal.

Bloomberg moved for leave to amend, which the District Court denied. Bloomberg then moved for reconsideration, arguing that the District Court had ignored the Civil Rights Restoration Act of 1987, which abrogated the logical nexus requirement by expanding Title VI's definition of a covered "program or activity" to include "all of the operations of" a recipient of federal funds. *See* Pub. L. No. 100-259, § 6, 102 Stat. 28, 31 (1988) (codified at 42 U.S.C. § 2000d-4a). Although the District Court acknowledged its error and granted the motion for reconsideration, it nevertheless concluded that Section 604 of Title VI barred Bloomberg's claim because she challenged an unlawful employment practice — retaliation by her employer — without also alleging that the primary objective of the federal funds that the DOE received was to provide employment. So the District Court once again denied Bloomberg leave to amend her Title VI claim.

This appeal followed.

## DISCUSSION

The central dispute on appeal is whether Bloomberg's retaliation claim under Section 601 of Title VI is an action "with respect to any employment practice" and thus barred by Section 604. Before resolving that dispute, we address two open questions in our Circuit — namely, whether there is a private

7

right of action to enforce Title VI and whether retaliation claims are cognizable under Title VI.

## I. Standard of Review

We review *de novo* the District Court's denial of leave to amend based on its legal conclusion that Bloomberg's proposed amended Title VI claim would not survive a motion to dismiss. *See Thea v. Kleinhandler*, 807 F.3d 492, 496 (2d Cir. 2015).

## II. Private Right of Action Under Title VI

The text of Title VI does not explicitly provide for a private cause of action to enforce its requirements, and we have yet to hold that it does. But a private right of action to enforce Section 601's prohibition against intentional discrimination is implied. In *Cannon v. University of Chicago*, 441 U.S. 677 (1979), which involved claims under Title IX, the Supreme Court observed that Congress "understood Title VI as authorizing an implied private cause of action for victims of the prohibited discrimination." *Id*. at 703. In *Alexander v. Sandoval*, 532 U.S. 275 (2001), and subsequent decisions, the Court reaffirmed that "private individuals may sue to enforce § 601." *Id.* at 280; s*ee Barnes v. Gorman*, 536 U.S. 181, 185 (2002) ("Although Title VI does not mention a private right of action, our

8

prior decisions have found an *implied* right of action" (first citing *Cannon*, 441 U.S. at 703; and then citing *Sandoval*, 532 U.S. at 280)); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) ("We have recognized . . . that Title VI . . . create[s] individual rights because th[e] statute[] [is] phrased with an unmistakable focus on the benefited class" (cleaned up)); *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 218 (2022) (explaining that while Title VI does not "expressly provide[] victims of discrimination a private right of action," the Court has recognized an implied private right of action).

Following *Cannon* and *Sandoval*, we likewise assumed that Title VI authorizes an implied private right of action to enforce its prohibition against intentional discrimination. *See, e.g.*, *Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024) ("[T]he Supreme Court found an implied right of action as to Title VI . . . , which Congress acknowledged in subsequent amendments." (citing *Cummings*, 596 U.S. at 218)); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 671 (2d Cir. 2012) (holding, as part of its opinion affirming a damages award, that "Title VI provides a private right of damages against a school district").

Section 601's text supports this assumption: "No person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be

9

denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. That language conveys the statute's intent to benefit a class of people — those who participate in or use federally funded programs. *Guardians Ass'n of N.Y.C. Police Dep't, Inc. v. Civ. Serv. Comm'n of City of N.Y.*, 633 F.2d 232, 273 (2d Cir. 1980) (Coffrin, J., concurring opinion for the Court) (explaining that Title VI's language "is directed to the victims' rights," not "a violator's conduct"), *aff'd*, 463 U.S. 582 (1983); *see also Cannon*, 441 U.S. at 689 (identifying the threshold question for determining whether a court may imply a private right of action as "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member"); *Sandoval*, 532 U.S. at 286–87 (explaining that courts must look to "[s]tatutory intent" to determine whether Congress intended to create "a private right" and "a private remedy"). By establishing an individual right to be free from intentional discrimination by federally funded entities, Section 601 reflects Congress's intent to imply a private right of action. *See Cannon*, 401 U.S. at 690 n.13; *accord Davis v. United Air Lines, Inc.*, 662 F.2d 120, 122–23 (2d Cir. 1981).

Lastly, all of our sister circuits that have considered the question of whether an individual has an implied private right of action under Title VI have

10

answered that question in the affirmative. *See, e.g.*, *Latinos Unidos de Chelsea en Accion (Lucha) v. Sec'y of Hous. & Urb. Dev.*, 799 F.2d 774, 793–94 (1st Cir. 1986); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 n.2 (3d Cir. 2009); *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003); *Montgomery Improvement Ass'n, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 645 F.2d 291, 293 (5th Cir. 1981); *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 453 (6th Cir. 2021); *Murguia v. Childers*, 81 F.4th 770, 775 (8th Cir. 2023); *Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 953 (9th Cir. 2020); *Bryant v. Indep. Sch. Dist. No. I-38 of Garvin Cnty.*, 334 F.3d 928, 931 (10th Cir. 2003); *United States v. Florida*, 938 F.3d 1221, 1229 (11th Cir. 2019); *Women's Equity Action League v. Cavazos*, 906 F.2d 742, 747, 750 (D.C. Cir. 1990) (R. Ginsburg, *J.*).

For these reasons, to the extent this question was left open in our Court, we now hold that Title VI authorizes an implied private right of action to enforce Section 601's prohibition on intentional discrimination based on race, color, or national origin.

**III.    Retaliation under Title VI**

We also hold that Title VI forbids a recipient of federal funds from retaliating against one who complains about discriminatory conduct prohibited

11

by the statute. Retaliation is a long-recognized form of intentional discrimination prohibited by other federal civil rights statutes. Take, for example, Title IX's prohibition against intentional sex discrimination, which mirrors Section 601's prohibition against intentional race and national origin discrimination. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173–74 (2005); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103–04 (2d Cir. 2022). As the Supreme Court explained in *Jackson*, retaliation is "an intentional act" and "a form of 'discrimination'" under Title IX "because the complainant is being subjected to differential treatment" that is "an intentional response to the nature of the complaint." 544 U.S. at 173–74. Other civil rights statutes, including Sections 1981, 1982, and 1983 of Title 42, similarly proscribe retaliation against those who "oppose the prohibited discrimination." *Peters*, 327 F.3d at 317–18 (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237 (1969)) (§§ 1981 and 1982); *see Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 80–82 (2d Cir. 2015) (§ 1983); *see also Jackson*, 544 U.S. at 176.

There is no reason to think that Title VI is any different. Indeed, the parties and the United States as *amicus curiae* agree that a claim of retaliation is cognizable under Title VI because it constitutes intentional discrimination by

12

subjecting the complainant to differential treatment based on the nature of her complaint.  *See Jackson*, 544 U.S. at 174.

We find support for this conclusion in Title VI's implementing regulations, which prohibit retaliation against individuals who engage in protected activity by complaining about or participating in an investigation into conduct that violates Title VI.  34 C.F.R. § 100.7(e).  In our view, the regulation is a valid "interpretation of § 601's core antidiscrimination mandate" that "may be enforced via [the] private right of action" implied in Section 601.  *Peters*, 327 F.3d at 316; *see also Sandoval*, 532 U.S. at 284.

And the Fourth Circuit, the only sister circuit to address the issue in a precedential decision, has similarly held that Title VI "provides a cause of action for retaliation based upon opposition to practices that Title VI forbids."  *Peters*, 327 F.3d at 310; *see Alberti v. Rector & Visitors of the Univ. of Va.*, 65 F.4th 151, 156 & n.6 (4th Cir. 2023) (citing *Peters* in articulating the elements of a Title VI retaliation claim).[2]

---

[2] The Third, Tenth, and Eleventh Circuits have recognized Title VI retaliation claims in unpublished decisions.  *See Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011); *Seymore v. Tulsa Tech. Ctr.*, No. 23-5127, 2024 WL 3342452, at *3 (10th Cir. July 9, 2024); *Farrukh v. Univ. of S. Fla. Bd. of Trs.*, No. 21-13345, 2022 WL 3973703, at *3 (11th Cir. Sept. 1, 2022).  The Fifth and Sixth Circuits have assumed without deciding that

13

For these reasons, we conclude that Bloomberg has a cognizable retaliation claim under Title VI. To establish such a claim, Bloomberg must allege that she engaged in protected activity, the DOE knew about her protected activity, she suffered an adverse action, and there was "a causal connection between the protected activity and the adverse action." *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011) (listing the elements of a *prima facie* Title IX retaliation claim). Of course, Title VI also requires that Bloomberg allege that the "program or activity" — here, the DOE as the "local educational agency," 20 U.S.C. § 7801(30)(A) — received federal funds. *See* 42 U.S.C. § 2000d-4a(2)(B). But the Civil Rights Restoration Act relieves her of the need to allege a nexus between those funds and the retaliation. *See id.*; *O'Connor v. Davis*, 126 F.3d 112, 117 (2d Cir. 1997) (explaining that the Civil Rights Restoration Act overruled prior case law requiring a close nexus between the beneficiaries of federal funding and the alleged discrimination).

Without otherwise addressing whether Bloomberg had adequately alleged the elements of a Title VI retaliation claim, the District Court held that

---

retaliation claims are cognizable under Title VI. *See Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 586 n.4 (5th Cir. 2020); *Hayes v. Metro. Gov't of Nashville & Davidson Cnty.*, Nos. 23-5027/5075, 2023 WL 8628935, at *6 n.4 (6th Cir. Dec. 13, 2023).

Bloomberg's allegations that the DOE received federal funds satisfied the Civil Rights Restoration Act, but that Bloomberg's claim was barred by Section 604. We turn to that question.

**IV.     Section 604's Limitation on Actions "With Respect to Any Employment Practice"**

Section 604 bars Title VI claims challenging "employment practice[s]" unless "a primary objective of the Federal financial assistance is to provide employment."[3]  42 U.S.C. § 2000d-3.  As no one in this case contends that a "primary objective" of the DOE's federal funds "is to provide employment," Bloomberg's claim falters if her action challenges an "employment practice."  But Section 604 leaves that term undefined.

Whenever we interpret a statute, "we begin with the text." *United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016).  "[O]ur normal presumption [is] that, when Congress uses a term in multiple places within a single statute, the term bears a consistent meaning throughout." *Azar v. Allina Health Servs.*, 587 U.S. 566, 576 (2019).  To determine what "employment practice" means under Title

---

[3] Section 604 provides in full:  "Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a primary objective of the Federal financial assistance is to provide employment."  42 U.S.C. § 2000d–3.

15

VI, we turn to our interpretation of that term in Title VII, which was, like Title VI, enacted as part of the Civil Rights Act of 1964.

Title VII defines "[a]n 'unlawful employment practice' [as] 'discrimination on the basis of any of seven prohibited criteria: race, color, religion, sex, national origin, opposition to employment discrimination, and submitting or supporting a complaint about employment discrimination.'" *Cooper v. N.Y. State Dep't of Lab.*, 819 F.3d 678, 681 (2d Cir. 2016) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 359–60 (2013)); *see* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). Title VII thus specifically defines "an unlawful employment practice" as retaliation against employees or applicants "because [they have] opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). But an employer who retaliates against an employee for opposing conduct or practices unrelated to employment discrimination does not engage in "an unlawful employment practice" under the statute. *See Cooper*, 819 F.3d at 681. Title VII prohibits retaliation by an employer only to the extent it is "on account of an employee's having opposed, complained of, or sought remedies for, *unlawful workplace discrimination*." *Nassar*, 570 U.S. at 342 (emphasis added).

With Title VII's definition of "employment practice" as our cue, we

16

conclude that a Title VI retaliation claim is an action "with respect to an[] employment practice," 42 U.S.C. § 2000d-3, only if the underlying protected activity concerns opposing unlawful employment discrimination. This means that not every claim of workplace retaliation that implicates a plaintiff's employment is a claim "with respect to an[] employment practice" that is barred by Section 604. A claim of retaliation based on protected activity challenging discrimination that is unrelated to an employment practice is not barred by Section 604.

Reading Section 604's limitation on actions relating to "any employment practice" in this way aligns with Title VI's purpose. Employees of federally funded entities are often best positioned to report unlawful discrimination, particularly where, as here, the entity is a school. "[S]ometimes adult employees are the *only* effective adversaries of discrimination in schools." *Jackson*, 544 U.S. at 181 (cleaned up and emphasis added). In our view, "if retaliation" against these employees "were not prohibited," Title VI's enforcement scheme "would unravel." *Id.* at 180 (referring to Title IX).

Our interpretation of "employment practice" also serves Section 604's plan to shield *employers* from double liability under both Title VI and Title VII for the

17

same conduct. Congress designed Section 604 so that Title VI would not "impinge" on Title VII. *Johnson v. Transp. Agency*, 480 U.S. 616, 627 n.6 (1987) (quoting 110 Cong. Rec. 11,615 (1964) (statement of Sen. Cooper, who proposed Section 604)). Title VII is an employment discrimination statute, while Title VI is not, so "[T]itle VI cannot be used . . . to secure or influence compliance with respect to employment practices" that "are properly the subject of Title VII." 110 Cong. Rec. 11,615 (statement of Sen. Cooper). Individuals alleging retaliation for opposing unlawful workplace discrimination must bring suit under Title VII, not Title VI. But Title VI permits claims of retaliation in response to different underlying conduct; those claims are not subject to Section 604's bar.

The District Court held that Bloomberg's retaliation claim challenged an "employment practice" within the meaning of Section 604 because it arose from her employer's investigation of her as an employee. We disagree that Bloomberg's retaliation claim is an action "with respect to any employment practice" under Section 604. Bloomberg alleges retaliation for opposing race discrimination in the allocation of sports teams, not for opposing any employment practice. We therefore conclude that Bloomberg's Title VI retaliation claim is not barred by Section 604 and that the District Court erred in

holding otherwise.

## V. Merits of Bloomberg's Retaliation Claim

Because the District Court mistakenly concluded that Section 604 barred Bloomberg's Title VI retaliation claim as a threshold matter, it never addressed the underlying merits of the claim. The DOE nonetheless urges us to affirm on the merits on two grounds. First, it maintains that Bloomberg's email to the DOE regarding the unequal allotment of sports teams at the John Jay Campus did not constitute protected activity because it failed to refer to intentional discrimination. Second, it insists that the DOE's allegedly retaliatory investigation was caused by prior anonymous complaints rather than Bloomberg's email. The DOE did not raise either of these merits-based arguments before the District Court. We decline to address them in the first instance on appeal, and we leave the District Court to consider them on remand.[4]

---

[4] On appeal, the DOE also cursorily invokes *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 17 (1981), to argue that the DOE lacked notice that it may be liable for money damages based on the conduct alleged. The DOE forfeited this argument by failing to raise it before the District Court, and we decline to exercise our discretion to excuse the forfeiture and consider the argument on appeal.

19

## CONCLUSION

We have considered the DOE's remaining arguments and conclude that they are without merit. For the foregoing reasons, we **AFFIRM** in part and **VACATE** in part the judgment of the District Court, and we **REMAND** for further proceedings consistent with this opinion.